UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE,<br><br>Plaintiff,<br><br>v.<br><br>MAURICE KING; LEWIS KING; GLEN YOSHIOKA; DYLAN WALL; SARA WHITE; and AMERICAN MARRIAGE MINISTRIES, a Washington non-profit corporation,<br><br>Defendant. | Case No. 2:19-CV-00301-RSL<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

This order comes before the Court on individual defendants Maurice King, Lewis King, Glen Yoshioka, Dylan Wall, and Sara White's "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)." Dkt. #7. For the following reasons defendants' motion is GRANTED in part and DENIED in part.

## **INTRODUCTION**

Plaintiff's complaint alleges that defendants Maurice King, Lewis King, Glen Yoshioka, Dylan Wall, Sara White, and American Marriage Ministries created and maintained two websites—https://www.amm-vs-ulc.com ("AMM-vs-ULC Website") and https://www.americanministrieslegal.com ("AMM Legal Website")—on which they made false and disparaging statements about Universal Life Church Monastery in an effort to mislead the

Order Granting/Denying Motion to Dismiss - 1

public as to plaintiff's credibility as an ordination service provider. Dkt. #1 at 3 ¶ 18-19. Plaintiff alleges that the AMM-vs-ULC Website purports to offer consumers a "side-by-side comparison" of the two organizations, but falsely attributes financial and legal troubles to ULC Monastery knowing that they in fact concern Universal Life Church California—a similarly named but entirely distinct organization with which ULC Monastery is neither related nor affiliated. Dkt. #1 at 4 ¶ 28. Plaintiff alleges that the AMM Legal Website falsely implies that the state of Tennessee does not recognize marriages performed by Universal Life Church ministers. Dkt. #1 at 5 ¶ 31-32. These claims and comparisons, plaintiff asserts, are "likely to confuse or deceive" consumers, threaten to create the impression that ULC Monastery is "dishonest, fraudulent, or incompetent . . . [and] deprive the ULC Monastery of the benefits of public confidence." Dkt. #1 at 8 ¶ 59. Accordingly, plaintiff brought claims alleging violations of the Lanham Act and the Washington Consumer Protection Act (CPA). *See* 15 U.S.C. 1125(a); RCW 19.86. Plaintiff additionally brought a claim for defamation per se. Individual defendants Maurice King, Lewis King, Glen Yoshioka, Dylan Wall, and Sara White filed this motion to dismiss for failure to state a claim against them.

## **DISCUSSION**

In order to survive a Rule 12(b)(6) Motion, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "detailed factual allegations" are not required, a "[t]hreadbare recital of the elements of a cause of action, supported by mere conclusory statements do[es] not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, to meet the plausibility standard a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a complaint, the Court disregards unsupported legal conclusions, which are not entitled to the assumption of truth, and determines whether the remaining well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief. *Id.* When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court's scope of review is generally limited to the contents of the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Order Granting/Denying Motion to Dismiss - 2

However, Ninth Circuit authority permits the Court to also consider documents referenced extensively in the complaint, documents whose contents are alleged in the complaint and whose authenticity is undisputed by the parties, and matters of judicial notice. *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1042–43 (9th Cir. 2015); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Where the Court elects to treat such documents as part of the complaint, their contents are assumed to be true for the purposes of a motion to dismiss. *Ritchie*, 342 F.3d at 908. Plaintiff has requested the Court take judicial notice of American Marriage Ministries' most recent annual report in its consideration of the motion to dismiss.[1] Plaintiff has also placed before the Court a document entitled "Deposition upon Oral Examination of Glen Masa-Aki Yoshioka Buchanan" which contains oral statements made by one of the individual defendants in this case on January 24, 2019, in the context of a separate action brought by American Marriage Ministries against Universal Life Church Monastery.[2] Neither document is mentioned in the complaint. For the reasons stated in footnotes 1 and 2, the Court has

---

[1] A court may take judicial notice of an adjudicative "fact that is not subject to reasonable dispute because it . . . can be accurately determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2)-(c)(1). "Accordingly, 'a court may take judicial notice of matters of public records' but may not take judicial notice of any disputed facts contained in those public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (internal citations omitted). The document entitled "Express Annual Report with Changes" is a matter of public record, readily available on the Washington Secretary of State website. Furthermore, though defendants object to the Court's consideration of the facts contained within the Annual Report, they do not dispute the veracity of the facts themselves. This document appears to have been completed and filed by one of the defendants, it can be obtained from a verifiable government source, and none of the information contained within is disputed by either party. Thus, because the Express Annual Report with Changes is a matter of public record, the Court will take judicial notice of the undisputed facts contained therein pursuant to Rule 201.

