**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON**

UNIVERSAL LIFE CHURCH
MONASTERY STOREHOUSE, a
Washington non-profit corporation,

          Plaintiff,

    vs.

MAURICE KING, LEWIS KING, GLEN
YOSHIOKA, DYLAN WALL, SARA
WHITE, and AMERICAN MARRIAGE
MINISTRIES, a Washington non-profit
corporation,

         Defendants.

No.  2:19-CV-00301-RSL

**PLAINTIFF'S OPPOSITION TO
DEFENDANT AMM's MOTION TO
COMPEL PRODUCTION**

*Date Noted:  Friday, March 20, 2020
(Oral Argument Not Needed)*

## I. INTRODUCTION AND RELIED REQUESTED

ULC Monastery respectfully requests the Court deny AMM' Motion to Compel.  Of the

four requests for production ("*RFP*") for which AMM seeks an order, one is moot (RFP 34) and

there is no dispute requiring judicial intervention for a second (RFP 42).  The only RFP at issue is

whether a list of assets and liabilities is relevant to a claim of disgorgement of "profits" under the

Lanham Act.  It is not relevant for two reasons: (1) a list is but a snapshot in time, and does not

reflect purchases or profits derived from any allegedly infringing conduct; and (2) it does not

reflect sales, and instead lists items of ownership, debts, etc.  Moreover, ULC Monastery has

already produced documents that <u>directly</u> show revenue generated through the allegedly-infringing

PLAINTIFF'S OPPOSITION TO DEFENDANT
AMM's MOTION TO COMPEL PRODUCTION – 1

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 374-8500

web pages, therefore rendering any list of "assets and liabilities" of virtually no value in terms of legitimate discovery.  Accordingly, ULC Monastery requests the Court:

(1)     Determine under Fed.R.Civ.Pro 26(b)(1) RFP 4-5 are not "relevant" and "proportional" to the needs of the case;

(2)     Determine under Fed.R.Civ.Pro 26(b)(2)(c) RFP 4-5 are unduly burdensome into private and confidential matters, and irrelevant; and

(3)     Under Fed.R.Civ.Pro 37(a)(5)(A-B), award ULC Monastery under Fed.R.Civ.Pro 37(a)(5)(A) its expenses and fees.

## II. PERTINENT FACTS

*As AMM's Motion to Compel is as to only four RFP, ULC Monastery addresses those facts pertinent to those four, and does not address all factual contentions in AMM's Motion.*

### A.     BACKGROUND AND CLAIMS

ULC Monastery is a Church with a physical office and rectory at which it has held religious events.  *See Goschie Decl. herewith, ¶3.*  Registered in Washington in 2006, ULC Monastery descends from the Universal Life Church originally founded in California by Kirby Hensley, but is a separate and distinct organization with its own structure.  *Id.*  It allows anyone who feels so called to be ordained.  Ordination can be completed on-line, and is without charge.  *Id.*

Four of the five individually named Defendants, Maurice King, Lewis King, Glen Yoshioka, and Dylan Wall worked for ULC Monastery (all but Defendant White, but collectively, the "*Individual Defendants*").  They left ULC Monastery in favor of Defendant AMM in July 2009. It, like other organizations, offers ordinations through an on-line process.  According to its website, AMM registered with the IRS as a "public charity."

AMM created and publishes two websites regarding ULC Monastery, identified as "the AMM-vs-ULC Website" and "the AMM Legal Website."  ULC Monastery contends both sites

PLAINTIFF'S OPPOSITION TO DEFENDANT
AMM's MOTION TO COMPEL PRODUCTION – 2

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

contain false, deceptive, and misleading content, and contain content that is defamatory per se. *See Am. Compl., ECF #27, ¶¶ 18, 20-33*.  ULC Monastery asserted three causes of action against AMM: (1) violation of the Lanham Act, 15 U.S.C. §1025(a); (2) violation of the WA Consumer Protection Act (the "*WA CPA*"); and (3) defamation per se.  *ECF #27, ¶¶ 34-63*.

ULC Monastery also asserted its claims against the Individual Defendants based "on information and belief [that they] directly participated in and materially contributed to the creation, operation, publication, communication, and use in commerce of the AMM-vs-ULC Website and the AMM Legal Website, and the statements contained therein."  *Id., ¶19*.

