The Honorable Robert S. Lasnik

1

2

3

4

5

6

7

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON**

8  UNIVERSAL LIFE CHURCH MONASTERY
   STOREHOUSE, a Washington non-profit
9  corporation,

10                              Plaintiff,

11        v.

12  MAURICE KING; LEWIS KING; GLEN
    YOSHIOKA; DYLAN WALL; SARA WHITE;
13  and AMERICAN MARRIAGE MINISTRIES, a
    Washington non-profit corporation,
14
15                              Defendants.

16  AMERICAN MARRIAGE MINISTRIES, a

17                    Counter-Claimant and
                      Third-Party Plaintiff,
18
          v.
19  UNIVERSAL LIFE CHURCH MONASTERY
    STOREHOUSE; UNIVERSAL LIFE CHURCH
20  MONASTERY STOREHOUSE, INC.,

21                    Counter-Defendant and
                      Third-Party Defendants.
22

Case No. 2:19-cv-00301-RSL

**PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**Note on Motion Calendar:
July 10 , 2020**

**Oral Argument Requested**

23

24

25

26

Motion for Partial Summary Judgment– 0
2:19-cv-00301-RSL

Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA  98154
Ph:  206.701.0331
Fax: 206.701.0332

## I.     **INTRODUCTION**

Defendant AMM filed seven stale counterclaims based on grievances it has nursed for years.  The pleadings and undisputed facts show summary judgment dismissing all seven claims is appropriate, because **(A)** AMM's state-law claims are barred by the statutes of limitations, **(B)** AMM's federal claims are barred by laches, and **(C)** AMM's state and federal trademark-based claims must fail because **(1)** AMM cannot show validity of its claimed "American Marriage Ministries" trademark, and **(2)** the alleged infringing use is non-infringing.

## II.     **BACKGROUND – UNDISPUTED FACTS**

### A.  **ULC Monastery and Formation of AMM**

ULC Monastery is a church, formed in 2006, which operates an online marriage ministry allowing anyone who feels so called to be ordained free of charge.  AMM was formed on July 4, 2009 by former ULC Monastery employees.  AMM also offers ordination through an online marriage ministry.  Glenn Yoshioka, AMM's first president, and Dylan Wall, an AMM director and former Executive Director, worked for ULC Monastery from 2007 to 2009.  Maurice King, an AMM director, was a ULC Monastery director and worked for ULC Monastery from 2006 to 2010.  Trygve Jones, also an AMM Employee, worked for ULC Monastery from 2006 to 2009. (Freeman Decl. submitted herewith ("Freeman Decl.") ¶¶ 3-8; Matesky Decl. submitted herewith ("Matesky Decl.") Ex. A at 20:9-20, 60:21-61:5; Ex. B at 12:5-9; 24:21-25:4, 103:14-19.)

### B.  **AMM Registers, Uses, and Abandons Americanmarriageministries.com**

Mr. Yoshioka registered the Americanmarriageministries.com domain name and AMM began using the domain name for its primary website in 2009.  (Matesky Decl. Ex. B at 119:15-21, 121:14-123:2, Ex. 7.) AMM later abandoned the Americanmarriageministries.com domain name, transitioned its primary website to TheAMM.org, and allowed its registration for Americanmarriageinistries.com to lapse on May 20, 2011.  (*Id.* 124:23, 125:5-12, 130:2-12, Ex. 8.)  AMM received multiple notices of the impending lapse and the opportunity to "redeem" the Americanmarriageministries.com domain name, but did not do so.  (*Id.* 133:2-8, Ex. 8.)

Motion for Partial Summary Judgment– 1
2:19-cv-00301-RSL

Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA  98154
Ph: 206.701.0331
Fax: 206.701.0332

1

C.  **ULC Monastery's Registration and Use of Americanmarriageministries.com**

2    ULC Monastery registers multiple domain names as part of its overall get-the-word-out

3    strategy.  At some point prior to July 26, 2011, ULC Monastery placed a backorder on the

4    Americanmarriageministries.com domain name (so that ULC Monastery would be able to obtain

5    the domain name if it ever became available), automatically obtained the domain name through

6    that backorder on July 27, 2011, and redirected the domain name to its main site at

7    TheMonastery.org on July 28, 2011.  (Freeman Decl.  ¶¶ 9-10, 16-18, Ex. A at 1, 5.)  AMM knew

8    at all times that ULC Monastery operated TheMonastery.org, and knew no later than 2013 that

9    ULC Monastery used Americanmarriageministries.com to redirect visitors to TheMonastery.org.

10   (Matesky Decl. Ex. B at 98:21-99:8, 137:10-14, 141:9-14, 146:23-147:3, 149:12-16.)  AMM

11   claims it learned of actual confusion between the Americanmarriageministries.com website and

12   the TheAMM.org website in 2013.  (*Id.* at 141:15-142:12.).

13   On July 12, 2014, AMM's counsel contacted the third party hosting the site at the

14   Americanmarriageministries.com domain name claiming it infringed AMM's trademark rights.

15   (Wozeniak Decl. submitted herewith ("Wozeniak Decl.") ¶ 5, Ex. A.)  AMM did not contact ULC

16   Monastery directly.  By November 17, 2014, ULC Monastery redesigned the

17   Americanmarriageministries.com website to post the text of an order from a Superior Court Judge

18   opining that ministers ordained by AMM could not legally officiate marriages in the District of

19   Columbia, and commentary on that order.  AMM regularly monitored the site and was aware of

20   this content by at least December 26, 2014. (ECF No. 28, ¶¶ 90-93; Matesky Decl. Ex. B at 156:10-

21   12, 163:3-9, 249:21, 250:17-25, Ex. 24.)  On September 3, 2015, AMM's counsel sent a second

22   letter to the third party web host for Americanmarriageministries.com claiming the content

23   published on the site was false, defamatory, and causing irreparable injury to AMM, but without

24   any evidence of the alleged falsehood.  (Wozeniak Decl. ¶ 7, Ex. B.)  AMM still did not contact

25   ULC Monastery directly.

26

Motion for Partial Summary Judgment– 2
2:19-cv-00301-RSL

Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA  98154
Ph:  206.701.0331
Fax: 206.701.0332

### D.  **ULC Monastery's Descriptive Use of "American marriage ministries"**

ULC Monastery has often used the words "American marriage ministries" to describe itself and other marriage ministries operating in the U.S.  For example, ULC Monastery published the following statement on the GetOrdained.org website: "Instead of joining a foreign organization, we would urge you to consider joining an American marriage ministry such as the Universal Life Church."  Such use explicitly notes that there are multiple American marriage ministries through which a person can become a marriage officiant.  (*See* Am. Countercls., ECF No. 28, ¶ 67-74.)  ULC Monastery has used the phrase "American marriage ministries" descriptively in this fashion since at least 2012.  (Wozeniak Decl. ¶ 10 Ex. C; Matesky Decl. Ex. B at Exs. 15-16.)

