UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE,<br><br>Plaintiff,<br><br>v.<br><br>MAURICE KING, *et al.*,<br><br>Defendants. | NO. C19-0301RSL<br><br>ORDER GRANTING IN PART AMERICAN MARRIAGE MINISTRIES' MOTION TO COMPEL AND MOTION TO EXTEND DISCOVERY DEADLINE |

This matter comes before the Court on "American Marriage Ministries' Motion to Compel Production of Data and Documents from Plaintiff Universal Life Church Monastery Storehouse and Motion to Extend Scheduling Deadlines by 30 Days" Dkt. # 62.[1] American Marriage Ministries ("AMM") and Universal Life Church Monastery Storehouse ("ULC") are rivals: they both provide on-line ordination services, generating sales and revenue through various websites. ULC filed this lawsuit accusing AMM of making false, defamatory, and/or misleading statement regarding ULC. It asserts claims under the Lanham Act and the Washington Consumer Protection Act ("CPA"), as well as a defamation claim. AMM filed

---

[1] Because this matter can be resolved on the papers submitted, American Marriage Ministries' request for oral argument is DENIED.

ORDER GRANTING IN PART AMERICAN
MARRIAGE MINISTRIES' MOTION TO COMPEL - 1

counterclaims based on allegations that ULC used the URL www.americanmarriageministries.com to drive traffic to ULC's websites, it used AMM's trademark without permission, and it made false, misleading, or defamatory statements regarding AMM.

On March 13, 2020, approximately two months before discovery closed, AMM served a second set of requests for production on ULC seeking financial records related to sales and profits, website analytics, marketing efforts (RFP Nos. 46-54, 56-61, 71-79) and ULC's intellectual property (RFP Nos. 64-67). ULC objected to each request on the grounds that the information sought was irrelevant, not proportional to the needs of the case, and unduly burdensome. ULC also refused to produce documents because the parties were rivals and disclosure would unfairly benefit AMM to the prejudice of ULC. AMM timely filed this motion to compel.

AMM acknowledges that its requests for ULC's financial records "are overlapping in many respects" and therefore is not requesting that ULC be compelled to provide full and complete responses to each and every request. Dkt. # 62 at 9. Rather, AMM seeks to compel production of a "sufficiently comprehensive set of financial records to enable AMM to perform a differential diagnosis of ULC's financials" to determine "whether ULC experienced[] (a) any financial harm attributable to AMM's allegedly tortious statements[] or (b) any financial benefit attributable to ULC's allegedly tortious statements and actions." *Id*.[2] ULC argues that its finances are relevant only to AMM's counterclaim for disgorgement of profits under the Lanham

---

[2] Contrary to ULC's assertion in its sur-reply (Dkt. # 98), AMM did not waive the argument that ULC's financial documents were relevant to a determination of whether ULC was, in fact, harmed by AMM's conduct.

ORDER GRANTING IN PART AMERICAN
MARRIAGE MINISTRIES' MOTION TO COMPEL - 2

Act. It further argues that its production of website data showing the behavior of customers who landed on the websites containing AMM's mark (discussed below) is sufficient to allow AMM to identify dollars which arguably flowed from the infringement. Neither argument is persuasive. AMM has asserted a CPA claim and has the burden of showing that ULC engaged in unfair or deceptive conduct that caused AMM injury. ULC's financial records are relevant to the fact and/or amount of damages under both the Lanham Act and the CPA claim. The comprehensive financial and marketing data AMM seeks will enable it to determine whether ULC's use of AMM's mark was temporally related to an uptick in ULC's web traffic and/or revenue (or, in the alternative, a decrease in AMM's web traffic and/or revenue). It will also enable AMM to screen the revenue data for confounding factors, such as a marketing push or the introduction of new products. In its response memorandum, ULC points out that web analytics alone "represent the dollars that could be argued, in theory, as being attributable to the infringement AMM alleges." Dkt. # 69 at 5. Unless ULC is willing to forego any argument that factors other than its use of AMM's mark contributed to the sale of its ordination services, AMM must be given the opportunity to meet those arguments by reviewing ULC's sales, profits, and marketing data. Supplementation will be required.

