UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE,<br><br>Plaintiff,<br><br>v.<br><br>MAURICE KING, *et al.*,<br><br>Defendants. | NO. C19-0301RSL<br><br>ORDER GRANTING IN PART UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE'S MOTION FOR PROTECTIVE ORDER |

This matter comes before the Court on "Plaintiff's Motion for Protective Order and to Quash Subpoenas." Dkt. # 66. Universal Life Church Monastery Storehouse ("ULC") and American Marriage Ministries ("AMM") are rivals: they both provide on-line ordination services, generating sales and revenue through various websites. ULC filed this lawsuit accusing AMM of making false, defamatory, and/or misleading statements regarding ULC. It asserts claims under the Lanham Act and the Washington Consumer Protection Act, as well as a defamation claim. AMM filed counterclaims based on allegations that ULC used the URL www.americanmarriageministries.com to drive traffic to ULC's websites, it used AMM's trademark without permission, and it made false, misleading, or defamatory statements regarding AMM.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER - 1

On March 13, 2020, approximately two months before discovery closed, AMM served a second set of requests for production ("RFPs") on ULC seeking information regarding its domain names and e-commerce activities, financial records regarding sales and profits, website and social media analytics, ULC's marketing efforts, business projections/strategies, intellectual property, and organizational charts for ULC and its affiliates. Dkt. # 67-4. ULC objected to the second set of RFPs based on the "sheer number" of the requests "in relation to the volume ULC Monastery already answered and the additional burden to respond to an additional 35 requests." Dkt. # 67-1 at 2. AMM "declined to reduce the number of RFPs, but [agreed to] confer as to objections to specific requests." *Id.* It does not appear that the parties discussed specific requests for production.

On April 3, 2020 (immediately following the parties' meet and confer regarding the second set of RFPs), AMM served another 30 RFPs and provided notice that it would issue 18 third-party subpoenas.[1] The third set of RFPs seeks information regarding a wide range of topics, including specific website data, reports/strategies regarding search engine optimization, the number of ordinations ULC conducted each month, ULC's damage claims in this litigation, how it valued its use of the www.americanmarriageministries.com URL, any policies related to document retention, financial bookkeeping, and domain names, any fines levied or allegations made against ULC, and other legal proceedings in which ULC participated. Dkt. # 67-5. ULC objected:

> This massive wave of party and non-party discovery, served at the same time

---

[1] In its motion, ULC catalogues the number of interrogatories and requests for admission that have been propounded by AMM, but does not seek any form of relief as to those discovery requests. *See* Dkt. # 66 at 2.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER - 2

>AMM is attempting to take up nearly every remaining business day of the discovery period with depositions, is unduly burdensome on ULC Monastery, its personnel, and its counsel, and grossly disproportionate to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Considering especially that AMM's discovery seeks sensitive, confidential, and proprietary information from an organization it describes as its "rival," and ULC Monastery has already provided the sensitive AEO information that *is* directly relevant to the claims of the case, these requests impose a burden that far outweighs any potential needs of the case.

Dkt. # 67-2. After another conference between counsel, ULC provided additional documents regarding each of the webpages that used the term "American Marriage Ministries" or some variant.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[2] the Court finds as follows:

**A. Requests for Production**

ULC's objections to the timing of the discovery requests are overruled. AMM filed three sets of RFPs, each of which built on the previous sets and/or attempted to address ULC's objections to the previous set(s). The last set was served more than a month before the discovery

---

[2] Because this matter can be resolved on the papers submitted, American Marriage Ministries' request for oral argument is DENIED.

ULC's motion to strike paragraph 6 of Lewis King's Declaration (Dkt. # 76) is also DENIED. Mr. King's deposition testimony - wherein he stated that he could not calculate AMM's damages off the top of his head - is not in conflict with a subsequent declaration regarding the calculated damages. No further briefing regarding this matter is necessary.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER - 3

cutoff date. ULC does not explain how or why discovery requests that are timely served under the governing case management order should be deemed "too late" or otherwise improper.

