1

2

3

4

5

6

THE HONORABLE RICHARD A. JONES

7

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

9

10

11

12

13

14

15

16

UNIVERSAL LIFE CHURCH
MONASTERY STOREHOUSE, a
Washington non-profit corporation,

        Plaintiff,

    vs.

MAURICE KING, LEWIS KING, GLEN
YOSHIOKA, DYLAN WALL, SARA
WHITE, and AMERICAN MARRIAGE
MINISTRIES, a Washington non-profit
corporation,

       Defendants.

No.  2:19-CV-00301-RAJ

PLAINTIFF'S OPPOSITION TO
DEFENDANT MAURICE KING'S
MOTION FOR SUMMARY JUDGMENT

*Date Noted: Fri., May 7, 2021*

17

## I.  INTRODUCTION AND RELIEF REQUESTED

18

19

20

21

22

23

24

25

26

    Plaintiff Universal Life Church Monastery Storehouse ("*ULC Monastery*") respectfully requests that the Court deny Defendant Maurice King's Motion for Summary Judgment.  Mr. King submitted a declaration that he did not authorize or direct any of the false and defamatory content at issue. Yet, Mr. King at all relevant times has been a director, officer, and general counsel of Defendant AMM. His co-directors and officers testified Mr. King not only reviewed and approved the content, but helped write some of it. AMM's executive director also testified the fact that Mr. King – as an AMM board member, officer, and general counsel – reviewed and approved the content, without raising any objection of recall, "absolutely meant something." This alone defeats

Mr. King's questionable declaration and motion, by raising a genuine factual dispute as to Mr. King's role in writing, approving, and publishing the false and defamatory content at issue.

There is no dispute that the statements published on AMM's websites falsely attribute to ULC Monastery the legal challenges faced by the Universal Life Church, Inc. of Modesto, California" (the "*Modesto ULC*"). Yet Mr. King served as a board member and officer in the early inception of ULC Monastery, and fully knew that ULC Monastery was separate and distinct from, and publicly distinguished itself from, the Modesto ULC.  As such, Mr. King was specifically and keenly aware that AMM's websites attributing the decades old legal troubles of the Modesto ULC (which occurred before ULC Monastery even existed) to ULC Monastery was false, deceptive, and misleading.  Because of Mr. King's personal disregard for the truth, and personal involvement in the publication of these false and defamatory statements, he is personally liable.

## II.  PERTINENT FACTS

### A.     Inception of ULC Monastery – Mr. King As Director and Officer

ULC Monastery is a non-denominational church, formed in 2006, and operates an online marriage ministry allowing anyone who feels so called to be ordained free of charge.  *ECR 116, pg. 1:2-4 (¶2-4)*. George Freeman was a principal in forming ULC Monastery, and prior to that was an officer of an Arizona entity which was affiliated with the original Universal Life Church in Modesto, as founded by Kirby Hensley (the "*Modesto ULC*" referenced above).   The Arizona entity was founded and headed by Daniel Zimmerman.   *See May 3 Galletch Decl. filed concurrently herewith, Ex. 1 (dep. pgs. 49:2-62:23)*.

While ULC Monastery is a "descendant" of the Modesto ULC, it makes clear that it "discarded the deceptive and illegal practices of the old Modesto ULC." *See* Universal Life Church - About Us (themonastery.org). ULC Monastery was started specifically to separate from Mr. Zimmerman and the Modesto ULC. *Id., Ex. 1 (dep. pgs. 58:23-59:3)*. ULC Monastery states it is