[2] Plaintiff submitted this document as an addendum to its Opposition to Motion to Dismiss. Plaintiff did not include this document in its request for judicial notice, however a court "may take judicial notice on its own" of any "fact that is not subject to reasonable dispute." Fed. R. Evid. 201(b)(2)-(c)(1). A fact is not subject to dispute if it is "generally known" or "can be accurately determined from sources whose accuracy cannot be reasonably questioned." *Id.* "[T]he content of a deposition is not a clearly established 'fact' of which [the Court] can take notice." *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, n.1 (9th Cir. 2010). *See also Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (denying plaintiff's request for judicial notice of portions of her deposition because "[t]he accuracy of the deposition excerpts . . . could be subject to reasonable dispute.").

Order Granting/Denying Motion to Dismiss - 3

considered the contents of the document entitled "Express Annual Report with Changes," but declines to consider the document entitled "Deposition upon Oral Examination of Glen Masa-Aki Yoshioka Buchanan" in determining whether the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct by individual defendants Maurice King, Lewis King, Glen Yoshioka, Dylan Wall, and Sara White.

    Defendants claim that they are shielded from liability by the corporate form of American Marriage Ministries and that plaintiff's complaint fails to allege adequate facts to support piercing the corporate veil. Plaintiff does not, however, allege in the complaint that the individual defendants should be liable for the actions of American Marriage Ministries merely by nature of their position as governing persons of the organization. Rather, they allege that each defendant is individually liable because they "directly participated in and materially contributed to the creation, operation, communication, and use in commerce" of websites containing allegedly false statements about ULC Monastery. Dkt. #1 at 3 ¶ 19. As a result, none of the claims brought in the complaint require the Court to pierce the corporate veil to hold the individual defendants personally liable for actions they themselves allegedly took. Individuals may be, and frequently are, held personally liable for violations of the Lanham Act. *See Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996); *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999). Under the CPA, "[i]f a corporate officer participates in the wrongful conduct, or with knowledges approves of the conduct, then the officer, as well as the corporation, is liable for the penalties." *State v. Ralph Williams North West Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 322 (1976). Finally, the alleged defamation is a tort claim, and "a corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016) (quoting *Committee for Idaho's High Desert, Inc.*, 92 F.3d at 823). The complaint alleges direct participation on the part of each individual defendant. Accordingly, the question of whether plaintiff has alleged sufficient facts

to warrant piercing the corporate veil is irrelevant to the claims brought against the individual defendants.

### A. Violations of the Lanham Act – 15 U.S.C. § 1125(a)

Plaintiff alleges that the individual defendants "engaged in . . . Lanham Act violations knowingly, willfully, and maliciously." Dkt. #1 at 6 ¶ 43. The Lanham Act reads in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

In support of their contention that the individual defendants are liable under the Lanham Act, plaintiff asserts that each defendant "directly participated in and materially contributed to the creation, operation, communication, and use in commerce" of both websites and their contents and that the websites contain false statements regarding ULC Monastery. Dkt. #1 at 3 ¶ 19. Plaintiff goes on to give numerous examples of statements made on the AMM-vs-ULC website. In the context of comparing "AMM and the ULC Monastery," the AMM-vs-ULC website states that "Universal Life Church . . . has been in and out of the court room" since its founding, "has had their IRS nonprofit status revoked," "has been in and out of bankruptcy," and has had "marriages performed by [its] ministers . . . ruled invalid." Dkt. #1 at 4 ¶ 23-28. Each of these statements is accompanied by a link to a court case in which a "Universal Life Church, Inc." was a party or was implicated, but which ULC Monastery alleges it was neither involved in nor party to. *Id.* These well-pled factual assertions, taken together and assumed true, give rise to the

Order Granting/Denying Motion to Dismiss - 5

plausible inference that Maurice King, Lewis King, Glen Yoshioka, Dylan Wall and Sara White used in commerce false or misleading facts or descriptions of facts that were likely to cause consumer confusion and/or misrepresented ULC Monastery's goods, services, or commercial activities in violation of the Lanham Act. 15 U.S.C. § 1125(a)(1).

### B. Violation of the Washington Consumer Protection Act – RCW Ch. 19.86

Plaintiff additionally alleges that the individual defendants, by directly participating in and materially contributing to the "creation, publication, distribution, and other use" of the AMM-vs-ULC and AMM Legal websites, have "engaged in acts, practices, and a course of business which operates . . . as a fraud" upon the public in violation of the CPA. Dkt. #1 at 7 ¶ 46-47. The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To prevail on this cause of action plaintiff must establish that the conduct is (1) unfair or deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property. *Keithly v. Intelius Inc.*, 764 F.Supp.2d 1257, 1265 (W.D. Wash. 2011) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, (Wash. 1986). Failure to satisfy even one of the elements is fatal to a CPA claim. *Sorrell v. Eagle Healthcare, Inc.*, 110 Wn. App. 290, 298 (Wn. App. 2002).