In response to the lawsuit Defendant AMM asserted the same three causes of action as counterclaims, and added claims for trade libel, trademark infringement under both the common law and the Lanham Act, and for "cybersquatting" under the Lanham Act. *See ECF #28, ¶¶ 107-196*.  In its Counterclaims, AMM asserted damages for lost goodwill (¶131) and that it "suffered economic harm due to loss of business and reputational injury" (¶171).  AMM further identified its damages as "lost business." *Ex. 3, pg. 19-20 (Interrog. 14)*.

Prior to the filing of the instant action, ULC Monastery commenced an action before the Trademark Trial and Appeal Board ("*TTAB*") to determine the validity of AMM's trademark.  That action was set for trial.  However, after the instant action was commenced, AMM sought and obtained a stay of the TTAB proceeding in favor of this Court determining the validity of its trademark. *Dckt. #56, ¶17*.

**B**.     **RFP 4-5 ARE NOT RELEVANT TO LANHAM ACT PROFITS**

ULC Monastery initially asserted three objections to AMM's RFP 4-5:

> ULC Monastery objects to this Request as not relevant to any party's claim or defense, and is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

PLAINTIFF'S OPPOSITION TO DEFENDANT
AMM's MOTION TO COMPEL PRODUCTION – 3

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

1

2

> ULC Monastery further objects to this Request as overbroad as to time, as no
> time frame is given, and seeking such information for a period of over 13 years
> is equally not relevant for the same reasons stated above.

*See ULC Monastery Responses, Dckt. 54 (Roberts Decl.), Ex 1, pg. 30:18-31:1.*

The parties initially conferred on October 24, 2019.  AMM's counsel stated the purpose

and discoverable relevance was AMM asserted claims for violation of the Lanham Act, and one

remedy was disgorgement of profits.  *See Dckt. #56 (Galletch Decl.), ¶6.*  ULC Monastery

explained its objections, namely that a list of "assets and liabilities" will not show profits under

the Lanham Act, and instead would show a list of assets, like personal properties owned, as well

as debts. *Id., ¶7.*  ULC Monastery also conveyed that its objection of overbreadth was because it

was unclear if AMM was requesting any specific point in time, e.g. if current or past list. *Id., ¶7.*

AMM never pursued the matter further for four months.  On February 26, 2020, AMM

requested a second conference.  *Dckt. 52 (Mennemeier Decl.), Ex. C.*  Prior to the conference, ULC

Monastery re-stated what it conveyed four months prior in the first conference:

> As we set forth before and discussed, assets and liabilities are not "profits" and
> are not sales or income as would be used for a claim under 15 U.S.C. § 1117(a).
> What property or equipment an entity may own or what liabilities it may have,
> does not indicate sales, income, or profits.  We could locate no published case
> that required production of assets of liabilities as discovery toward a claim of
> disgorgement of profits under the Lanham Act.

*Dckt. #56 (Galletch Decl.), Ex. 2, pg. 1 (March 3 Ltr).*

In addition, ULC Monastery advised AMM that although not requested by AMM's RFP 4,

ULC Monastery nonetheless provided documents that reflected the purchases, down to the penny,

of those who came to ULC Monastery through the websites AMM complained of in its

Counterclaims. *Id., pg. 2.*

The parties conferred on March 6, 2020.  AMM affirmed its purpose for RFP 4 was for

PLAINTIFF'S OPPOSITION TO DEFENDANT
AMM's MOTION TO COMPEL PRODUCTION – 4

potential damages under the Lanham Act, and that AMM wanted to obtain a picture of if ULC Monastery obtained any royalties from websites, as well as its expenditures across those websites. *Id., ¶9 and pg. 17 of 14 (Ex. 3, pg. 1 of 4).* ULC Monastery conveyed AMM's RFP 4 did not ask for documents as to those issues AMM raised, but instead was limited to a list of assets and liabilities. ULC Monastery also repeated what it had been stating since October, e.g. a list of assets and liabilities reflects a moment in time, and would not reflect profits under the Lanham Act. AMM seemingly acknowledged this, as it said it would be sending new, additional requests for documents as to revenues and profits. *Id.; and Dckt. 56, Ex. 4, pg. 1.*