### E.  **The "American Marriage Ministries" Trademark Application**

On June 26, 2014, AMM applied to register the claimed "American Marriage Ministries" trademark for ordination services.  (Matesky Decl. ¶ 5, Ex. C at 50-56.)  The PTO rejected AMM's application on the grounds that the words "American Marriage Ministries" were not distinctive for such services.  (*Id.* at 42-43.)  AMM responded by claiming distinctiveness under Section 2(f) of the Lanham Act, i.e., that the words "American Marriage Ministries" were <u>not</u> inherently distinctive, but had acquired distinctiveness as a trademark through use in connection with AMM's services.  AMM's counsel swore the words "American Marriage Ministries" had become distinctive through AMM's substantially exclusive and continuous use in commerce for at least the immediately preceding five years.  (*Id.* at 39, 41.)

The PTO rejected AMM's application again, stating that a declaration of five-years' exclusive use was insufficient to show acquired distinctiveness "because the applied-for mark is highly descriptive of applicant's services."  (*Id.* at 13-14.)  In response, AMM provided documentation suggesting that it had ordained 250,000 individuals and disclaimed any rights in the words "marriage ministries." (*Id.* at 6.)  On January 19, 2016, the PTO ultimately issued Registration No. 4887624 for the claimed "American Marriage Ministries" mark.  (*Id.* at 1.)

Motion for Partial Summary Judgment– 3
2:19-cv-00301-RSL

Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA  98154
Ph:  206.701.0331
Fax: 206.701.0332

### F. **AMM's Counterclaims**

On March 26, 2019, AMM filed seven counterclaims: **(1)** Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114; **(2)** Cybersquatting under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); **(3)** False Advertising and Commercial Disparagement under the Lanham Act, 15 U.S.C. § 1125(a); **(4)** Violation of the Washington Consumer Protection Act ("WCPA"), RCW 19.86; **(5)** common law Defamation *Per Se*; **(6)** common law Trade Libel; and **(7)** common law Trademark Infringement.  (ECF Nos. 6, 28) AMM's Lanham Act trademark infringement, common law trademark infringement, and ACPA claims are based on ULC Monastery's use of the words "American marriage ministries." (ECF No. 28, ¶¶ 110-19, 124-34, 192-97.)  AMM's defamation and trade libel claims are based on the allegedly false statements published on the Americanmarriageministries.com website.  (*Id.* ¶¶ 176-79, 181-88).   AMM's WCPA claim and Lanham Act false advertising and commercial disparagement claims are based in part on use of the words "American marriage ministries" (*id.* ¶¶ 143-44, 158-68), and in part on the allegedly false statements on the Americanmarriageministries.com website (*id.* ¶¶ 135-42, 145-49 169-71).

### III.    **LEGAL AUTHORITY AND ARGUMENT**

ULC Monastery is entitled to summary judgment dismissing each of AMM's seven counterclaims, because **(1)** AMM's four state law claims are barred by the statutes of limitations. **(2)** AMM's three federal claims are barred by laches, and **(3)** AMM's state and federal claims based on the alleged "American Marriage Ministries" trademark (Lanham Act and common law trademark infringement, ACPA, and Lanham Act False Advertising and Commercial Disparagement) fail for **(1)** lack of valid trademark rights and **(2)** lack of infringing use.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Where the movant bears the burden of proof on an issue, it must show that no reasonable trier of fact could find other than for the movant; but where the non-movant bears the

Motion for Partial Summary Judgment– 4
2:19-cv-00301-RSL

Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA  98154
Ph:  206.701.0331
Fax: 206.701.0332

burden of proof, the movant may simply point to the absence of evidence on which a reasonable trier of fact could find for the non-movant. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995)("[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor."). The Court must view the evidence and draw reasonable inferences in favor of the non-movant. *U.S. v. Johnson Controls, Inc.,* 457 F.3d 1009, 1013 (9th Cir. 2006). However, "the mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton*, 68 F.3d at 1221.

### A.  AMM's State Law Counterclaims are Barred by the Statutes of Limitations

All four of AMM's state law claims are barred because AMM waited well beyond the applicable limitations periods to file suit. "A statute of limitation bars plaintiff from bringing an already accrued claim after a specified period of time." *Rice v. Dow Chemical Co.*, 124 Wn.2d 205, 211 (Wash. 1994). A claim generally accrues when the underlying actions giving rise to the claim occur. *White v. Johns-Mansville Corp.,* 103 Wash.2d 344, 348 (1985). AMM filed its counterclaims on March 26, 2019, nearly eight years after ULC Monastery registered and began using the Americanmarriageministries.com domain name on July 28, 2011, and over four years after ULC Monastery published the allegedly false statements on that site on November 17, 2014. (ECF No. 6.) Accordingly, each of AMM's claims is barred by the applicable statute of limitations.

### 1.  AMM's Defamation and Trade Libel Claims are Barred.

Claims for defamation and trade libel are subject to a two-year limitations period. RCW 4.16.100(1); *see Eastwood v. Cascade Broad. Co.,* 106 Wn.2d 466, 722 P.2d 1295 (1986) (two-year statute of limitations for defamation applied to other claims based on false statements); *see also GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 507 (E.D. Pa. 2018) (applying defamation statute of limitations to trade libel claim); *Enigma Software Group USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 276 (S.D.N.Y. 2016) (same). AMM's defamation and trade libel claims arise from the allegedly false statements ULC Monastery published on the

Motion for Partial Summary Judgment– 5
2:19-cv-00301-RSL

Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA  98154
Ph: 206.701.0331
Fax: 206.701.0332

Americanmarriageministries.com website beginning November 17, 2014, which AMM knew of no later than December 26, 2014.  (*See* ECF No. 28, ¶¶ 82, 90-93, 173, 178; Matesky Decl. Ex. B at 163:3-9.)  Accordingly, the two-year limitations period expired no later than December 26, 2016—long before AMM filed its claims on March 26, 2019—and AMM's claims are barred.

## 2. AMM's Common Law Trademark Infringement Claim is Barred

Claims for trademark infringement are subject to a 3-year limitations period.  *See* RCW 4.16.080(2) & (4); *Bikila v. Vibram USA Inc.,* 218 F. Supp. 3d 1206, 1213 (W.D. Wash. 2016); *Ormsby v. Barrett*, 85 U.S.P.Q.2d 1700, 1702 (W.D. Wash. 2008).  AMM's common law trademark infringement claim is based on ULC Monastery's use of the words "American marriage ministries," including in the Americanmarriageministries.com domain name.  (*See* ECF No. 28, ¶¶ 189-190.)  Thus, AMM's common law trademark infringement claim accrued on July 28, 2011, when ULC Monastery registered the Americanmarriageministries.com domain name and used it to redirect visitors to TheMonastery.org.  (Freeman Decl. ¶ 17-18, Ex. A at 5).  Since the Americanmarriageministries.com domain was AMM's former primary domain name, ULC Monastery's redirection to TheMonastery.org was public, and AMM knew that TheMonastery.org was operated by ULC Monastery, AMM should reasonably have known of ULC Monastery's use of the Americanmarriageministries.com domain.  In any event, AMM claims it knew such use was causing confusion at least as early as 2013, and accused ULC Monastery of infringement on July 12, 2014.  (Matesky Decl. Ex. B at 141:15-142:12, 146:23-147:3, 155:14-19, Ex. 9).  Thus, AMM waited beyond the three-year limitations period to file its claim on March 26, 2019, and its claim is barred.