With regards to the website analytics, ULC argues that it made a rolling production (including a production on May 4th, after AMM filed its motion to compel), and has now provided reports for each of the thirteen webpages that used AMM's trademark (or a version thereof). These reports show the number of users accessing each page between January 1, 2010, and April 21, 2020, whether the user made a purchase, and the dollar value of the purchase. AMM argues that the production of summary reports generated based on parameters and

ORDER GRANTING IN PART AMERICAN
MARRIAGE MINISTRIES' MOTION TO COMPEL - 3

instructions chosen by ULC is insufficient: it seeks production of the underlying Google Analytics (or comparable) data in read-only form so that it can determine whether any additional information can be gleaned from the data points. ULC does not argue that the underlying data cannot be made available to AMM as requested,[3] but asserts that it has spent hours attempting to create custom reports that are responsive to AMM's requests and should not be required to do more. Dkt. # 71 at ¶¶ 9-18. AMM is not asking ULC to spend any more time attempting to fashion report-generating instructions to return the desired information: it will happily take on that task. But AMM is unwilling to rely on ULC's assurances that it has successfully produced a complete and accurate summary of its web data in light of discrepancies in revenue numbers between the various reports. Dkt. # 84 at 4. Because the information is relevant and ULC has not shown that the production of the data will cause undue burden, supplementation will be required.

      AMM argues that it is entitled to information regarding any intellectual property applications or registrations held by ULC, its strategies for licensing its intellectual property, and any licenses or inter-organizational agreements to which it is a party on the ground that "such information could bear on the calculation of a reasonable royalty value of ULC's use of AMM's trademark." Dkt. # 62 at 12. AMM makes no effort to show that ULC's mark (if one exists) is comparable to AMM's or could be used as a benchmark. Nor does it explain why it needs information regarding intellectual property rights other than licenses. AMM abandoned this argument in reply. No further production will be required.

---

[3] In its motion for a protective order, ULC argues that an order compelling it to produce its passwords so that AMM has access to its social media, weblogs, financial information, etc., would be unduly invasive. Dkt. # 66 at 7. AMM has not requested production of passwords, but rather production of read-only versions of the data.

ORDER GRANTING IN PART AMERICAN
MARRIAGE MINISTRIES' MOTION TO COMPEL - 4

ULC argues that it should not be required to produce "the entirety of all its operations, activities, accounting entries, and financial records" because the damages in this case are small, the "large swaths of all-encompassing information" have limited relevance to the claims and defenses asserted in this litigation, further production will require 120 hours, and production is therefore not proportional to the needs of this case. Dkt. # 69 at 10. As discussed above, however, AMM is not seeking all of ULC's financial records, but rather evidence sufficient to provide a complete picture of ULC's sales and profits over time which, when combined with the website analytics and the information regarding ULC's marketing efforts, will enable AMM to analyze the financials and determine whether ULC experienced an increase or decrease in revenues that was attributable to the conduct of which the parties complain. These are core issues in the litigation, and the requests are proportional to the needs of the case.

ULC's objection based on the rivalry between the parties is overruled. AMM has shown both relevance and proportionality, and any concerns ULC has regarding the use to which AMM may put information disclosed in discovery was presumably addressed in the Protective Order negotiated between the parties. *See* Dkt. # 26.

Finally, AMM requests a 30-day extension of the discovery deadline in order to follow-up on any supplemental production ordered by the Court. Although the precise relief requested is unhelpful (a 30-day extension of the May 17th discovery deadline would have already expired), AMM would have had sufficient time to pursue likely avenues of discovery had ULC provided timely and substantive responses to the second set of Requests for Production. Given the time that has elapsed since the motion to compel was filed, an amended case management order will be issued. The discovery extension is for the limited purpose of following up on the discovery

ORDER GRANTING IN PART AMERICAN
MARRIAGE MINISTRIES' MOTION TO COMPEL - 5

requests at issue in this motion: no discovery or discovery motions related to other requests is permitted.

For all of the foregoing reasons, AMM's motion to compel (Dkt. # 62) is GRANTED in part. ULC shall, within twenty-one days of the date of this Order, provide supplemental responses to Requests for Production Nos. 46-54, 56-61, 71-79. Although it need not produce every document that is responsive to each and every request for production, it must produce (a) the underlying Google Analytics (or comparable) data for its websites in read-only form and (b) a universe of financial documents sufficient to provide AMM with a complete picture of ULC's sales and profits over time which, when combined with the website analytics and the information regarding ULC's marketing efforts, will enable AMM to analyze the financials and determine whether ULC experienced a change in revenues that was attributable to the conduct at issue in this litigation. Documents that are wholly duplicative and are not necessary for AMM to be able to calculate the sales/profits associated with webpage activity and the potential drivers of those sales/profits need not be produced. For example, if ULC's QuickBook entries (RFP No. 51) contain the same information as its detailed sales reports (RFP No. 56), ULC need not produce both.

ULC's request for an award of fees and costs (Dkt. # 69 at 11) is DENIED.

Dated this 13th day of July, 2020.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART AMERICAN
MARRIAGE MINISTRIES' MOTION TO COMPEL - 6