In its motion for a protective order, ULC primarily argues that the materials requested in the second and third sets of RFPs are unreasonably cumulative of the web analytics reports it has already produced, are irrelevant, and/or are not proportional to the needs of the case. In making these arguments, ULC does not identify or discuss any particular RFP. It makes no effort to show, for example, that the "[d]ocuments related to any monetary damages ULC is seeking in connection with its claims against AMM" sought in RFP No. 97 are duplicative of the web analytics reports it has already produced, is irrelevant to the claims or defenses asserted in this litigation, would be unduly burdensome to produce, or is not proportional to the needs of the case. Rather, ULC relies almost entirely on the number of RFPs propounded by AMM and broad assertions regarding the overall number of hours it would have to dedicate to responding to discovery if a protective order is not granted.

This lawsuit involves allegations of trademark infringement, cybersquatting, defamation, and unfair and deceptive acts in commerce conducted through a number of domain names/web pages. Financial information regarding a range of years both before and after the infringing/defamatory/unfair conduct began is necessary so that AMM has an opportunity to evaluate whether there was a change in customer behavior caused by the wrongful conduct and to quantify any losses. In that context, the bare fact that AMM propounded 109 RFPs is not enough to show that the requests are unreasonable. With regards to burden, ULC estimates that, if required to respond to all of AMM's discovery requests (including the interrogatories, RFPs, and requests for admission that were served earlier in the case as well as the third-party

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER - 4

subpoenas), it will ultimately expend 268 hours locating responsive documents and 50 hours of attorney time reviewing and producing them. Dkt. # 66 at 5-6; Dkt. # 67 at ¶ 20. Again, given the nature of the claims at issue, expending 320 hours ($\approx$ 8 weeks of one person's time) to satisfy ULC's federal discovery obligations is not facially unreasonable.

In the context of AMM's motion to compel responses to RFPs Nos. 46-54, 56-61, 64-67, and 71-79 (Dkt. # 62), the Court determined that many of the requests seek relevant information regarding both the fact of injury and the extent of damages. *See* "Order Granting in Part American Marriage Ministries' Motion to Compel and Motion to Extend Discovery Deadline," of even date. The Court, at AMM's suggestion, authorized ULC to supplement its production in response to RFP Nos. 46-54, 56-61, and 71-79 in a way that avoids the need to produce duplicative information. As modified, the requests are proportional to the needs of the case. The Court also rejected ULC's argument that its production of select web analytic reports based on its own search criteria/limitations was an adequate substitute for the production of the underlying data in a read-only format. ULC offers nothing in connection with this motion that alters the Court's analysis or findings.

With regards to requests in the second set of RFPs that were not at issue in AMM's motion to compel, namely RFP Nos. 44, 45, 55, 62, 63, and 68-70, AMM was apparently satisfied with ULC's responses and has not sought to compel supplementation. In light of ULC's argument that most of these requests are overbroad, seek cumulative information, and/or are irrelevant (Dkt. # 69 at ¶¶ 9 and 11) and AMM's affirmative choice to not seek supplementation, no further production is necessary in response to these requests.

With regards to the third set of RFPs, the Court will not simply assume that the

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER - 5

information sought is irrelevant or that its relevance is so minimal that production would be disproportionate to the needs of the case. A cursory review of the RFPs shows that a blanket protective order excusing ULC from having to respond to RFP Nos. 80-109 would not be appropriate. Indeed, it is hard to imagine how information regarding traffic/analytic reports from Bing for each of the relevant domain names (RFP No. 81, Dkt. # 67-5 at 11) or advertising campaigns using "American Marriage Ministries" (RFP No. 86, Dkt. # 67-5 at 13) would not be relevant to the issues raised in this litigation. The Court declines ULC's invitation to grant a broad protective order based on little more than the cumulative number of requests propounded. If there are individual discovery requests in the third set that seek information that is only tangentially related to the claims or defenses asserted and/or that would require an inordinate amount of time or money to generate a response, ULC has not made such a showing.