PLAINTIFF'S OPPOSITION TO DEFENDANT
MAURICE KING'S MOTION FOR SUMMARY JUDGMENT–2

Puget Sound Business & Litigation
411 University Street, Suite 1200
Seattle, Washington  98101
Telephone: (206) 374-8500

located and headquartered in Seattle.  *See* Universal Life Church - About Us (themonastery.org). During ULC Monastery's early years, it had few employees. One was Maurice King, who worked for ULC Monastery at its founding in 2006, served as employee, officer, and director, and stayed involved until approximately October 2010.  *ECR 116 (¶2-4); and May 3 Freeman Declaration filed concurrently herewith, ¶3-5.*  Other employees included Defendants Dylan Wall and Glen Yoshioka, and Tryge Jones, who has worked for AMM for a number of years. *ECR 116, ¶5-8.*

### B.   Formation of AMM – AMM's Two Offending Websites

Defendants Glen Yoshioka and Dylan Wall formed AMM on July 4, 2009. AMM also offers ordination.  *Dckts. 27 and 28*; *and ECR #116, ¶3-4*. Maurice King is a board member, officer, and general counsel for AMM. *See ECR 206 (¶2); May 3 Galletch Decl., Ex 2 (dep pgs. 109:25-110:6), Ex. 3 (dep. pgs. 12:3-12:21), Ex. 4 (dep. pg. 87:9-14), and Ex. 5, pg. 2.*

In "mid-to-late 2018," AMM created and published two websites about ULC Monastery, one with the url of https://amm-vs-ulc.com (the "*AMM-vs ULC Website*"), and the other with the url of https://americanmarriageministrieslegal.com (the "*AMM Legal Website*"). *See May 3 Galletch Decl., Ex. 2 (pgs. 131:21-132:8), and ECR 27 (Amnd. Complaint, ¶¶20-33)*.  A copy of the content of each website is attached as Exs. 6-7, respectively, to the May 3 Galletch Decl.  AMM has admitted that the text and content in these copies is true and accurate (although the formatting and visual layout may be different due to printing from a website).  *See May 3 Galletch Decl., ¶8 and Ex. 6.*

ULC Monastery's Complaint centers around these two websites. AMM testified that it aimed these sites directly at ULC Monastery.  *May 3 Galletch Decl., Ex. 2 (dep pgs. 104:21-105:22) and Ex. 3 (dep. pgs. 68:21-69:20)*.

//

//

PLAINTIFF'S OPPOSITION TO DEFENDANT
MAURICE KING'S  MOTION FOR SUMMARY JUDGMENT–3

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1.  <u>The AMM-vs-ULC Website</u>

The AMM-vs-ULC Website explicitly portrays itself as a side-by-side comparison between AMM and ULC Monastery.   The site declares that AMM and ULC Monastery are the "two major organizations when it comes to online ordination," and that AMM and ULC Monastery are "the two most established options." *May 3 Galletch Decl., Ex. 6, pg. 2 -3*. The focus of the website then is AMM's " side-by-side comparison" of these "two major," "most established" options, i.e. a direct and deliberate comparison between AMM and ULC Monastery.  *Id., pg. 3 (middle of page)*.

Yet, the website does <u>not</u> compare AMM to ULC Monastery.  Rather, the site proceeds to list various statements about <u>the Modesto ULC</u>, such as "being in and out the courtroom," "had its IRS non-profit status revoked," and "embroiled in fraud allegations." *May 3 Galletch Decl., Ex. 6 (pgs. 3-4)*.  These statements are hyperlinked to other internet webpages, indicated by the blue coloring of the text.  *See May 3 Goschie Decl. filed concurrently, ¶3-5 and exs. 1-5 thereto.*  When clicked, each of the hyperlinks takes the user to another website containing information about <u>the Modesto ULC</u>:  one to a 1985 4th Circuit decision out of North Carolina; one to a 1989 New York state court decision; two links to the same 1987 9th Circuit case; and one to a Wikipedia page about the Modesto ULC. *Id.* Notably, the three court decisions to which AMM links all were issued before ULC Monastery's formation in 2006. *Id.*

It is undisputed in this action that the statements AMM makes are not true with respect to ULC Monastery (e.g. never had its "IRS non-profit status revoked," never been "embroiled in fraud allegations"; and never "been in and out of bankruptcy,"). There is no dispute that the Modesto ULC is separate and distinct entity from ULC Monastery; AMM admitted as much.  *See May 3 Galletch Decl., Ex. 8 (dep pg. 21:12-16)*.