Whether a particular practice is "unfair or deceptive" is a question of law. *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 47 (Wash. 2009) (citing *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 150, (Wash. 1997). To establish this element, plaintiff is not required to show that defendants' conduct was intended to deceive, only that "it had the capacity to deceive a substantial portion of the public." *Id.* Defendants' alleged action of creating and publishing websites on which ULC Monastery's name was used interchangeably with, and directly linked to, the legal and financial troubles of other Universal Life Church entities does have the capacity to deceive a substantial portion of visitors to those sites as to ULC Monastery's legal and financial status. With respect to element two, the terms "trade" and "commerce" are defined under the CPA to "include the sale of assets or services, and any

commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2). The individual defendants are agents of a Washington nonprofit who are alleged to have published content directly and unfavorably comparing their services with those of their competitor, a Washington business that serves Washington consumers. As such, plaintiff has sufficiently alleged element two.

These same facts serve to establish element three. Where, as here, a private party seeks to bring a CPA claim, the Court considers four non-dispositive factors in determining whether the alleged conduct impacts the public interest. *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 605 (2009). These include: (1) whether the alleged acts were committed in the course of defendants' business; (2) whether the defendants advertised to the public in general; (3) whether the defendants actively solicited this particular plaintiff, indicating potential solicitation of others; (4) whether the plaintiff and defendants have unequal bargaining positions. *Id.* Only factors one and two are relevant to this case, as the plaintiff is not a consumer. Because the individual defendants are alleged to have created the websites in the course of the business of running American Marriage Ministries, and because the content was publicized on public-facing websites purporting to help consumers choose between providers of ordination services, the Court finds the complaint alleges sufficient facts to establish a public impact.

Elements four and five require plaintiff to establish an injury to their business or property caused by defendants' unfair or deceptive conduct. The injury need not be monetary, a showing of damage to business reputation and loss of goodwill can suffice. *Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 316 (1993). Here however, while plaintiff has alleged that the false statements made on the AMM-vs-ULC Website and the AMM Legal Website "are likely to confuse or deceive" and as a result "influence the decisions and behavior of ministers, wedding officiants, individuals interested in becoming ministers or wedding officiants, and others who are exposed to such statements regarding whether to associate, receive ordination services from, or obtain other goods or services from ULC Monastery," plaintiff has not alleged any specific injury, reputational or otherwise, that has actually occurred as a result of the individual defendants' conduct. Dkt. #1 at 6 ¶ 39-40. Mere

possibility of injury is not enough. Moreover, plaintiff's assertion that "[d]efendants' violations of the CPA have caused injury to ULC Monastery in its business and property" is a conclusory restatement of one element of a CPA claim and does not suffice to allege actual injury. Dkt. #1 at 6 ¶ 50. Accordingly, plaintiff has not sufficiently alleged factual content to support a claim under the CPA entitling ULC Monastery to relief.

### C. Defamation Per Se

Finally, plaintiff alleges that the individual defendants created, published, and communicated false statements on the AMM-vs-ULC and AMM Legal websites and are thus individually liable for defamation per se. Dkt. #1 at 6 ¶ 56-58. A publication is defamatory per se (actionable without proof of special damages) if it "(1) exposes a living person to hatred, contempt, ridicule, or obloquy, to deprive him of the benefit of public confidence or social intercourse, or (2) injures him in his business, trade, profession, or office." *Caruso v. Local Union No. 690*, 100 Wn.2d 343, 353, (1983). Unlike a claim under the CPA which requires plaintiff to allege defendants' conduct caused a specific injury, plaintiff may establish a defamation claim by alleging that the defendants' conduct exposed plaintiff to hatred, contempt, or ridicule. Here, plaintiff alleges that the false statements published by the defendants suggesting that ULC Monastery has faced ongoing legal and financial challenges and that ministers ordained by ULC Monastery may not be able to legally marry individuals or have performed legally invalid marriages have exposed ULC Monastery to ridicule and deprived them of the benefit of public confidence by implying that ULC Monastery is engaged in fraudulent behavior and that "its ministers are committing acts in violation of the law." Dkt. #1 at 8-9 ¶ 59. These statements sufficiently allege that defendants' conduct exposed ULC Monastery to hatred, contempt, or ridicule; plaintiff's complaint thus alleges sufficient facts that, if proven, establish a claim for defamation per se.

//

## **CONCLUSION**

For all of the foregoing reasons, defendants' motion to dismiss is GRANTED with respect to plaintiff's claim under the CPA and DENIED with respect to plaintiff's claims under the Lanham Act and for defamation per se. Plaintiff's motion for leave to amend the complaint is GRANTED.[3] Plaintiff shall have fourteen days from the date of this order to file an amended pleading.

Dated this 19th day of June, 2019.

*[signature]*
Robert S. Lasnik
United States District Judge

---

[3] Plaintiff correctly points out that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). Facts provided in documents following the original complaint suggest that plaintiff could allege additional facts that could cure the identified deficiency in the complaint; as such, it is appropriate for the Court to grant plaintiff's request to amend.

Order Granting/Denying Motion to Dismiss - 9