Following the conference, the parties exchanged correspondence, and MM filed its instant motion to compel. *See ULC Monastery correspondence at Dckt. #56, pg. 17 of 24 (Ex. C) and pg. 22 of 24 (Ex. D); and AMM letter at Dckt. #52, pg 37 of 39 (Ex. D, pg. 2 of letter).*

### C.   RFP 34 IS MOOT – ULC MONASTERY PROVIDED THE REQUESTED DOCUMENT

RFP 34 requested documents of the number of persons ordained.  The parties conferred both on October 24, 2019 and March 6, 2020. ULC Monastery's objection focused on relevance; since ULC Monastery did not claim lost profits, the number of persons who sought ordination from it was not relevant to any claim or defense. *See Dckt. #56, Ex. 2, pg. 3 of 5.*

In the second conference (March 6, 2020), AMM stated the purpose and discoverable relevance of AMM's RFP 34 was two-fold: (i) ULC Monastery made several statements as to the number or ministers it ordained, and AMM wanted to confirm if those statements were true, and (ii) the number of ordinations pertained to the (allegedly) infringing actions and damages, and specifically if ULC Monastery ordained a minister that would have otherwise sought ordination from AMM. *Dckt. #56, ¶13.*

PLAINTIFF'S OPPOSITION TO DEFENDANT
AMM's MOTION TO COMPEL PRODUCTION – 5

ULC Monastery disagreed with the latter.  *Id., ¶14, and pgs 18 of 24 (Ex. C, pg. 2 of 4) and pg. 22-23 (Ex. 4, pgs. 1- of 4).*  As to AMM's first point, the parties agreed AMM would first identify the statements to which it referred (outside of a general reference on the ULC Monastery website), and ULC Monastery would review the matter with its counsel as to if it would provide a document by March 13. *Id.*  AMM did not identify any further statements (beyond the general reference) and instead filed its instant Motion on March 12.  ULC Monastery conferred with its counsel and elected to produce a document as to its ordinations, and that was produced on March 13 just as ULC Monastery agreed.  *Id., ¶16 and pg. 23 of 24 (Ex. 4, pg. 2 of 4).*

### D.    RFP 42 – THERE ARE NO DOCUMENTS TO PRODUCE

RFP 42 requested documents ULC Monastery "contend[s] demonstrate any loss of income." *Dckt. #54, Ex. 1, pg. 49 of 50.*  ULC Monastery objected to the RFP:

> ULC Monastery objects to this Request as not relevant to any party's claim or defense, and is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit, because ULC Monastery is not requesting damages based upon loss of income, and because injury is presumed as a matter of law.

*See ULC Monastery Responses, Dckt. #54 (Roberts Decl.), Ex 1, pg. 49:5-13.*

AMM first raised issue with this RFP in February 2020; it was not discussed in the parties' first conference on October 24, 2019.  *See Dckt. #52, pg. 18-19 of 39, Ex. A* (absence of RFP 42). When AMM sought to confer, ULC Monastery advised AMM there is nothing to produce:

> RFP 42 requested documents ULC Monastery contends demonstrate a loss of income. First, this RFP was not previously raised by AMM. *See AMM Oct. 11 and 24 Ltrs (no mention of RFP 42).* Second, ULC Monastery is not contending any document shows a loss of income. So, there is nothing to produce. Third, as we already conveyed multiple times, ULC Monastery is

PLAINTIFF'S OPPOSITION TO DEFENDANT
AMM's MOTION TO COMPEL PRODUCTION – 6

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

not seeking recovery of damages based on lost income or profits, and so the RFP is not relevant on that basis as well.

*Dckt. #56, Ex. 2, pg. 2 of 5 (at top).*

During the March 6 conference, AMM stated RFP 42 was relevant because AMM wanted to see any change in income over a period of time. *See Dckt. # 56, pg. 17 of 24 (Ex. 3. pg. 1 of 4).* ULC Monastery stated RFP 42 did not ask for documents as to a change in income over time. *Id.* AMM did not address this RFP in its letter following the conference. *See Dckt. #52 (Mennemeier Decl.), pg. 36-37 of 39, Ex. D* (absence of RFP 42).