## 3. AMM's Washington Consumer Protection Act Claim is Barred

Independent WCPA claims are subject to a four-year limitations period.  RCW 19.86.120.  However, where a WCPA claim is based on underlying conduct subject to a separate limitations period, a claimant cannot avail itself of a longer limitations period by couching its grievance under the WCPA.  *See Killian v. Seattle Pub. Sch.*, 189 Wn.2d 447, 455 (2017) (plaintiff's WCPA claim

subsumed by "duty of fair representation" claim, subject to 2 year limitations period); *see also Eastwood,* 106 Wn.2d at 469 (two-year limitations period for defamation applied to false light publicity claim based on same acts).  Here, AMM's WCPA claim is based on the same acts underlying its defamation and trade libel claims (publication of allegedly false statements on Americanmarriageministries.com) and its common law trademark infringement claim (allegedly infringing use of the words "American marriage ministries").  (*See* ECF No. 28, ¶ 157-68.)  Thus, AMM's WCPA claim is subject to, and barred by, the two- and three-year limitations periods discussed above.  But, even assuming the four-year limitations period applies, AMM's CPA claim accrued at the very latest by December 26, 2014—over four years before AMM filed its claim on March 26, 2019, and is barred regardless.

## B.  AMM's Federal Counterclaims are Barred by Laches

AMM's three federal counterclaims are barred by laches.  The defense of laches "prevents suit by a plaintiff who, with full knowledge of the facts, sleeps upon his rights." *Ory v. McDonald*, 68 U.S.P.Q.2d 1812, 1815 (C.D. Cal. 2003) (citing *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-51 (9th Cir. 2001)).  Laches applies where (1) the claimant unreasonably delayed in filing suit, and (2) such delay caused the defendant to suffer some prejudice.  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 835 (9th Cir. 2002).  Courts may grant summary judgment on the basis of laches. *See Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 980 (9th Cir. 2006).  Laches bars AMM's three federal claims here because AMM unreasonably delayed in filing its claims, and ULC Monastery suffered economic and evidentiary prejudice by that delay.

### 1.  Laches Presumptively Bars AMM's Claims

When a claimant files a federal claim after expiration of the analogous state law limitations period, there is a "strong presumption" that laches bars the claim.  *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006) ("If the plaintiff filed within that period, there is a strong presumption against laches. If the plaintiff filed outside that period, the presumption is reversed.").  This presumption applies "if any part of the claimed

1    wrongful conduct occurred beyond the limitations period." *See Jarrow,* 304 F.3d at 837-38.  In

2    such cases, it is the claimant's burden to prove laches does not bar the claim.  *See Ormsby v.*

3    *Barrett,* 85 U.S.P.Q.2d 1700, 1702 (W.D. Wash. 2008).

4        AMM's federal claims are based on ULC Monastery's use of the words "American

5    marriages ministries" and accrued by July 28, 2011, nearly eight years prior to filing.  (ECF No.

6    28, ¶ 110-119, 124-31, 143-44; *Supra* at 2, 6.)  The most analogous limitations period for these

7    claims is the 3-year period applicable to the tort of trade name infringement.  RCW 4.16.080(2);

8    *Bikila,* 218 F. Supp. 3d at 1213.  To the extent AMM's federal claim for false statement and

9    commercial disparagement arises in part from allegedly false statements published on the

10   Americanmarriageministries.com site, the most analogous limitations period is the two-year period

11   applicable to defamation claims.  *See Eastwood,* 106 Wn.2d at 469 (applying two-year defamation

12   limitations period to "false light publicity" claim arising from same facts as defamation claim);

13   ECF No. 28, ¶ 135-38, 145-47.  As this claim accrued no later than December 26, 2014, over four

14   years prior to filing, *supra* at 5-6, AMM waited beyond the analogous limitation period to file.

15   Thus, laches is presumed to bar all of AMM's federal claims, and AMM bears the burden of

16   proving laches does not apply.[1]

17        2.   <u>AMM Unreasonably Delayed Filing it Claims</u>

18        AMM's delay is presumptively unreasonable, and AMM cannot rebut this presumption.

19   AMM consciously chose to ignore the Americanmarriageministries.com site because it wanted to

20   "avoid all interaction" with ULC Monastery.  (Matesky Decl. Ex. B at 55:9-11, 57:19-22, 61:8-

21   16, 62:3-6, Ex. 2)  That is not a reasonable excuse for failing to diligently enforce its claimed

22   rights.  *See Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1102 (9th Cir. 2004)

23   ("Companies expecting judicial enforcement of their marks must conduct an effective policing

24   effort.")  Moreover, the factors identified by the Ninth Circuit to consider in determining whether

25

26   ───────────────
     [1] AMM's state law claims should be dismissed based solely on running of the statutes of
     limitations, but laches is an independent grounds for dismissal of those claims as well.

     Motion for Partial Summary Judgment– 8
     2:19-cv-00301-RSL

1    delay is reasonable in trademark cases show AMM's delay was unreasonable.  *See Tillamook*

2    *Country Smoker*, 465 F.3d at 1108; *cf. FLIR Systems, Inc. v. Sierra Media, Inc.*, 965 F.Supp.2d

3    1184, 1204 (D. Or. 2013) (Laches is based on "a consideration of the circumstances of each

4    particular case and a balancing of the interests and equities of the parties," and not by rigid

5    application of rules.)

6       **(1) Strength and value of the trademark rights asserted.**  As discussed *infra*, at 14-19,

7    AMM has no trademark rights at all in the claimed "American Marriage Ministries" trademark.

8    AMM has also never licensed out the claimed mark and has produced no evidence of value of the

9    claimed mark.  (Matesky Decl. Ex. B at 278:15-25).

10       **(2) The plaintiff's diligence in enforcing mark.**  AMM consciously decided <u>not</u> to

11    enforce its claimed mark against ULC Monastery despite knowledge of alleged infringement.

12       **(3) Harm to senior user if relief is denied.**  There would be no cognizable harm if relief

13    is denied, because the ULC Monastery's use is non-infringing.  *See infra*, at 19-23.

14       **(4) Good faith ignorance by junior user.**  ULC Monastery had no notice that AMM

15    claimed trademark rights in the descriptive words "American marriage ministries" until after it

16    began using the Americanmarriageministries.com domain in 2011.  (Freeman Decl. ¶ 35.)  ULC

17    Monastery's has engaged in good faith nominative or descriptive fair use.  *See infra*, at 20-22.

18       **(5) Competition between senior and junior users.**  While the parties may "compete" for

19    ministers or to spread their respective ideas, this makes AMM's conscious decision not to enforce

20    its claimed mark against ULC Monastery less reasonable.