As it did in response to AMM's motion to compel, ULC argues that it should not be required to open its books to a rival because it fears that production will unfairly benefit AMM in the marketplace, to ULC's prejudice. The Protective Order negotiated by the parties and signed by the Court (Dkt. # 26) addresses this concern by allowing the producing party to identify documents as "Attorneys' Eyes Only," in which case only outside counsel may review the documents. ULC now objects to the agreed procedure, arguing that outside counsel may unconsciously use ULC's proprietary data and information to advise AMM or could use the knowledge and insight gained from ULC's documents to assist other clients. Dkt. # 68 at ¶ 8. This type of generalized - and unsupported - fear is insufficient to overcome ULC's obligation to respond to relevant and proportional inquiries. Nor has ULC shown good cause for amending the existing Protective Order. The objection is overruled.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER - 6

**B. Third-Party Subpoenas**

ULC requests that the Court quash 14 of 18 subpoenas issued to third-parties,[3] arguing that it has a personal right and/or a legitimate interest in the documents and testimony sought.[4] ULC asserts that the subpoenas issued to Authorize.net, Google, Microsoft, Portent, Your Man Friday, and a law firm "seek disclosure of confidential and proprietary information." Dkt. # 66 at 11. Dallas Goschie, plaintiff's Operations Manager, explains that Authorize.net, for example, processes on-line purchases from ULC's websites and argues that information regarding ULC's aggregated on-line sales is not relevant, that the website analytics reports it has already produced are all that AMM needs, that production would put ULC at a competitive disadvantage, and that there is a chance that Authorize.net might produce customer identifying information, thereby invading customer privacy. Dkt. # 68 at ¶¶ 20-22.

Much of the information sought from Authorize.net, Google, Microsoft, Portent, and Your Man Friday is duplicative of that which AMM sought directly from ULC in discovery. When ULC objected to producing responsive documents, AMM turned to third-parties who held similar (if not source) materials. As discussed above in the context of the RFPs, the requested information is relevant and necessary despite ULC's production of certain website analytics

---

[3] *See* Dkt. # 66 at 2. It is unclear how ULC calculated these numbers. In its motion, ULC challenges the ten subpoenas issued to Authorize.net, Google, Microsoft, Portent, Your Man Friday, and a law firm. Plaintiff's Operations Manager, Dallas Goschie, also challenges the two subpoenas issued to GoDaddy.com. He acknowledges that ULC is not seeking to quash the six subpoenas issued to the Internal Revenue Service, the Washington Department of Revenue, Yahoo, JP Morgan Chase, or the New York State Division of Criminal Records. At most, then, ULC seeks to quash 12 of the 18 third-party subpoenas.

[4] In reply, ULC waived the undue burden objection it attempted to interpose on behalf of the third-parties. *See* Dkt. # 96 at 6-7 (arguing only that ULC has standing to protect from disclosure its own sensitive and confidential information).

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER - 7

reports. ULC has not, therefore, shown good cause for a protective order regarding these subpoenas.[5]

ULC's concerns regarding confidentiality take on additional importance, however, because the third-parties responding to the subpoena have little motivation to parse the terms of the Protective Order and incur the increased production costs associated with designating items as confidential or "Attorneys' Eyes Only." The productions from Authorize.net, Google, Microsoft, Portent, and Your Man Friday shall therefore be treated as "Attorneys' Eyes Only" for twenty-one days following production. AMM shall immediately provide to ULC a copy of any responsive documents, and ULC will have an opportunity to review and properly designate any documents it believes to be confidential under the terms of the Protective Order.

ULC's motion to quash is granted as to the subpoena issued to attorney K. Daniels and the Tendy Law Office. The attorneys apparently represented someone who claimed a right in the mark "The Universal Church" and filed a federal lawsuit against ULC in 2014. AMM seeks copies of ULC's discovery responses in that litigation. Dkt. # 68 at ¶¶ 37-39. The relevance of the information is unclear, and ULC asserts that the discovery is subject to a protective order issued by the Southern District of New York. AMM failed to address this subpoena.

For all of the foregoing reasons, ULC's motion for protective order (Dkt. # 66) is GRANTED in part. ULC need not supplement its responses to RFP Nos. 44, 45, 55, 62, 63, or

---

[5] Mr. Goschie asserts in his declaration that the subpoenas issued to GoDaddy.com are not necessary because ULC has already disclosed to AMM which websites it controls. This objection is not mentioned in ULC's motion to quash. Had the issue been properly raised, the Court would find that AMM is not required to accept ULC's representations on the matter and may seek confirmation (or refutation) from third parties.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER - 8

68-70, and the subpoena issued to Attorneys K. Daniels and the Tendy Law Office is hereby QUASHED.

AMM's request for an award of fees and costs (Dkt. # 73 at 13) is DENIED.

Dated this 13th day of July, 2020.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PROTECTIVE ORDER - 9