//

//

PLAINTIFF'S OPPOSITION TO DEFENDANT
MAURICE KING'S  MOTION FOR SUMMARY JUDGMENT–4

Puget Sound Business & Litigation
411 University Street, Suite 1200
Seattle, Washington  98101
Telephone: (206) 374-8500

2.   The AMM Legal Website

This website makes a series of misleading and false statements. It starts with the assertion AMM is a "IRS 501c3 certified ministry," located under and a part of the seal of the US Treasury. *May 3 Galletch Decl., Ex. 7 at pg. 1*. There is no provision in the Internal Revenue Code authorizing the IRS to certify any organization as a "non-profit ministry," and AMM admitted it received no such certification. *May 3 Galletch Decl., Ex. 2 (dep pgs. 49:3-51:19)*.

As a second example, AMM then falsely asserts ULC Monastery has "made millions of dollars selling ordinations":

> **There are people who have made millions of dollars selling ordinations, and our free online ordinations are making it more difficult for them to take your money**. They are behind that anonymous, and misleading website that incorrectly states that weddings "may not be legally valid."

*May 3 Galletch Decl, Ex. 7, pg. 1* (bold and coloring in original). AMM admitted this is direct reference to ULC Monastery as the "people who have made millions of dollars selling ordinations." *May 3 Galletch Decl., Ex. 2 (dep. pgs. 296:13-299:8) and Ex 3 (dep. pg. 69:7-20)*. The reference to ULC Monastery is also made in the opening paragraph and in the body (¶2-3 on pg. 2), where AMM refers to the website "americanmarriageministries.com," on which ULC Monastery publishes content. *Ex. 7*. It is undisputed ULC Monastery has never sold a <u>single</u> ordination and never made a <u>single</u> dollar—let alone "millions of dollars"—by selling ordinations. To the contrary, ULC Monastery has always provided ordination free of charge. *ECR 116, ¶4*.

C.     **AMM And Maurice King Had Specific Knowledge The Content Was False**

As noted above, Maurice King, Dylan Wall, and Glen Yoshioka all worked for ULC Monastery in its early stages. They all were intimately familiar that ULC Monastery was started to separate from both the Modesto ULC and the Arizona entity, and to pave a path distinct from both Modesto and Arizona. Mr. King had a direct hand in content published by ULC Monastery. *See May 3 Freeman Decl. filed concurrently, ¶6-8*.

PLAINTIFF'S OPPOSITION TO DEFENDANT
MAURICE KING'S  MOTION FOR SUMMARY JUDGMENT–5

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

ULC Monastery held a staff meeting most days over a "working lunch" the organization provided. *May 3 Galletch Decl., Ex. 1 (dep. pgs. 79:16-18)*; and *May 3 Freeman Decl, ¶5-7.* During and outside of those lunch meetings, Mr. Freeman was open about the history and disconnection from both Mr. Zimmerman and the Modesto ULC. *Id.* Maurice King attended these working lunches, at which the group would discuss how ULC Monastery wanted to do things and creating its own path different from the Modesto ULC, and content for its websites. *Id.*

In one email specifically, Mr. Freeman stated to Maurice King and other staff that it "chose not to pay or be associated with Modesto." *May 3 Galletch Decl., Ex. 9.* In addition, in a blog post forwarded to staff, including Mr. King, Mr. Freeman stated that "no such affiliation exists" between ULC Monastery and the Modesto ULC. *Id., Ex. 10.* A third email included an email from the Modesto ULC stated emphatically that ULC Monastery is "a separate organization that is NOT AFFILIATED WITH US." *Id., Ex. 11 (caps in original).* AMM possessed a copy of this emphatic statement by Modesto ULC. *Id., Ex. 12.*