### III.  EVIDENCE RELIED UPON

ULC Monastery relies upon this Opposition and the points and authorities cited herein; the Declaration of Dallas Goschie submitted herewith, and its Opposition to Defendant AMM's Motion for Relief from Deadline and For Trial Continuance (*Dckt. # 55*) and the supporting Declaration of Michael B. Galletch submitted therewith (*Dckt. #56*).

### IV.  LEGAL AUTHORITY

#### A.    NO COURT RULING IS NEEDED FOR TWO OF THE FOUR RFP

Of the four RFP for which AMM requests a Court ruling, only two require a ruling. RFP 34 (number of ordinations) was resolved, and ULC Monastery agreed, before AMM filed its instant motion, that it would confer with counsel and make any production March 13. It did that.

For, RFP 42, there are no documents to produce. The RFP requests documents which ULC Monastery contends demonstrate a loss of income. ULC Monastery has not contended, and is not contending, that any document(s) demonstrate a loss of income. Further, ULC Monastery has not contended, and is not contending, it suffered a loss of income. Therefore, there are no documents to produce. *See Dckt. #56, pg/ 12 of 24 (Ex. 2, pg. 2 of 5) and pg. 17 pf 24 (Ex. 3, pg. 1 of 4).*

PLAINTIFF'S OPPOSITION TO DEFENDANT
AMM's MOTION TO COMPEL PRODUCTION – 7

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### B.     RFP 4 AND 5 ARE NOT RELEVANT TOWARD PROFITS UNDER THE LANHAM ACT

As the moving party, AMM bears the burden to show its requests are proper, and the documents for which it seeks an order to compel are discoverable. *See, e.g., Hancock v. Aetna Life Ins. Co.*, 321 F.R.D. 383, 389-390 (W.D. Wash. 2017).  Under Fed.R.Civ.Pro 26(b)(1), discoverable documents are those which are "relevant to any party's claim or defense and proportional to the needs of the case" taking into account several factors.  Since the 2015 Amendments to Fed.R.Civ.Pro 26, to be relevant and proportional, the need for the requested documents must outweigh the impact or burden to the responding party, i.e. the factors listed in Fed.R.Civ.Pro 26(b)(1).  *See, e.g., Delgado v. Tarabochia*, C17-1822RSL, 2018 WL 2088207, at *2, (W.D. Wash. May 4, 2018).

Tellingly, AMM has not provided, either in pre-motion discovery conferences or in its motion to compel, any explanation of how a list of assets and liabilities is "relevant" and "proportional" under Fed.R.Civ.Pro 26(b)(1) to AMM's claim to recover profits allegedly attributable to infringement.  Rather, in its motion to compel, AMM uses a broad brush to refer to "financial records" without any attempt to tie what it <u>actually</u> requested in RFP 4 and 5 (a list of assets and liabilities) to an actual claim in this action.

Where a party fails to provide an explanation of why or how requested records might bear on an issue to be determined at trial, such records are not relevant.  *Delgado, supra,* 2018 WL 2088207 at *2-3 ("defendants offer no reason to suspect" pre-incident bank records tie to issue in case, and request for post-incident bank records was "fishing" "in hope to catch" a single transaction among hundreds that may be useful); and *VHT, Inc. v. Zillow Group*, case no. , 2016 WL 7077235, at*1 (W.D.  Wash. Sept. 8, 2016) (request for who may have interest in outcome denied because requesting party did not provide "some objective evidence…of relevance").

PLAINTIFF'S OPPOSITION TO DEFENDANT
AMM's MOTION TO COMPEL PRODUCTION – 8

As AMM has failed to meet its initial burden, the Court should deny its Motion on this basis alone.  Even addressing the RFP directly, AMM's RFP 4-5 are not relevant, and ULC Monastery's objections proper for two reasons: assets and liabilities (1) do not reflect profits, and (2) is but a snapshot in time, and does not reflect purchases or profits derived from any allegedly infringing conduct.