21       **(6) Extent of harm suffered by the junior user because of senior user's delay.**  AMM's

22    unreasonable delay has exposed ULC Monastery to a potential multi-million dollar damages claim

23    and prejudiced ULC Monastery's ability to defend itself.  *Infra*, at 10-11.  AMM now claims nearly

24    $5 million in damages for a period beginning nearly seven years after ULC Monastery began using

25    the Americanmarriageministries.com domain.  *Id.*  Where delay is lengthy, a lesser showing of

26    prejudice is required to invoke laches.  *See Zelazny v. Lyng*, 853 F.2d 540, 543 (7th Cir. 1988)

Motion for Partial Summary Judgment– 9
2:19-cv-00301-RSL

Matesky Law PLLC
1001 4ᵗʰ Ave., Suite 3200
Seattle, WA  98154
Ph: 206.701.0331
Fax: 206.701.0332

1  ("[T]he delay was lengthy—approximately eight years from the plaintiff's termination—and [the

2  claimant] has not offered any explanation for not bringing suit earlier.").

3           3.   ULC Was Prejudiced by AMM's Delay

4           AMM's unreasonable delay has caused ULC Monastery both economic and evidentiary

5  prejudice.  Prejudice is presumed and it is AMM's burden to prove that ULC Monastery has <u>not</u>

6  suffered any prejudice.  *See Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 409 (6th

7  Cir. 2002).  AMM cannot meet this burden, because **(a)** the damages claimed by AMM are

8  significantly higher due to AMM's delay, and **(b)** ULC Monastery's ability to defend against

9  AMM's claims has been prejudiced due to AMM's delay.

10             **a.   AMM's Unreasonable Delay Increased Potential Damages**

11          ULC Monastery has suffered economic prejudice from AMM's unreasonable delay

12  because the $4.9 million in damages AMM seeks would not be at stake if AMM had acted

13  diligently.  (*See* King Decl., ECF No. 76, ¶ 6.)  "Economic prejudice may arise where a defendant…

14  will…incur damages which likely would have been prevented by earlier suit."  *A.C. Aukerman Co.*

15  *v. R.L. Chaides Const. Co.,* 960 F.2d 1020, 1033 (Fed. Cir. 1992), *overruled on other grounds by*

16  *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC,* __ U.S. __, 137 S. Ct. 954

17  (2017).   Where a defendant faces increased potential liability simply because it continued

18  allegedly-infringing practices while the claimant slept on its rights, it suffers economic prejudice.

19  *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984) ("Execuair was prejudiced

20  because it continued engaging in its existing practices, incurring additional potential liability by

21  reason of Whittaker's failure to take prompt action."); *Nartron Corp.*, 305 F.3d at 409;  *Herman*

22  *Miller Inc. v Palazzetti Imports and Exports Inc.*, 270 F.3d 298, 322 (6th Cir. 2001).  ULC

23  Monastery has suffered precisely this type of prejudice due to AMM's unreasonable delay.

24          The vast majority of damages claimed by AMM would be unavailable if AMM had

25  promptly filed its claims.  AMM first claimed it suffered under $300,000 in annual losses in 2017

26  and nearly $1 million in annual losses in both 2018 and 2019.  (King Decl., ECF No. 76, ¶ 6.)

Motion for Partial Summary Judgment– 10
2:19-cv-00301-RSL

AMM now claims it suffered $2,443,977.34 in damages from April 2018 to March 2020, and seeks an <u>additional</u> $2,443,977.34 in ULC Monastery's supposed "increased revenue" during that period. (Matesky Decl. ¶ 6, Ex. D at Resp. No. 13.)  This $4.9 million damages claim arises entirely from a time period <u>beginning</u> nearly seven years after ULC Monastery began using the domain name Americanmarriageministries.com.  AMM's testimony shows that any damages arising prior to 2018 are a fraction of those claimed after April 2018.  (King Decl., ECF No. 76, ¶ 6.; Matesky Decl. Ex. A at 217:14-16.)  ULC Monastery has thus "incur[red] additional potential liability by reason of [AMM's] failure to take prompt action."  *See Whittaker Corp.*, 736 F.2d at 1347.

**b.  AMM's Unreasonable Delay Caused Evidentiary Prejudice**

AMM's long delay has prejudiced ULC Monastery's ability to defend itself through degradation, loss, and unavailability of evidence.  Such prejudice "includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died." *Danjaq*, 263 F.3d at 955; *Kepner-Tregoe, Inc. v. Executive Development, Inc.*, 79 F.Supp.2d 474, 491 (D.N.J. 1999) ("Evidentiary prejudice may arise from a defendant's inability to present a full and fair defense on the merits because of the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts."). AMM's long delay has prejudiced ULC Monastery's ability to mount a full and fair defense regarding **(i)** its intent behind the original backorder, registration, and use of the Americanmarriageministries.com domain name, **(ii)** AMM's damage claims, and **(iii)** the validity of AMM's alleged "American Marriage Ministries" trademark.

      *i.  ULC Monastery Suffered Evidentiary Prejudice Regarding Original Backorder, Registration, and Use of Americanmarriageministries.com*

ULC Monastery's intent in registering and using the Americanmarriageministries.com domain name is a necessary element of AMM's ACPA claim, and a material issue for its Lanham Act claims.  *See* 15 U.S.C. 1025(d)(1)(A)(i) (requiring "bad faith intent to profit."); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348, 354 (9th Cir. 1979) (intent is factor in infringement analysis);

Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA  98154
Ph:  206.701.0331
Fax: 206.701.0332

1  ECF No. 28, ¶¶ 114, 132, 152 (alleging ULC Monastery acted "knowingly, willfully, maliciously,

2  and with intent to harm").  AMM's delay has prejudiced ULC Monastery's ability to muster relevant

3  evidence on this issue.

4        ULC Monastery backordered the Americanmarriageministries.com domain name over

5  nine years ago, but nobody at ULC Monastery remembers who placed the backorder, when it was

6  placed, why it was placed, or who made the decision to place the backorder.  (Freeman Decl. ¶¶

7  15-16, 24.)   ULC Monastery instructed GoDaddy to redirect the domain name to

8  TheMonastery.org, but nobody at ULC Monastery remembers why it did this instead of putting up

9  a website at Americanmarriageministries.com.  Years later, ULC Monastery did put up a website

10 at Americanmarriageministries.com, but nobody at ULC Monastery remembers the circumstances

11 surrounding this decision, after years of simply redirecting visitors to TheMonastery.org. (*Id.* ¶¶

12 18-22, 24.)  George Freeman, the 81-year-old Presiding Chaplain of ULC Monastery, is the only

13 remaining ULC Monastery employee involved in domain name and website decisions from this

14 time frame, and he cannot recall the circumstances surrounding ULC Monastery's ordering,

15 registration, and initial use of the Americanmarriageministries.com domain name.  (*Id.* ¶¶ 23-24.)