In approximately 2008, ULC Monastery created and published a website with information demonstrating its distinction from the Modesto ULC, having the domain www.universal-life-church.com. *May 3 Freeman Decl., ¶6-8.* The heading of the main, initial webpage became "The Real Universal Life Church." The content, as posted during Mr. King's tenure and today, states that ULC Monastery is a Washington non-profit entity, operates independent of the Modesto ULC, and is "untainted" by the legal challenges the Modesto ULC encountered. *Id., and see webpage at* The Monastery « The Real Universal Life Church (universal-life-church.com).

The daily staff meetings attended by Mr. King included specific discussion about the content on this site. *May 3 Freeman Decl., ¶6-8.* Mr. King was a party to those discussions and participated in the creation and publishing of that content. website. *Id.*; *and May 3 Galletch Decl. Ex. 13 (dep. pgs. 15:23-17:7.*

PLAINTIFF'S OPPOSITION TO DEFENDANT
MAURICE KING'S  MOTION FOR SUMMARY JUDGMENT–6

**D.    AMM's Admitted Maurice King Reviewed and Approved
The Content On AMM's Offending Websites**

In discovery, ULC Monastery asked AMM to identify those that wrote, or helped write, or authorized, directed, approved of, voted for, or consented to the publishing of AMM two offending websites. *See May 3 Galletch Decl., Ex. 14*. AMM's supplemented response was thus:

> The following individuals were involved in preparing, reviewing, and/or approving the content of amm-vs-ulc.com in various capacities: Dylan Wall, Glen Yoshioka, Maurice King, and Lewis King. Lewis King, Glen Yoshioka, and Dylan Wall collectively wrote the copy for the website. Maurice King reviewed a draft of the website copy. Lewis King approved the final version of the website copy and authorized and directed its publication.

*Id., pgs. 2-3 (Rogs 3-4)*.

ULC Monastery then sought to depose AMM under Rule 30(b)(6), noting as specific topics the identity of each individual involved with the two offending websites, and the nature of each's involvement. *May 3 Galletch Decl, ¶17 and Ex. 15 (pg. 2, topics 2-3)*.  AMM's first designee testified Maurice King wrote some of the text for the AMM Legal Website. *May 3 Galletch Decl., Ex. 3 (dep. pgs. 81:5-84:25)*. AMM's second designee (Mr. Lewis King) testified that Maurice King saw, gave "approval" of, and consented to the AMM Legal Website. *ECR 204-2, pg. 6 (dep., pgs. 107:5-109:24) and pg. 3 (dep. pgs. 107:5-109:24)*. As to the AMM-vs.-ULC Website, AMM testified Maurice King at least reviewed it, but could not recall if approved it. *Id., ECR 204-2, pg. 8 (dep. pgs. 128:4-129:4)*. In asking what Maurice King did, AMM's 30(b)(6) designee testified it was "somewhat confusing." *May 3 Galletch Decl., Ex. 2 (dep. pgs. 296:13-299:8)*.

It is not surprising AMM could not provide more specific details about Maurice King's actual involvement, because AMM chose not to prepare its designees for deposition. AMM's two designees admitted under oath that they did little to nothing to prepare. One designee testified he did nothing, other than read the notice of deposition. *May 3 Galletch Decl., Ex. 3 (dep. pgs. 9:20-10:7)*. The second stated he had a phone call with AMM's attorneys and "skimmed the document

PLAINTIFF'S OPPOSITION TO DEFENDANT
MAURICE KING'S MOTION FOR SUMMARY JUDGMENT–7

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

1    sent out a couple days before this proceeding" (apparently referring to the notice of dep).  *See May*

2    *3 Galletch Decl., Ex. 2 (dep. pgs. 6:24-7:25)*.