### 1.    Assets and liabilities Are Not Profits

Profits are the "excess of revenues over expenditures."  *Black's Law Dictionary,* 1226 (7th ed., 1999); and *see*, *e.g., Experience Hendrix v. Hendrixlicensing.com, Ltd*., 762 F.3d 829, 843 (9th Cir. 2014) (instructions to calculate profits "by deducting all expenses from gross revenue."). However, with disgorgement of the alleged infringer's profits, the claimant (AMM in this instance), AMM need only establish the revenues, not the expenditures; the burden shifts to defending party (ULC Monastery) to show its expenditures.  *Experience Hendrix, supra*, 762 F.3d at 843; and *Hope Road Merchandising v. Jammin Java Corp.*, 747 Fed.Appx. 622, 623, 2019 WL 141315 (9th Cir. Jan. 9, 2019) (infringing defendant's burden to submit evidence of expenditures).

In contrast to revenues, an asset is an "item that is owned and has value," such as cash on hand, equipment, real estate, and inventory.  *Black's Law Dictionary,* 112.  Liabilities in this context are "a financial or pecuniary obligation."  *Id.*, at 925.  Together, assets and liabilities are a tool that can be used to help measure net worth, not revenues or profits. *See, e.g*., *Black's Law Dictionary,* 1062 (definition of "net worth"); and see *FTC v. Crtittenden*, 823 F.Supp. 705, 708 (C.D. Cal 1993) (bankruptcy for company under 31 U.S.C. §3713); *Madrigal v. Allstate Indem. Company*, case no. CV 14-4242 SS, 2015 WL 12748272, at *4 (C.D. Ca Dec. 7, 2015); *DiMaria v. Goor*, case no. 09-cv-1011 (JG), 2012 WL 541425, at *4 (E.D. NY Feb. 21, 2012) (GAAP defines net worth as assets minus liabilities).

PLAINTIFF'S OPPOSITION TO DEFENDANT
AMM's MOTION TO COMPEL PRODUCTION – 9

This is exactly the same for ULC Monastery.  While it does not have or create a list of its assets and liabilities, what it could provide would show the same items, e.g., the current bank account balance, and current debts.  *Goschie Declaration, ¶6-8*.  Further, it would also include items that are unrelated to purchases and expenditures, such as amounts owed to or by ULC Monastery. *Id., ¶7-8*.

### 2.     Assets and Liabilities Are a Snapshot of A Single Moment In Time

Further, a list would only show the current status of the assets, e.g. what assets are owned and what liabilities are owed at that moment, and the value of those at the moment.  *Goschie Declaration, ¶8*.  Thus, assets and liabilities provide no value to determine revenues and profits that were alleged to have been derived over a period of infringing activity.  In the parties' conference, AMM stated that for its Lanham Act claims, AMM wanted to obtain a picture of ULC Monastery's finances (*Dckt. #56, pg. 3, ¶9 and Ex. 3, pg. 1 of 4*), and information "showing change or loss in…income" (*Dckt. # 52, pg. 31 of 39, Ex.  C*), meaning over a period of time.  A list of assets and liabilities will not provide AMM what it actually seeks.

Again, as noted above, nothing in AMM's pre-motion conferences and correspondence, nor in its instant Motion, provide an explanation of how the value of ULC Monastery's assets and liabilities at some moment in time will help AMM demonstrate profits derived from alleged infringing activity.   Rather, AMM has essentially admitted it will not, as AMM has since sent another 35 RFP on this issue.  *See Dckt. #56 (Galletch Decl.), ¶17-18*.

### 3.     ULC Monastery Did Provide Evidence of Purchases

Despite RFP 4-5 not asking for these documents, ULC Monastery <u>did</u> provide AMM documents that reflected the purchases, down to the penny, of those who came to ULC Monastery through the websites AMM complained of in its Counterclaims.  *Dckt. #56 (Galletch Decl.), Ex.*

PLAINTIFF'S OPPOSITION TO DEFENDANT
AMM's MOTION TO COMPEL PRODUCTION – 10

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

*2, pg. 1 (March 3 Ltr)*.  So, AMM already has documents demonstrating the "revenue" that ULC Monastery received.  And, ULC Monastery has the responsibility to show any costs and expenses to reduce the potential "profits" damages to AMM.  *Experience Hendrix, supra*, 762 F.3d at 843; and *Hope Road Merchandising, supra,* 747 Fed.Appx. at 623.