16       The other individuals who potentially may have been involved in these initial decisions

17 regarding the Americanmarriageministries.com domain left ULC Monastery in 2014 or earlier.  In

18 the case of former web developer Jon Daniel, he is now deceased.  (*Id.* ¶¶ 25-29.)   In the case of

19 former webmasters Ali Sattar and Jeff Vogt, who left employment six or more years ago, ULC

20 Monastery does not have access to their email accounts.  (*Id.* ¶¶ 27-28; Wozeniak Decl. ¶¶ 8-9.)

21 ULC Monastery is thereby prejudiced in its defense by AMM's long delay. *See Jackson v. Axton*,

22 25 F.3d 884, 889 (9th Cir. 1994) (upholding summary judgment of laches based on faded

23 memories, unavailability of witnesses, and lost records); *Whitfield v. Anheuser-Busch, Inc.*, 820

24 F.2d 243, 245-46 (8th Cir. 1987) (upholding laches determination where individuals involved in

25 termination of employee could not recall events leading to termination); *Goodman v. McDonnell*

26

Motion for Partial Summary Judgment– 12
2:19-cv-00301-RSL

Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA  98154
Ph: 206.701.0331
Fax: 206.701.0332

*Douglas Corp.*, 606 F.2d 800, 808 (8th Cir. 1979) (upholding laches determination where "employees who worked on matters related to this suit have retired, transferred, quit or died.").

### ii.  ULC Monastery Suffered Evidentiary Prejudice
Regarding AMM's Damages Claims

AMM's damages claim is founded solely upon memories that AMM admits are degraded by time.  AMM's personnel repeatedly testified they could not recall the circumstances of events from years ago.  (Matesky Decl. Ex. A at 13:19-20, 14:2-10, 16:6-11, 21:6-13, 22:4-23:10, 26:18-27:4, 28:12-22, 61:22-24, 62:15-63:10, 108:16-109:24, 110:20-22, 111:12-14, 114:21-24, 115:9-17, 185:7-15, Ex. B at , 25:2-4, 58:2-3, 63:3, 64:7-13, 69:10, 97:18, 101:25-102:7, 116:4, 123:5, 130:23-131:8, 133:13-15, 22-23, 136:3-15, 138:18-139:1, 139:25-140:1, 152:3-4, 163:21-164:3, 176:8-13, 177:7-12).  Yet, these degraded memories are the linchpin to AMM's damages claim.

AMM's damages theory (which ULC Monastery disputes) is that, as the Americanmarriageministries.com website moved up in Google search rankings, AMM suffered a corresponding loss in sales.  (*Id.* Ex. A at 217:14-16; 322:3-18)  Yet, AMM has produced no documentary evidence of Google search rankings.  Its theory is based solely on the vague and conflicting memories of AMM personnel.  Mr. King testified he had no idea what Google search rankings were for Americanmarriageministries.com in 2016 or 2017.  (*Id.* at 226:3-15.)  Mr. Yoshioka testified that AMM did not engage in any systematic review of such search rankings. (*Id.* Ex. B at 183:8-9.)  He also testified that AMM's sales "immediately" plummeted when the site went up at Americanmarriageministries.com site with "that negative language," (i.e., in November 2014), contradicting the claim that sales dropped off in April 2018 due to increased search prominence.  (*Id.* at 70:16-18, 72:4-9.)  ULC Monastery is prejudiced by having to defend against a multi-million dollar damages claim based solely on such vague and conflicting memories, where "testimony contains inconsistencies, gaps, and in some places speculation instead of memory."  *See Jackson*, 25 F.3d at 889 (9th Cir. 1994).

Motion for Partial Summary Judgment– 13
2:19-cv-00301-RSL

Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA  98154
Ph: 206.701.0331
Fax: 206.701.0332

*i.   AMM's Unreasonable Delay Prejudiced ULC Monastery's
Collection of Trademark Distinctiveness Evidence*

AMM's delay prejudiced ULC Monastery's ability timely collect evidence regarding the distinctiveness of the claimed "American Marriage Ministries" trademark.   To support its trademark claims, AMM must prove the alleged "American Marriage Ministries" mark had acquired distinctiveness (secondary meaning) at the time the alleged infringement began (i.e., July 28, 2011, and no later than July 12, 2014).  *Infra*, at 18.   Due to AMM's delay, ULC Monastery did not conduct a secondary meaning survey until 2019.   (Matesky Decl. Ex. E at 13.) This prejudices ULC Monastery in two ways.  First, a survey conducted years earlier would have shown even more clearly that the claimed "American Marriage Ministries" mark had not acquired secondary meaning. *See infra*, at 19.  Second, AMM may argue that delay in conducting the survey diminishes the weight to be afforded to the survey.  Such evidentiary prejudice justifies application of laches. *FLIR Systems*, 965 F. Supp. 2d at 1209-10 (applying laches where secondary meaning survey was conducted four years after alleged infringement began).

**C.   AMM's Trademark-Based Claims Fail on the Merits**

As a separate and independent basis, summary judgment should be granted in ULC Monastery's favor on AMM's trademark-based claims (Lanham Act and common law trademark ACPA, and Lanham Act False Advertising and Commercial Disparagement) because **(1)** AMM cannot establish rights in the claimed "American Marriage Ministries" trademark, and **(2)** ULC Monastery's use is non-infringing.

1.   AMM Has No Valid Trademark Rights

In order to prevail on its trademark claims, AMM must show that it has valid trademark rights.  *See Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002).  Because its claimed "American Marriage Ministries" mark is not inherently distinctive, AMM must prove it has acquired secondary meaning, not only now, but at the time the alleged infringement began. *See Converse, Inc. v. USITC*, 909 F.3d 1110, 1116-17 (Fed. Cir. 2018).  Because AMM provides

Motion for Partial Summary Judgment– 14
2:19-cv-00301-RSL

no competent evidence of such secondary meaning, summary judgment should be granted dismissing AMM's trademark-based claims.

### a.  Applicable Legal Standards

AMM bears the burden of proving that it holds a valid trademark.  *Tie Tech*, 296 F.3d at 783.  To be valid, an alleged trademark must be distinctive. *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1197 (9th Cir. 2009).  Case law recognizes four categories of potential marks in relation to distinctiveness: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful.  *See Filipino Yellow Pages v. Asian Journal*, 198 F.3d 1143, 1146-47 (9th Cir. 1999).  Suggestive, arbitrary, and fanciful marks are inherently distinctive, whereas generic and descriptive terms are not.  *Lahoti*, 586 F.3d at 1197.