3           ULC Monastery inquired if any board meetings were held and if anyone at AMM looked

4    through Board meeting minutes. AMM answered, "I don't know." *Id., Ex. 2 (dep. pgs. 106:9-*

5    *107:4)*.  ULC Monastery also asked AMM if it searched for prior versions or drafts of the offending

6    websites, as that would indicate, among other things, who contributed to the content. AMM

7    responded, "No" and "I don't know." *Id. (dep pgs. 130:16-14)*. This was a specific topic identified

8    in ULC Monastery's Rule 30(b)(6) notice. *See May 3 Galletch Decl., , Ex. 15 (pg. 7, topic 50)*.[1]

9

10

11                              **III.  LEGAL AUTHORITY AND ARGUMENT**

12           **A.  Summary Judgment Standard**

13           Under Fed.R.Civ.P. 56(a), summary judgment is not warranted if a material fact exists for

14   trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). Mr. King, as the moving

15   party, bears the initial burden to demonstrate the absence of any genuine issues of material fact.

16   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If and as

17   Mr. King meets that burden, then ULC Monastery, as the responding party, must identify specific

18   facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S.

19   242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For purposes of summary judgment,  a fact is

20   "material" if it might affect the outcome of the suit under the governing law. *Anderson, supra,*

21   477 U.S. at 248.  In ruling on a summary judgment motion, a court must construe the facts, as

22   well as all rational inferences therefrom, in the light most favorable to ULC Monastery as the

23   non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

24   //

25

26   ---
     [1] AMM's Motion for a Protective Order based on AMM's objections to ULC Monastery's list of 30(b)(6)
         deposition topics was denied, with fees awarded to ULC Monastery.  *See Dkt. No. 129.*

PLAINTIFF'S OPPOSITION TO DEFENDANT
MAURICE KING'S MOTION FOR SUMMARY JUDGMENT–8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### B. Standards of Personal Liability

ULC Monastery asserted three causes of action arising from AMM's two offending websites: violation of the Lanham Act, violation of the Washington Consumer Protection Act, Chapter 19.86 RCW (the "*CPA*"), and defamation per se. *ECR* #27. For each, the legal standards for personal liability have been framed differently by the courts, although the standards generally center on the same concept: either knowledge and approval of, or actual participation in, the violative conduct.

#### 1. The Lanham Act

AMM cites to unpublished decisions from a different district. *See ECR 202, pg. 5:17-23*. The law as stated by the Ninth Circuit is that personal liability attaches to one who "authorizes or directs" the violative conduct. *Committee for Idaho's High Desert v. Yost,* 92 F.3d 814, 823 (9th Cir. 1996); *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) ("authorizes or directs in which he participates"); and *Suarez Corp. Indus. v. Earthwise Techs.*, 636 F.Supp.2d 1139, 1149 (W.D. Wash. 2008).

A director or "officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity," is personally liable. *OTR Wheel Eng'g v. West Worldwide Srvcs*., no. 2:14-CV-00085-LRS, 2014 WL 11514767, at *3 (E.D. Wash Aug. 1, 2014), citing, *inter alia*, Restatement (Third) of Agency §7.01 *cmt. d* ("If an organizational officer participates in wrongful conduct, the officer is subject to liability…").

#### 2. Washington CPA

A corporate officer or director is liable when s/he either (a) participates in wrongful conduct or (b) with knowledge approves of the conduct. *State v. Ralph Williams*, 87 Wash.2d 298, 322, 553 P.2d 423, 429 (1976) (individual owner liable for violations of the CPA); and *Johnson v. Harrigan-Peach Land Dev. Co.*, 79 Wash.2d 745, 752, 489 P.2d 923, 927 (1971).