The scope of relevant discovery "depends on a balancing of defendants' need to obtain all relevant evidence with plaintiff's need for protection from far-reaching, burdensome, and invasive discovery. '[C]ourts are properly encouraged to weigh the expected benefits and burdens posed by particular discovery requests (electronic and otherwise) to ensure that the collateral discovery disputes do not displace trial on the merits as the primary focus of the parties' attention.'" *Delgado, supra,* 2018 WL 2088207 at *2 (citing *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648-49 (10th Cir. 2008)).  In this case, AMM has not identified any expected benefit from a snapshot list of "assets and liabilities" in relation to whatever its damages theory may be[1], when they have already received documents demonstrating exactly what ULC Monastery received from the allegedly-infringing sites AMM identified in its counterclaims.

### C.       No Fees Should be Awarded AMM, Instead Awarded to ULC Monastery

Under Fed.R.Civ.P. 37(a)(5)(B), if the motion is denied, the Court "must" award the party opposing the motion its reasonable expenses, including fees.   Here, as the Court should deny AMM's motion, ULC Monastery respectfully requests an award of its expenses and fees.

If, however, the Court may grant any part of AMM's motion, the Court should not make any award of expenses or fees to AMM.  Under Fed.R.Civ.P. 37(a)(5)(A), an award of fees "must

---

[1] AMM has not to date identified its damages theory, only that the Lanham Act allows for disgorgement of any "profits" ULC Monastery received from infringing activity. *See AMM letters with Dckt. #52: pg. 12 of 39 (only that "material"); pg. 24 of 39 (relevant because ULC Monastery believes AMM's are relevant); pg. 31 of 39 ("bears on AMM's counterclaims, and…requested relief"); pg. 37 of 39 (March 9 ltr.) (only that "relevant").*

PLAINTIFF'S OPPOSITION TO DEFENDANT
AMM's MOTION TO COMPEL PRODUCTION – 11

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 374-8500

not" be granted to the moving party in three situations. Two of those are present in this action: "(ii) the opposing party's nondisclosure, response, or objection was substantially justified" and (iii) "other circumstances make an award of expenses unjust."

*First*, ULC Monastery's objections to RFP 4-5 were substantially justified for the reasons set forth above. This chiefly includes that RFP 4-5 did not request information as to "profits" and AMM has not to date met its burden to articulate how a snapshot in time will show the amounts received due to infringing activity. *Second,* any relevance the Court may find in RFP 4-5 would be very minimal, to where although overruled ULC Monastery's objections had sufficient merit such that an award would be unjust and unfairly award AMM when its own failure to actually request what it wanted is the primary cause of the instant motion and the Court's involvement.

## V. CONCLUSION

For the preceding reasons and authority, ULC Monastery respectfully requests the Court deny AMM' Motion to Compel, and requests the Court:

(1)    Determine under Fed.R.Civ.Pro 26(b)(1) RFP 4-5 are not "relevant" and "proportional" to the needs of the case;

(2)    Determine under Fed.R.Civ.Pro 26(b)(2)(c) RFP 4-5 are unduly burdensome into private and confidential matters, and irrelevant; and

(3)    Under Fed.R.Civ.Pro 37(a)(5)(A-B), award ULC Monastery under Fed.R.Civ.Pro 37(a)(5)(A) its expenses and fees.

//

//

//

//

//

PLAINTIFF'S OPPOSITION TO DEFENDANT
AMM's MOTION TO COMPEL PRODUCTION – 12

DATED this 20th day of March 2020.

By: *s/ Michael P. Matesky, II*
Michael P. Matesky, II (WSBA # 39586)
Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA 98154
Phone: 206.701.0331
Fax: 206.701.0332
Email: mike@mateskylaw.com;
litigation@mateskylaw.com

PUGET SOUND BUSINESS & LITIGATION

Michael B. Galletch, WSBA # 29612
Attorney for Plaintiff Universal Life Church
Monastery Storehouse
411 University Street, Suite 1200
Seattle, WA 98101-2519
(206)898-8040
mike@psbizlit.com

PLAINTIFF'S OPPOSITION TO DEFENDANT
AMM's MOTION TO COMPEL PRODUCTION – 13

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500