By seeking registration under Section 2(f) of the Lanham Act, Matesky Decl. ¶ 5, Ex. C pp. 13, 39, AMM conceded that the claimed "American Marriage Ministries" mark is not inherently distinctive, but is at most descriptive.  *See Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1358 (Fed. Cir. 2009) ("[A]n applicant's reliance on Section 2(f) during prosecution presumes that the mark is descriptive."); *In re Am. Furniture Warehouse CO*, 126 U.S.P.Q.2d 1400, 1403 (T.T.A.B. 2018) (reliance on Section 2(f) "can be viewed as a concession by Applicant that the wording itself is not inherently distinctive for those services").

As a descriptive term, the claimed "American Marriage Ministries" mark is only valid if it has acquired "secondary meaning" in the minds of consumers.  *See Filipino Yellow Pages*, 198 F.3d at 1147.  This occurs only if the consuming public recognizes the words "American Marriage Ministries" as indicating "a single thing coming from a single source." *See Carter-Wallace, Inc. v. Procter & Gamble Co.,* 434 F.2d 794, 802 (9th Cir. 1970); *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 344 (E.D.N.Y. 2007).  A highly descriptive mark requires an especially strong showing of secondary meaning to be protected.  *Filipino Yellow Pages,* 198 F.3d at 1151 (the claimed "Filipino Yellow Pages" mark "could be a valid trademark only with a strong showing of strong secondary meaning.").

Motion for Partial Summary Judgment– 15
2:19-cv-00301-RSL

Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA  98154
Ph: 206.701.0331
Fax: 206.701.0332

While trademark registration constitutes prima facie evidence of trademark validity, that evidence may be rebutted by a showing that the claimed mark is not distinctive by a preponderance of the evidence. *Tie Tech*, 296 F.3d at 783; *Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.*, 684 F.2d 1316, 1319 (9th Cir. 1982). If the defending party meets this burden, "the evidentiary bubble bursts and the [claimant] cannot survive summary judgment." *Tie Tech*, 296 F.3d at 783. Because AMM obtained registration under Section 2(f), its registration certificate "is prima facie evidence that the mark has acquired distinctiveness only as of the time of its registration." *See Zinner v. Olenych,* 108 F. Supp. 3d 369, 383 (E.D. Va. 2015) (emphasis added).

Yet, to prevail, AMM must show that the claimed "American Marriage Ministries" mark was distinctive at the time the alleged infringement began. *See Converse, Inc. v. USITC*, 909 F.3d 1110, 1116-17 (Fed. Cir. 2018); *Ashland Oil, Inc. v. Olymco, Inc.*, 64 F.3d 662 (6th Cir. 1995) ("The owner of a descriptive mark must establish that the mark had secondary meaning prior to its first use by the challenger.") (unreported). "If the senior user cannot prove that its mark possessed secondary meaning at the time defendant commenced its use, there can be no infringement." *Quoc Viet Foods, Inc. v. VV Foods, LLC*, 192 F. Supp. 3d 1067, 1073 (C.D. Cal. 2016) (quoting 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 16:34 (4th ed. 2015)); *see also GoPets Ltd. v. Hise,* 657 F.3d 1024, 1030 (9th Cir. 2011)(An ACPA claimant must prove its claimed mark was "distinctive at the time of registration of the domain name."); *Black v. Irving Materials, Inc.*, 398 F. Supp. 3d 592, 610 (N.D. Cal. 2019) (same).

### b. The Claimed "American Marriage Ministries" Mark is Not Distinctive

ULC Monastery has produced consumer survey evidence proving the claimed "American Marriage Ministries" mark has not obtained secondary meaning. (Matesky Decl. ¶ 7, Ex. E). Consumer survey evidence is considered the most persuasive evidence of whether a mark has obtained secondary meaning. *See Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 614 (9th Cir. 1989); *see also LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 638-39 (S.D.N.Y. 2016) (collecting cases).

Motion for Partial Summary Judgment– 16
2:19-cv-00301-RSL

Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA  98154
Ph: 206.701.0331
Fax: 206.701.0332

"Courts typically view survey evidence indicating that 50% or more of the consuming public associate a mark with the company's products as sufficient to demonstrate secondary meaning." *Bay State Sav. Bank v. Baystate Financial Services, LLC*, 484 F. Supp. 2d 205, 217 (D. Mass. 2007) (collecting cases).   Surveys showing less than 50% of respondents associate an alleged mark with the trademark claimant generally fail to demonstrate secondary meaning.  *Id.* ("[A] figure in the thirties can only be considered marginal.") (quoting *Spraying Sys. Co. v. Delavan, Inc.,* 975 F.2d 387, 394 (7th Cir.1992)); *Boston Beer Co.*, 9 F.3d at 183 n.5 (1st Cir. 1993) ("[A] positive response rate of 36% is hardly overwhelming"); *Ashland Oil, Inc. v. Olymco, Inc.*, 905 F. Supp. 409, 411 (W.D. Ky. 1994) (referring to 26% recognition/association rate as a "small segment of the consuming public" and insufficient to establish secondary meaning), *aff'd* 64 F.3d 662 (6th Cir. 1995) (unreported).

The expert report of Rhonda Harper shows only 23% of prospective users associate the words "American Marriage Ministries" with a single source—<u>far</u> below the generally-recognized threshold for secondary meaning.  (Matesky Decl. Ex. E at 6, 16.); *see I.P. Lund Trading ApS v. Kohler Co.*, 118 F. Supp. 2d 92, 111 (D. Mass. 2000) (No jury could find secondary meaning where only survey evidence shows lack of secondary meaning).  Such evidence proves the claimed "American Marriage Ministries" mark has not obtained secondary meaning.  At a minimum, this evidence pierces any presumption of distinctiveness, shifting the burden of proving distinctiveness back onto AMM.  *Tie Tech*, 296 F.3d at 783; *Filipino Yellow Pages,* 198 F.3d at 1147, 1151.

AMM's burden is particularly high, requiring a "strong showing of strong secondary meaning," because the claimed "American Marriage Ministries" mark is "highly descriptive."  *See Filipino Yellow Pages*, 198 F.3d at 1151; (Matesky Decl. ¶ 5, Ex. C p. 13.)  Courts regularly hold that marks combining a geographic/nationality term with a generic term or phrase are highly

1  descriptive.[2]  *E.g., Filipino Yellow Pages*, 198 F.3d at 1151 ("Filipino Yellow Pages" is either

2  generic or "the feeblest of descriptive marks"); *Alcatraz Media, Inc. v. Chesapeake Marine Tours*

3  *Inc.*, Nos. 92050879, 3048114 (T.T.A.B. 2013) (cancelling highly-descriptive "Annapolis Tours"

4  mark).  This is particularly true for alleged marks pairing "American" with generic phrases.  *E.g.,*

5  *Am. Diabetes Ass'n, Inc. v. Nat'l Diabetes Ass'n,* 533 F. Supp. 16 (E.D. Pa. 1981), *aff'd,* 681 F.2d

6  804 (3d Cir. 1982) ("American Diabetes Association"); *In re Monograms Am., Inc.,* 51 U.S.P.Q.2d

7  1317 (T.T.A.B. 1999) ("Monograms America"); *In re BankAmerica Corp.,* 231 U.S.P.Q. 873

8  (T.T.A.B. 1986) ("Bank of America"); *Am. Paper & Plastic Products, Inc. v. Am. Automatic*

9  *Vending Corp.*, 152 U.S.P.Q. 117 (T.T.A.B. 1966) ("American Automatic Vending").