PLAINTIFF'S OPPOSITION TO DEFENDANT
MAURICE KING'S  MOTION FOR SUMMARY JUDGMENT–9

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Mr. King relies on the decision in *Parkinson v. Freedom Fid. Mgmt.*, no-CV-0345-TOR, 2012 WL 1931233 (E.D. Wash. May 29, 2012).  *Parkinson*, first, is the Eastern District's reading of Washington law, and is not the pronouncement of Washington state courts. Second, the facts and ruling in *Parkinson* are distinguishable, but the decision still nonetheless supports ULC Monastery.

In *Parkinson*, a collection company violated the CPA by charging fees in excess of the statutorily permitted amounts. 2012 WL 1931233, at *1. The violations started years prior, and the plaintiffs sought to hold liable the new purchasers of the company. *Id.,* at *3. The court found the new owners liable were not liable for two main reasons. First, while the new owners were, or should have been, aware of the violations, their participation was minimal because they inherited the unfair practice and oversaw it for only two months. *Id.,* at *4 and *13 ("they did not 'participate in' or 'approve of' the corporate conduct to such a degree that imposing personal liability would be appropriate"). Second, the violative conduct was an "unfair" and not a "deceptive" practice under the CPA. *Id.,* at *12. The Court found that Washington state court decisions finding personal liability were based upon deceptive, not unfair, acts.  *Id.*

Unlike the "unfair" acts in *Parkinson*, ULC Monastery's allegations are that AMM and Mr. King committed "deceptive" acts, e.g. publishing false and deliberately misleading content on the two websites that AMM admitted it aimed at ULC Monastery. Further, unlike the new owners in *Parkinson*, Mr. King has  been a director and officer, and the general counsel, of AMM for years, and reviewed and approved the false and deceptive content, and helped write some of it.  *See Section II.D, supra, pgs. 7:1-8:8.*

Moreover, the Washington Supreme Court has held that a director or officer is personally liable under the CPA even if she or he did not personally undertake the wrongful conduct. *Johnson, supra*, 79 Wash.2d at 752. In *Johnson*, one of the two owners (Mr. Peach) made a whole

PLAINTIFF'S OPPOSITION TO DEFENDANT
MAURICE KING'S  MOTION FOR SUMMARY JUDGMENT–10

series of false representations and warranties. *Id.*, 79 Wash.2d at 751. The co-owner (Mr. Harrigan) argued since he did not make the false representations himself, he could not be liable for his co-owners' statements. *Id.* The Court rejected Mr. Harrigan's argument, holding that he is liable if he "sanctioned or approved" the actionable conduct, and the evidence showed that he, as an owner, set up the sales system that led to, and was also involved in, some of the misrepresentations, even if his role was lesser that his co-owner.  *Id.*, 79 Wash.2d at 752.

### 3.  Common Law Tort for Defamation Per Se

Defamation per se is a tort. *Mohr v Grant*, 153 Wash.2d 812, 823, 108 P.3d 768, 774 (2005). In general, defamation per se is a provably false statement, which the defendant either knew was false or acted with reckless disregard for the truth or falsity, and which injures the plaintiff in its profession, trade, or business.  *See, e.g., Valdez-Zontek v. Eastmont School Dist.*, 154 Wash.App. 147, 165-166, 225 P.3d 339, 349 (2010); and *Life Designs Ranch v. Sommer*, 191 Wash.App. 320, 328-329, 364 P.3d 129, 134 (2015). ULC Monastery, as the claimant, "need not prove loss of income or special damages to recover." *Life Designs, supra,* 191 Wash.App. at 341 (opinion dissenting in part, concurring in part); and *Waechter v. Carnation Co.*, 5 Wash.App 121, 128, 485 P.2d 1000, 1004-1005 (1971) (damage award without proof of actual damages).