10      AMM has not produced any survey, consumer evidence, expert testimony, or other

11  evidence sufficient to meet its high burden of proving distinctiveness.  *Cf. Chum Ltd. v. Lisowski*,

12  198 F. Supp. 2d 530, 534-35 (S.D.N.Y. 2002) (failure to conduct secondary meaning survey

13  "weighs heavily against a finding of secondary meaning.").  Thus, summary judgment should be

14  granted dismissing AMM's trademark-based claims.

### c. The Claimed "American Marriage Ministries" Mark Was Not Distinctive When Alleged Infringement Began

16      AMM produced no evidence to meet its burden of proving distinctiveness when the alleged

17  infringement and cybersquatting began.  *See GoPets,* 657 F.3d at 1030; *Converse,* 909 F.3d at

18  1116-17; *Quoc Viet Foods*, 192 F. Supp. 3d at 1073.  AMM's trademark claims arise from ULC

19  Monastery's use of the words "American marriage ministries," which began on July 28, 2011.

20  AMM itself claimed that infringement began no later than July 12, 2014.  *Supra,* at 2, 6.   Yet,

21  AMM has not alleged that the claimed "American Marriage Ministries" mark was distinctive prior

22  to registration on January 19, 2016.  (*See* Am. Countercls., ECF No. 28; (Matesky Decl. Ex. C at

---

[2] AMM conceded that the term "marriage ministries" is generic.  When the PTO stated that "the generic wording MARRIAGE MINISTRIES must be disclaimed," AMM conceded and agreed that "[n]o claim is made to the exclusive right to use marriage ministries apart from the mark as shown."  (Matesky Decl. ¶ 5, Ex. C pp. 3-4, 14).  Similarly, AMM founder Glen Yoshioka acknowledged that the term "marriage ministry" identifies <u>what</u> AMM is, not <u>who</u> AMM is: "We are a marriage ministry."  (Matesky Decl. Ex. B at 206:12-14, 207:12-20, Ex. 1 at 65:10-11).

Motion for Partial Summary Judgment– 18
2:19-cv-00301-RSL

Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA  98154
Ph: 206.701.0331
Fax: 206.701.0332

1.) AMM's registration is not evidence of distinctiveness before that date.  *See Zinner,* 108 F. Supp. 3d at 383*; see also Aromatique, Inc. v. Gold Seal, Inc*., 28 F.3d 863, 870 (8th Cir. 1994).

Ms. Harper's survey evidence showing no secondary meaning in 2019—after ten years of use by AMM—also shows that the highly-descriptive term "American Marriage Ministries" could not have acquired distinctiveness by July 2011—after only <u>two</u> years of such use.  *See Ashland Oil*, 905 F. Supp. at 413 (recognition would have been lower at the time infringement began compared to the time the secondary meaning survey was conducted, two years later); *cf. Bern Unlimited, Inc. v. Burton Corp.*, 95 F. Supp. 3d 184, 203-4 (D. Mass. 2015) (time between date alleged infringement began and date of secondary meaning survey to be considered in assessing weight of survey evidence).  Thus, AMM cannot support a necessary element of its trademark claims, no reasonable jury could find distinctiveness at the relevant time (July 28, 2011), and summary judgment should be granted in ULC Monastery's favor.

### 2.   ULC Monastery's Use of "American marriage ministries" is Non-Infringing

Even assuming AMM could demonstrate valid trademark rights, AMM's trademark claims should still be dismissed because ULC Monastery's use of the words "American marriage ministries" **(a)** is not "commercial use," **(b)** is nominative fair use, **(c)** is descriptive fair use, and **(d)** is unlikely to cause confusion.

### a.   The Alleged Infringement is Not "Commercial Use"

AMM's trademark claims based on the Americanmarriageministries.com site must fail because ULC Monastery engages in no "commercial use."  The Lanham Act prohibits confusing use of trademarks "in connection with the sale, offering for sale, distribution, or advertising of any goods or services."  *See Bosley Medical Institute, Inc. v. Kremer*, 402 F.3d 672, 676 (9th Cir. 2005).  This so-called "commercial use" requirement means there is no infringement where a mark is not used in connection with a sale of goods or services, thereby effectuating the policies of the Lanham Act and the First Amendment.  *Id.* at 676-77 ("[T]rademark rights do not entitle the owner

Motion for Partial Summary Judgment– 19
2:19-cv-00301-RSL

Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA  98154
Ph: 206.701.0331
Fax: 206.701.0332

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view."). Thus, use of a mark as a domain name to publish a commentary site regarding the claimant, without selling goods and services on the site, does not violate the Lanham Act. *See id.* at 677-79; *see also Aviva USA Corp. v. Vazirani*, 632 Fed. Appx. 885, 887 (9th Cir. 2015).

ULC Monastery uses the Americanmarriageministries.com site to publish the text of a legal opinion regarding the validity of marriages officiated by AMM ministers and commentary regarding that opinion and AMM. (Matesky Decl. Ex. B at 249:21, 250:17-25, Ex. 24) AMM has acknowledged that Americanmarriageministries.com is a "commentary site." (Matesky Decl. ¶ 5, Ex. C at 6-7.) ULC Monastery has not offered goods or services, nor included links to any other ULC Monastery site, alongside such commentary. (Wozeniak Decl. ¶ 13.) The <u>only</u> link on the site directs visitors <u>to AMM's website</u>, stating: "This webpage is not affiliated with American Marriage Ministries, located online at <u>http://www.theamm.org</u>." (*Id.*; Matesky Decl. Ex. B at 249:21, 250:17-25, Ex. 24). Such actions do not meet the "commercial use" requirement of *Bosley Medical*, and summary judgment should be granted dismissing AMM's claims of infringement.

### a.   The Alleged Infringement is Nominative Fair Use

Use of the words "American Marriage Ministries" to refer to AMM or its services constitutes nominative fair use, and "lies outside the strictures of trademark law: Because it does not implicate the source-identification function that is the purpose of trademark, it does not constitute unfair competition." *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884 (9th Cir. 2019) (quoting *New Kids on the Block v. News Am. Publ'g, Inc.,* 971 F.2d 302, 308 (9th Cir. 1992))." The nominative fair use defense applies when (1) the claimant is not readily identifiable without use of the mark, (2) the defending party used only so much of the mark as was reasonably necessary, and (3) such use did not suggest sponsorship or endorsement. All three elements apply to the Americanmarriageministries.com site.