Mr. King initially cites to opinions of federal courts, however as defamation per se is a Washington state claim, substantive law of Washington applies. *See, e.g., Love v. Associated Newspapers*, 611 F.3d 601, 610 (9th Cir. 2010). Under Washington law, individuals are liable for their own torts. *See, e.g.*, *Johnson, supra*, 79 Wash.2d at 752.  An officer or director of an entity is personally liable if that officer or director "knowingly participated in, cooperated in the doing of, or directed that the acts be done."  *Id.,* 79 Wash.2d at 753; and see *Deep Water Brewing, LLC v. Fairway Resources*, 152 Wash.App. 229, 262-263, 215 P.3d 990 (2009) ("To avoid personal liability, the corporate officer must have acted in good faith").

PLAINTIFF'S OPPOSITION TO DEFENDANT
MAURICE KING'S  MOTION FOR SUMMARY JUDGMENT–11

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

1

2

### C. Maurice King Reviewed and Approved, and Participated in, The Creation and Publication Of AMM's Offending Websites

3

4       In the instant action, AMM and Mr. King's co-Board members admitted Mr. King

5   reviewed and approved the websites, without making any objection of note, and he helped write

6   at least part of one. That Mr. King reviewed and approved the sites is material in part because

7   Mr. King is a "Governing Person" under Washington law. Board members of a non-profit control

8   and manage the entity, and set and implement the policies. *See,* e.g., Rev.Code of WA 24.03.095

9   (affairs of non-profit corporation managed by board of directors). This includes authorizing and

10  approving of the offending websites. A corporation can act only through its agents.  *See, e.g.,*

    *Frigidaire Sales Corp. v. Union Properties,* 88 Wash.2d 400, 405, 562 P.2d 244 (1977).

11      This is similar to the defendants in *Johnson, supra,* 79 Wash.2d 745, *Ralph Williams*,

12  *supra,* 87 Wash.2d 298, and *Transgo v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir.

13  1985), where the courts found personal liability in part because the individuals were in charge

14  and control of the entities, and set up the systems that fostered the violative conduct.  More so

15  than the defendants in those cases, Mr. King is also the general counsel of AMM.

16      Moreover, Mr. King was in a unique position that made him specifically cognizant that

17  AMM's offending content was in fact false and deceptive. Of all people in the world, Mr. King

18  was one of the few who knew best that ULC Monastery and the Modesto ULC were separate

19  entities, that ULC Monastery was founded to break with the old Modesto ULC, and that ULC

20  Monastery has publicly sought to distinguish itself from the old Modesto ULC. Mr. King was an

21  initial employee, director, and officer of ULC Monastery. He was present in the daily lunch

22  meetings which discussed the organization's business and web content, including the content

23  created and published on the www.universal-life-church.com website.  Without credible question,

24  he had full knowledge that ULC Monastery was formed specifically to separate from both the

25  Modesto ULC and the Arizona entity; that ULC Monastery "chose not to…be associated with

26

PLAINTIFF'S OPPOSITION TO DEFENDANT
MAURICE KING'S  MOTION FOR SUMMARY JUDGMENT–12

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 374-8500

Modesto" (Ex. 9 to May 3 Galletch Decl.) and that the Modesto ULC was emphatic that it had "no affiliation" with ULC Monastery (Ex. 10 to May 3 Galletch Decl.).

As an attorney and as general counsel for AMM, Mr. King certainly was fully aware that the court decisions AMM connected to ULC Monastery were (i) issued decades before ULC Monastery was even formed, and (ii) involved the separate and distinct Modesto ULC. Thus, AMM's Executive Director testified that if Mr. King did have an objection, such objection "absolutely meant something" and would have been heeded. *May 3 Galletch Decl., Ex. 2 (dep. pgs. 110:24-111:23)*. Despite all this, Mr. King reviewed AMM's content falsely and deceptively attributing the Modesto ULC's out-dated troubles to ULC Monastery, and approved publication. Thus, Mr. King was not a merely a passive board member, but one of the few people best positioned to avoid publication of the false and deceptive statements at issue. It is therefore both reasonable and warranted under the law to hold him liable for knowingly approving the publication of such false statements.