Motion for Partial Summary Judgment– 20
2:19-cv-00301-RSL

First, "American Marriage Ministries" is AMM's corporate name.  It is not necessary for ULC Monastery to come up with some other way of referring to AMM in its commentary site.  *See Applied Underwriters*, 913 F.3d at 893-94.  Second, ULC Monastery used no more of the claimed "American Marriage Ministries" mark than was necessary to convey that the site refers to AMM.  For example, the site does not use any AMM logo or trade dress.  *See id.* at 895.  Third, the Americanmarriageministries.com site does not suggest sponsorship or endorsement by AMM.  Rather, it prominently displays a disclaimer of affiliation with AMM, and no reasonable visitor could think the content on the site is sponsored by AMM.  *See id.* at 896-87.  Thus, the undisputed facts show that the Americanmarriageministries.com site constitutes nominative fair use.

### b.  The Alleged Infringement is Descriptive/Classic Fair Use

ULC Monastery's descriptive use of the words "American marriage ministries" to accurately describe American marriage ministries constitutes descriptive or "classic" fair use.  "A junior user is always entitled to use a descriptive term in good faith in its primary, descriptive sense other than as a trademark." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150-51 (9th Cir.2002) (quoting 2 J. Thomas McCarthy, *McCarthy on Trademark and Unfair Competition* § 11.45 (4th ed. 2001)); *see also New Kids on the Block*, 971 F.2d at 306.  "The precise elements of the classic fair use defense are that the [defending party] (1) is not using the term as a trademark, (2) uses the term only to describe its goods and services, and (3) uses the term fairly and in good faith." *Bell v. Harley Davidson Motor Co.*, 539 F.Supp.2d 1249, 1257 (S.D. Cal. 2008) (citing *Cairns*, 292 F.3d at 1151).  Aside from the Americanmarriageministries.com site, AMM's trademark claims arise from ULC Monastery's use of the phrase "American marriage ministries" on the GetOrdained.org and ULC.org websites to describe U.S. marriage ministries.  (Am. Countercls., ECF No. 28, ¶¶ 60-74, 110-13, 143-44, 155-62, 189-94)  Such use meets all three fair use elements.

First, it is undisputed that ULC Monastery is not using the phrase "American marriage ministries" as a trademark.  The phrase is not capitalized (except for the word "American"), used

in distinctive font or size, used with a "TM" or "®" symbol, or in any other way that would indicate trademark use.  *See Harley Davidson*, 539 F. Supp. 2d at 1257 (noting lack of use in a manner "one would expect to find the source-identifiers of a product.").  AMM concedes that ULC Monastery's use of the phrase is "generic," not as a trademark, and not trademark infringement. (Matesky Decl. Ex. B 203:18-204:5, 220:3-19, 222:10-14, 223:4-5, 20-21, 224:6-9, Ex. 13 at Resps. 1-2, Exs. 15-16).  Second, the words "American marriage ministries" are used to describe characteristics of the services at issue, not to identify any source of such services.  There is no dispute that both parties are U.S.-based "marriage ministries."  *Supra*, at 18 n.2.

Third, there is no dispute that such use is made in good faith, and not to confuse consumers. "[T]he standard for good faith for fair use ... asks whether the alleged infringer intended to trade on the good will of the trademark owner <u>by creating confusion as to the source of the goods or services</u>." *Bell*, 539 F. Supp. 2d at 1258-59 (emphasis added)(quoting *Int'l Stamp Art, Inc. v. United States Postal Serv.*, 456 F.3d 1270, 1274-75 (11th Cir. 2006).  ULC Monastery's prominent use of its own trademarks on the pages where it used the phrase "American marriage ministries" demonstrates a lack of intent to confuse visitors as to affiliation with AMM.  *See Bell*, 529 F. Supp. 2d at 1259 ("Harley-Davidson demonstrated its intent not to create confusion by including the Harley-Davidson name or bar- & -shield logo on every advertisement and piece of merchandise bearing the 'Ride Hard' phrase.").

### c.  The Evidence Shows No Likelihood of Confusion

ULC Monastery is entitled to summary judgment on AMM's trademark claims because no reasonable fact finder could conclude that ULC Monastery's use of the words "American marriage ministries" is likely to cause confusion.  To prevail on a claim for trademark infringement, AMM must show that ULC Monastery's use of the words "American marriage ministries" is likely to cause a "reasonably prudent" visitor to be confused as to source or affiliation with AMM (not that

Motion for Partial Summary Judgment– 22
2:19-cv-00301-RSL

confusion is merely possible). *See Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 935 (9th Cir. 2015).

Although courts in the Ninth Circuit typically apply the eight-factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), they are not applicable in all cases, especially where competing <u>marks</u> are not at issue. *Multi Time Machine*, 804 F.3d at 936. Rather, where online non-trademark use is at issue, courts should evaluate "the labeling and appearance of the advertisements and the surrounding context on the screen" and may be able to resolve likelihood of confusion issues "by evaluation of the web page at issue and the relevant consumer." *Id.*

In the present case, no reasonable jury could find a likelihood of confusion based on (1) the weakness of AMM's claimed mark and (2) evaluation of the actual appearance of the web pages at issue. First, as discussed above, the claimed "American Marriage Ministries" mark is in fact no mark at all, but a merely descriptive or generic term. If it were protectable at all, it would be as "the feeblest of descriptive marks" and entitled to a narrow scope of protection. *See Filipino Yellow Pages*, 198 F.3d at 1151; *Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1352 (W.D. Wash. 2014)("The purpose of examining the strength of the plaintiff's mark is to determine the scope of trademark protection to which the mark is entitled."). No reasonable jury could think a "reasonably prudent" visitor would be confused into thinking AMM is the source of the web pages at issue. Indeed, even AMM does not contend as much. (Matesky Decl. Ex. B 203:18-204:5, 220:3-19, 222:10-14, 223:4-5, 20-21, 224:6-9, Ex. 13 at Resps. 1-2, Exs. 15-16.); *see also In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 11 F.3d 1460, 1467 (9th Cir. 1993) (No confusion possible due to descriptive use of "VCR-2" in manuals and by inputs of equipment clearly bearing the defendant's own brands).

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, ULC Monastery respectfully requests that the Court enter summary judgment dismissing each of AMM's counterclaims.

Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA  98154
Ph: 206.701.0331
Fax: 206.701.0332

DATED: __June 16, 2020__                        s/ Michael P. Matesky, II
                                                _____

                                                Michael P. Matesky, II (WSBA No. 39586)
                                                Matesky Law PLLC
                                                1001 4th Ave., Suite 3200
                                                Seattle, WA 98154
                                                Ph: 206.701.0331
                                                Fax: 206.701.0332
                                                Email: mike@mateskylaw.com;
                                                litigation@mateskylaw.com

                                                Michael B. Galletch, (WSBA No. 29612)
                                                411 University Street, Suite 1200
                                                Seattle, WA 98101-2519
                                                Ph: (206) 898-8040
                                                Email: mike@psbizlit.com

                                                    Attorneys for Plaintiff

Motion for Partial Summary Judgment– 24
2:19-cv-00301-RSL