**D.  There is No Basis For Sanctions**

ULC Monastery agrees a court has the inherent authority to control and sanction attorneys and parties that appear before it. That authority is "to be exercised with great caution" and "with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 and 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). With respect to an award of attorneys' fees under the Court's inherent authority to punish, which Mr. King requests, an award is to be made when "fraud has been practiced upon" the court "or that the very temple of justice has been defiled." *Id.*, 501 U.S. at 46 (identifying three narrow and specific bases for courts to award fees as part of its inherent authority, as exception to the American rule that each side bear its own attorneys' fees).

In the instant action, there is neither fraud nor defiling of the temple of justice.  Mr. King does not even allege any.  On this basis alone, his request fails. Mr. King cited to *Chambers, supra.*

PLAINTIFF'S OPPOSITION TO DEFENDANT
MAURICE KING'S  MOTION FOR SUMMARY JUDGMENT–13

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

1   There, the defendant Chambers engaged in a years long effort both inside and outside the court of

2   consisting of fraud, creation of a sham trust to divest the court of jurisdiction, filing false and

3   frivolous pleadings, filing appeals without basis or merit, and a conscious effort to delay and harass

4   the plaintiff to drive up litigation expenses. 501 U.S. 32, 36-42. With such a clear record of

5   repeated and consistent abuse of the Court's process, sanctions were warranted. This is quite

6   disparate from ULC Monastery in the instant action, which has simply pursued claims against Mr.

7   King because the evidence supports that Mr. King knowingly and consciously approved the

8   publication of content that he – of all people in the world – knew best was false and deceptive.

9       Still, there is no basis for fees simply because a defendant contends the evidence is

10  insufficient against him, or contends the claimant conducted too little discovery. That would lead

11  to absurd results, forcing a party to engage in expensive discovery just to construct a record to

12  guard against a potential adverse award of attorneys' fees.

13

14      Sanctions are further not warranted where Mr. King's motion makes inaccurate and

15  misleading statements. Mr. King motion claimed "there is simply no evidence he drafted or

16  actually approved the content." *ECR 202, pg. 8:2*. This is incorrect. AMM testified he did in fact

17  review and approve, and helped write the content. Mr. King also claimed ULC Monastery

18  "admitted…that Mr. King would have had to personally take purposeful action" in order to be

19  liable, citing to a prior memorandum of ULC Monastery. *ECR 202, pg. 5:12-15*. ULC Monastery

20  made no such statement, and the word "purposeful" is not present in the memorandum cited by

21  Mr. King. *See ECR 17.*

22                              **IV. CONCLUSION**

23      For the reasons set forth above, ULC Monastery respectfully requests that the Court deny

24  Mr. Maurice King's motion for summary judgment. His involvement went beyond passive

25  awareness, but direct review and approval as one in direct charge and control of AMM, as its

26

PLAINTIFF'S OPPOSITION TO DEFENDANT
MAURICE KING'S  MOTION FOR SUMMARY JUDGMENT–14

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

director, officer, and general counsel, and given his direct knowledge of the distinction between

ULC Monastery and the Modesto ULC.

DATED this 3rd day of May 2021.

By: *s/ Michael P. Matesky, II*
Michael P. Matesky, II (WSBA # 39586)
Matesky Law PLLC
4500 9th Ave. NE, Suite 300
Seattle, WA 98105
Phone: 206.701.0331
Email: mike@mateskylaw.com;
litigation@mateskylaw.com

PUGET SOUND BUSINESS & LITIGATION

Michael B. Galletch, WSBA # 29612
411 University Street, Suite 1200
Seattle, WA 98101-2519
(206)898-8040
mike@psbizlit.com

Attorneys for Plaintiff Universal Life Church Monastery Storehouse

PLAINTIFF'S OPPOSITION TO DEFENDANT
MAURICE KING'S  MOTION FOR SUMMARY JUDGMENT–15