1

THE HONORABLE RICHARD A. JONES

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

8

9

UNIVERSAL LIFE CHURCH
MONASTERY STOREHOUSE, a
Washington non-profit corporation,

10

Plaintiff,

11

vs.

12

MAURICE KING, LEWIS KING, GLEN
YOSHIOKA, DYLAN WALL, SARA
WHITE, and AMERICAN MARRIAGE
MINISTRIES, a Washington non-profit
corporation,

13

14

15

16

Defendants.

# 2:19-CV-00301-RAJ

PLAINTIFF'S RESPONSE TO
DEFENDANT AMERICAN
MARRIAGE MINISTRIES' MOTION
FOR SUMMARY JUDGMENT

*Date Noted: Fri., May 7, 2021*

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–0

1

## I.      <u>INTRODUCTION</u>

Defendant AMM's motion for summary judgment should be denied because AMM misstates the law, fails to show an absence of material factual disputes, and multiple genuine material factual disputes exist. AMM's motion does not contest that its two offending websites contain false, deceptive, and defamatory statements about ULC Monastery, but claims that ULC Monastery has not shown economic injury. Yet, ULC Monastery need not establish any economic injury for any of its claims. Rather, injury is presumed under both the Lanham Act and Washington law for defamation per se (which may not be rebutted for defamation per se). Further, the Lanham Act only requires "likely," not actual, injury to warrant relief. Moreover, ULC Monastery has established sufficient injury—investigative costs—for its CPA claim.

Material factual disputes regarding claimed trademark validity, likelihood of confusion, and fair use preclude summary judgment on AMM's trademark and CPA claims.  Moreover, AMM's motion on these claims reveals AMM is not concerned about confusion, but instead seeks to monopolize descriptive use of the phrase "American marriage ministries" (and the resulting web traffic) and shut down criticism of AMM itself. The law does not permit the "absolute prohibition" AMM seeks. AMM did not even attempt to show that ULC Monastery's use is likely to cause confusion, failing in its burden on summary judgment, but presumes that "mere diversion" of web traffic and alleged "dilution" of AMM's claimed mark is sufficient to show infringement. The Ninth Circuit has—twice—rejected AMM's legal premise.

AMM's motion on its CPA claim—based on its trademark claim—fails for the same reasons.  Material factual disputes exist as to whether any infringement occurred, and alleged "diversion" or "dilution" of a non-famous mark is not actionable. Finally, the evidence contradicts AMM's claim that ULC Monastery's alleged violations caused AMM to suffer a loss in web traffic and sales; AMM admitted its loss stemmed from its own redeployment of its website.

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–1

## II.   FACTUAL BACKGROUND

The pertinent facts to this dispute have been set forth in ULC Monastery's prior Motion for Summary Judgment (ECF #114 at 1-4), and in ULC Monastery's Opposition to Maurice King's Motion for Summary Judgment, filed concurrently herewith. For efficiency, ULC Monastery does not repeat them here, and incorporates here those two pleadings. ULC Monastery sets forth here additional facts of particular relevance to AMM's instant motion.

### A.  ULC Monastery and AMM are Online Marriage Ministries

ULC Monastery and AMM both provide ordination free of charge. ECF #78 at 20:8-22:21. AMM was formed and has been controlled by former ULC Monastery employees. AMM chose its name because "[w]e're a marriage ministry." ECF 115-2 (dep. pgs. 206:12-14, 207:12-20), and p. 62 (dep. ex. 1 at 65:10-11).

### B.   AmericanMarriageMinistries.com Domain and Site

In July 2011, ULC Monastery registered the AmericanMarriageMinistries.com domain name. ECF #114 at 2:1-12; ECF #210-16 at 20 (Resp. to Rog. 7). In spring 2014, ULC Monastery first published content on the AMM.com site. ECF #210-16 at 22 (Resp. to Rog. 9). Prior to that, ULC Monastery is not certain (due to the passage of time and AMM's delay to bring its claims), but believes there might have been a "301 re-direct." ECF #78 at 11 (Dep. Tr. at 38:16-23).[1] ULC Monastery does not have a copy of that content, and there is no admissible evidence before the Court as to what that content was. By November 17, 2014, ULC Monastery redesigned the site to post the text of an order from a Judge ruling that ministers ordained by AMM do not qualify to legally officiate marriages in the District of Columbia. AMM was aware of that content by at least December 26, 2014. ECF #71 at 2 ¶4; *see also* ECF 82-20 (Ex. T).

---

[1] A "301 redirect" occurs when an internet user types a domain name (or url) into its browser, but is "redirected" to a website hosted at a different domain. *See, e.g.,* 301 Redirects for SEO: Everything You Need to Know (ahrefs.com), and A Comprehensive SEO Guide to 301 Redirects: When and How to Use Them (semrush.com)

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–2

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

The Court already dismissed AMM's claims for defamation, cybersquatting, state law trademark infringement, trade libel, and WA Consumer Protection Act "to the extent those claims arise out of ULC's use of the americanmarriageministries.com url."  ECF #170 at 13:8-14.

## C.    Descriptive Use of "American marriage ministries"

ULC Monastery has used the term "American marriage ministries" to refer to online marriage ministries on various individual webpages since at least 2012. ECF #117 at 2 ¶10; ECF 210-16 at 25-26 (2d. Supp. Resp. to Rog. 11). ULC Monastery's use of the phrase has been in visible text on specific webpages, only in a "generic" sense without capitalization of "marriage ministries," and not in prominent locations. Examples are located at ECF #210-1 (p. 1), ECF #210-3 (p. 1), and ECF #210-8 (p. 1). With each page, ULC Monastery prominently displayed its own branding and/or the words "Universal Life Church" on these sites, and did not use the words "American marriage ministries" in any distinctive lettering style. *Id.*

AMM's allegation in its motion that ULC Monastery suddenly began, in 2018, to embed the phrase "in title tags and other metatags across its webpages" is inaccurate and AMM's citations do not support its allegation. ECF #199 at 5:6-9. Rather, if and when the phrase appeared in visible text on a page as noted above, the phrase may also have been used in a title tag not visible to a user, but not for every page containing that phrase and certainly not on pages without that phrase. *See* May 3 Galletch Decl., Ex. 16 (Dep. Tr. at 78:25-80:12), and Ex. 17 (Dep. Tr. at 214:3-217:7).

## III. LEGAL AUTHORITY AND ARGUMENT

### A.  Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), summary judgment is not warranted if a material fact exists for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). AMM, as the moving party, bears the initial burden to demonstrate the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If AMM

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–3

Puget Sound Business & Litigation
411 University Street, Suite 1200
Seattle, Washington 98101
Telephone: (206) 374-8500

meets that burden, then ULC Monastery must identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248. In ruling on a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to ULC Monastery as the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

### B. ULC Monastery Need Not Prove Monetary Loss to Establish Injury

1. Damages Need Not be Pleaded or Proven for Defamation Per Se; Washington Law Does not Permit Rebuttal of the Presumption

AMM misstated the law when it asserted ULC Monastery must plead and prove damages. *See* ECF #199 at 11:17-18. Defamation per se is actionable without proof of damages if it (1) exposes a living person to hatred, contempt, ridicule or obloquy, to deprive him of the benefit of public confidence or social intercourse, or (2) injures him in his business, trade, profession or office, or (3) imputes to the plaintiff criminal conduct involving moral turpitude. *Maison de France, Ltd. v. Mais Oui!*, 126 Wash.App. 34, 44, 108 P.3d 787 (2005) (citation omitted); *Valdez-Zontek v. Eastmont School Dist.*, 154 Wash.App. 147, 165-166, 225 P.3d 339, 349 (2010). A corporation may be defamed. 16A Wash.Prac. Tort Law and Practice §20:7 (4th ed.)(2016 update), *Alpine Indus. Computers, Inc. v. Cowles Publ. Co.*, 114 Wash.App. 371 (2002); *Life Designs Ranch v. Sommer*, 191 Wash.App. 320, 364 P.3d 129, 140 (2015).

Defamation per se "allows recovery of purportedly compensatory damages without evidence of actual loss." *Gertz v. Robert Welch*, 418 U.S. 323, 349, 94 S.Ct. 2997, 3011-302, 41 L.Ed.2d 789 (1974). When a statement is defamatory per se, "damage to the plaintiff is said to be presumed," and the court, "without any further data, is at liberty to assess substantial damages."

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–4

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

*Canfield v. Clark*, 196 Wash.App. 191, 199, 385 P.3d 156, 162 (2016) (citation omitted); *see also Waechter v. Carnation Co.*, 5 Wash.App 121, 128, 485 P.2d 1000, 1004-1005 (1971). Thus, ULC Monastery "need not prove loss of income or special damages to recover." *See Life Designs Ranch*, 191 Wash.App. at 341 (dissenting in part, concurring in part). Defamation per se is designed to assist an organization like ULC Monastery because the "proof of actual damage will be impossible in a great many cases when, from the character of the defamatory words and circumstances of publication, it is all but certain that serious harm has resulted in fact." *Id.* at 348.

Thus, ULC Monastery need not even allege actual damages, let alone prove any. *See also* 53 C.J.S. *Libel and Slander* §216 (March 2021 update) (claimant need not plead or prove damages); *Huon v. Denton*, 841 F.3d 733, 738 (7th Cir. 2016) (same); *LeBlanc v. Skinner*, 103 A.D.3d 202, 214 955 N.Y.S.2d 391 (App. Div. 2012) (same). AMM's motion does not contest that its offending content is defamatory per se; it argues only that ULC Monastery has not made a "claim that it suffered injury to its business or reputation." ECF #199 at 11:17. But, while ULC Monastery need not plead injury, it did. ECF #27 at 9:13-15 (¶¶59-60).[2]

AMM asserts that this presumption is rebuttable. This is not the law in Washington, but even if it is, AMM confuses the issue. AMM cites *Canfield, supra,* however that decision does not state that the presumption of damages for defamation per se is rebuttable. Rather, it upheld the jury's decision to award no damages, where it was unclear if the jury even found defamation per se. 196 Wash.App. at 200-01 ("***If*** the jury did find…defamation per se…") (emphasis added). At best to AMM, *Canfield* could, in theory, only support a proposition that a jury is equally able to either presume or decline damages for defamation per se. But, *Canfield* makes clear the jury most likely determined the offending statement was defamation, but not defamation per se.

---

[2] AMM's motion wrongfully alleges ULC Monastery did not claim an injury for defamation per se. ECF 199 at 11:18-20 (citing ECF #54-5 (p. 17, Resp. to Rog. 3) and ECF #75-11 (p. 7, Resp. to Rog. 19). Both Interrogs. cited by AMM address ULCM's under the CPA. *e.g.* ECF 75-11, Rog. 19 (re: allegation in ¶50 of ULCM's Complaint).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

In contrast, the Court of Appeals in *Maison de France* remanded a case for the trial court to determine either nominal or substantial damages. 126 Wash.App. at 54. There, the court found one statement at issue was defamation per se, but awarded no damages because the plaintiffs had not shown any economic injury or damage to their reputation. 126 Wash.App. at 42. The Court of Appeals reversed and remanded for the trial court "to determine which presumed damages, either nominal or substantial, are awarded." *Id.* at 54. *Maison de France* correctly states Washington law as to the presumption of damages for defamation per se. *See also Dodson v. Morgan Stanley,* No. C06-5669-RJB, 2007 WL 3348437 (W.D. Wash Nov. 8, 2007) (adopting *Maison de France*).

AMM's citation to *Piles v. Bovee* is misplaced; it only stated that a married couple may present evidence to rebut the presumption that assets are community assets. 168 Wash. 538, 539-540, 545, 12 P.2d 914 (1932). AMM's citation to unpublished decisions from other states (ECF #199 at 11:9) is also inapplicable; those cases do not set forth Washington law. Indeed, not all states permit the presumption to be rebutted. *See, e.g., Manley v. Boat/U.S., Inc.*, No. 13-cv-5551, 2017 WL 5191952, at *5 (N.D. Ill Nov. 9, 2017) (citing *Knight v. Chicago Tribune Co.*, 895 N.E. 1007, 1106-1107 (Ill. App. Ct. 2008)); *Miranda v. Byles*, 390 S.W.3d 543, 556 (Tex. App. 2012). Under *Maison de France*, Washington appears to <u>not</u> allow any rebuttal.

But, even assuming rebuttal is permitted under Washington state law (it is not), AMM confuses the issue. Rebuttal would only apply as the defendant's burden of factual persuasion, not an element the claimant must prove. The burden of persuasion defines the degree of certainty with which the fact finder must decide the issues. *See, e.g., In re Det. of Skinner*, 122 Wash.App. 620, 629, 94 P.3d 981 (2004) (citing 1 John W. Strong, *McCormick on Evidence*, § 336 (5th ed. 1999)). Rebuttal goes to the quantum of damages that is left to the jury to decide. In other words, even assuming Washington law allows the presumption of damages to be rebutted, despite the ruling in *Maison de France*, it would be a question presented to the trier of fact.

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–6

1

2.   <u>The CPA Does Not Require Proof of Monetary Loss or Damages</u>

2

To prevail on its CPA claim, ULC Monastery must establish five elements: (1) unfair or

3

deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury

4

to plaintiff in his or her business or property; (5) causation. *See, e.g., Hangman Ridge Training*

5

*Stables v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780, 719 P.2d 531 (1986). AMM's motion

6

challenges only the injury element. The injury need not be great, but the plaintiff must establish

7

that the unfair or deceptive act caused injury, albeit slight. *Id.* at 794.

8

RCW 19.86.090 "uses the term 'injured' rather than 'suffering damages'." *Nordstrom v.*

9

*Tampourlos*, 107 Wash.2d 735, 740, 733 P.2d 208 (1987). "Injury is distinct from damages."

10

*Panag v. Farmers Ins. Co.*, 166 Wash.2d 27, 58, 204 P.3d 885, 890 (2009). As such, no monetary

11

damages need be shown or proven, and relief may be awarded for unquantifiable damages. *Id.* at

12

58; *Nordstrom,* 107 Wash.2d at 740-741. Further, the CPA allows for injunctive relief. *Id.* Courts

13

are also permitted to infer injury to business, even if that injury is not quantifiable. *Sign-O-Lite v.*

14

*DeLaurenti Florists, Inc.*, 64 Wash.App. 553, 564, 825 P.2d 714 (1992).

15

ULC Monastery's injury is the time of its own personnel and the cost to have an attorney

16

investigate AMM's two offending websites, verify their falsity, and determine the author. Both

17

offending websites are misleading as to the author, stating the "website is run by ministers that are

18

affiliated with American Marriage Ministries." *See* May 3 Galletch Decl., Exs. 6-7 (at end). ULC

19

Monastery is not seeking monetary remuneration for the time of its own personnel; it is seeking a

20

monetary award for the cost of the attorney, $1, 044.63, as well as injunctive relief. *See* ECF #75-

21

11 at 7 (Resp. to Rog 19); ECF #210-13. Neither would have occurred but for AMM's two

22

offending websites, and were incurred prior to and regardless of any subsequent litigation.

23

24

"Investigation expenses…resulting from a deceptive business practice sufficiently

25

establish injury," provided the investigation would not have otherwise occurred. *Panag*, 166

26

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–7

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

Wash.2d at 62, 64. *Panag* involved deceptive notices that looked like a debt was owed. The court held that the time to consult an attorney to determine that no debt was actually owed was sufficient CPA injury. *Id.* Likewise, in *Sign-O-Lite,* the time the business owner spent to address and respond to an unfair billing practice was sufficient CPA injury. 64 Wash.App. at 564. Similarly, in *Nordstrom*, the plaintiff was awarded relief based on damage to name and goodwill, even though the plaintiff neither suffered economic loss (e.g. lost sales), nor attempted to quantify the damage to its goodwill and name. 107 Wash.2d at 740-741.

      *Panag, Nordstrom,* and *Sign-O-Lite*, individually and together, establish that a CPA claimant need not actually have to pay or lose money; it only need incur some injury as a result of the unfair or deceptive act, even if slight and unquantifiable. This is so because the CPA is to be liberally construed to serve its broad remedial purpose. *See, e.g., Panag*, 166 Wash.2d at 37; *Thornell v. Seattle Servs. Bureau, Inc.*, 184 Wash.2d 793,799-800, 363 P.3d 587 (2015).

      AMM relies upon *Lock v. Am. Family Ins. Co.*, however that decision does not alter the rule set forth in *Panag, Nordstrom,* and *Sign-O-Lite*; it actually cites to those decisions. 12 Wash.App.2d 905, 927-28, 460 P.3d 683 (2020). In *Lock*, the plaintiff alleged she "felt betrayed and inconvenienced" because her own insurance carrier declined to pay amounts beyond medical bills (forcing her to file suit), did not pay the amount it valued the plaintiff's claim, and engaged in bad faith conduct during litigation. *Id.* at 911-913, 927. *Lock* merely supports the propositions that neither personal injuries (e.g. emotional distress) nor the inherent expense and inconvenience in litigation is sufficient injury under the CPA. *Id.* at 927-928.

      However, as held in *Panag* and *Sign-O-Lite,* and supported by *Nordstrom,* inconvenience and loss of time to address the unfair and deceptive conduct, prior to litigation, do suffice. This is the injury ULC Monastery suffered and has supported with evidence.

//

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

3.  <u>ULC Monastery's Injury is Presumed Under The Lanham Act</u>

AMM's motion on ULC Monastery's claim under the Lanham Act §43(a), 15 U.S.C. §1125(a), should be denied because (a) ULC Monastery need not prove injury for injunctive relief, (b) a showing of <u>likely</u> (not actual) injury is sufficient to warrant relief, and (c) actual injury is presumed in cases between competitors and in direct comparative advertising cases. ULC Monastery seeks the following relief under the Lanham Act: (1) injunctive relief, (2) disgorgement of AMM's ill-gotten profits, and (3) trebling of damages, costs, and attorneys' fees. 15 U.S.C. § 1117(a). By published Ninth Circuit decisions, ULC Monastery is entitled to all such relief.

<u>First</u>, "a competitor need not prove injury when suing to enjoin conduct that violates section 43(a)." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145-1147 (9th Cir. 1997) (citation omitted). Thus, even if there is no actual injury (although there is), ULC Monastery's "claim would still be viable to the extent it sought an injunction."  *Id*. at 1146 ("[A]n inability to show actual damages does not alone preclude a recovery under section 1117."). For example, in *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826, 831 (9th Cir. 2011), the trial court ordered the defendant to post a large "splash-page" disclaimer despite no proof of damages.

<u>Second</u>, the Lanham Act expressly states that it is sufficient to show that false advertising "is <u>likely</u> to cause confusion, or to cause a mistake, or to deceive…" [15 U.S.C. §1125(a)(1)(A)], or if the claimant "believes that he or she is or is <u>likely</u> to de damaged" by the offending conduct [15 U.S.C. §1125(a)(1)(B)] (underline added). Thus, the plain terms of the Act provide that an actual monetary loss or economic damages are not required. "The Lanham Act permits 'any person' to sue if he 'believes that he ... is *likely* to be damaged'." *TrafficSchool.com,* 653 F.3d at 826 (italics in original); *see also Southland Sod,* 108 F.3d at 1139 (Lanham Act injury element is that "plaintiff has been <u>or is likely</u> to be injured…"(underline added)).

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–9

That said, ULC Monastery has never asserted that it did not suffer monetary loss; it has merely forgone seeking an award of lost profits as a remedy. *See* ECF #210-15 at 7 (Resps. to RFA #83-85).[3]  When a Lanham Act plaintiff either cannot or does not show lost sales data, it still has a cognizable injury through "a chain of inferences showing how defendant's false advertising could harm's plaintiff's business." *TrafficSchool.com*, 653 F.3d at 825. Thus, ULC Monastery need only show a likelihood of confusion. Notably, AMM does not challenge this aspect in its instant Motion; AMM narrowly (and wrongfully) asserts that ULC Monastery must establish actual economic or reputational injury. ECF #199 at 9:12-13.

Third, this a deliberately false comparative advertising case; AMM's "AMM-v-ULC" website makes a deliberate comparison between AMM and ULC Monastery. *See* Exs. 6-7 to May 3 Galletch Decl. As such, ULC Monastery need not put forth evidence of actual injury in order to obtain monetary relief (e.g. disgorgement of AMM's profits). "[F]or false comparative advertising claims, this circuit has held that '[p]ublication of deliberately false comparative claims gives rise to a presumption of actual deception and reliance.'" *Southland Sod*, 108 F.3d at 1146. *Southland Sod* held that even without the survey evidence the plaintiff presented, the "presumption of actual consumer deception and reliance" to which the plaintiff was entitled allowed (i) the jury "to conclude Plaintiffs suffered actual injury", and (ii) the plaintiffs to recover monetary damages. *Id.*

The Ninth Circuit recently reaffirmed the presumptions of both "deception and reliance" and injury in *Traffic School*, which involved a deceptive and misleading website. There, the defendant asserted – just as AMM does here – the plaintiffs could not recover because they failed to show any actual injury. 653 F.3d at 826. The Ninth Circuit rejected that argument – just as this Court should reject AMM's – and held that (i) the plaintiffs need only show a belief that they are

---

[3] AMM's instant motion erroneously cites to "Roberts Decl., Ex. 21" (ECF #199 at 9:19-20), however that exhibit is a document provided by AMM (*see* ECF #201 at 4 ¶23).

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–10

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

"likely to be damaged," and (ii) because the parties were competitors, a commercial injury is presumed, and the plaintiffs need not prove actual injury. 653 F.3d at 826-827, 831 (where direct competitors, "a misrepresentation will give rise to a presumed commercial injury…").

This District has followed the Ninth Circuit's presumptions of both "deception and reliance" and injury. *See, e.g., Cascade Yarns v. Knitting Fever*, C10–861 RSM, 2015 WL 3407882 (W.D. Wash. May 27, 2015), which held that where a direct comparison is made, and the statements are literally or deliberately false, there is a presumption of both (i) deception and reliance, and (ii) injury to the plaintiff, for which the court "has considerable discretion in fashioning appropriate monetary relief based on the totality of the circumstances." *Id.* at *5.

Here, the decisions in *Southland Sod, Traffic School,* and *Cascade Yarns* all reject AMM's arguments. ULC Monastery has shown, and can demonstrate at trial, that AMM made a direct comparison between itself and ULC Monastery (e.g. the "AMM-v-ULC" website), that was literally and deliberately false. May 3 Galletch Decl. ¶8-9, Exs. 6-7; May 3 Goschie Decl. ¶3-5, Exs. 1-5. Accordingly, ULC Monastery need not show actual loss or injury; its injury is presumed, and it is entitled to injunctive and monetary relief.

### C.  There Are Disputed Issues of Material Fact on AMM's "Trade Name" Claim

Disputed issues of material fact exist as to the validity of AMM's claimed trademark, likelihood of confusion, and fair use.[4] "[S]ummary judgment is generally disfavored in the trademark arena" because of "the intensely factual nature of trademark disputes." *KP Permanent Make-up v. Lasting Impression I*, 408 F.3d 596, 602 (9th Cir. 2005). Even if AMM were entitled to relief (it is not), the broad injunction requested by AMM is contrary to binding legal precedent.

---

[4] AMM pleaded common law trademark infringement, not "trade name" infringement, so ULC Monastery addresses AMM's trademark infringement claim. The distinction is immaterial, as Washington courts treat trade name infringement under the general law of trademarks. *See Seattle Endeavors, Inc. v. Mastro*, 123 Wash.2d 339, 345, 868 P.2d 120 (1994); *Headspace Int'l LLC v. Podworks Corp.*, 428 P.3d 1260, 1263-64 (Wash. App. 2018). If AMM argues "trade name" infringement is distinct, the claim should be dismissed for failure to plead the claim.

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–11

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

1.   <u>There are Genuine Disputes of Fact as to Validity of the Claimed Mark</u>

AMM must prove that the phrase "American Marriage Ministries" is a valid and distinctive trademark. *See Seattle Endeavors Inc. v. Mastro*, 123 Wn.2d 339, 345, 868 P.2d 120 (1994); *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002). Validity is determined by placing claimed marks on the "spectrum of distinctiveness," including those that are inherently distinctive (suggestive, arbitrary, and fanciful terms) and not inherently distinctive (generic and descriptive terms). *See Mastro*, 123 Wn.2d at 126 (citing 1 *McCarthy on Trademarks* § 11.24, at 11-5). Descriptive marks are not inherently distinctive, and are not valid unless they achieve "secondary meaning" as source indicators to consumers. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).[5]

"Trademark validity is 'an intensely factual issue,' and the claimant bears the ultimate burden of proof to show that its trademark is valid and protectable." *Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1257 (S.D. Cal. 2018) (quoting *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010)). A genuine factual dispute exists as to whether the phrase "American Marriage Ministries" (**a**) is descriptive, (**b**) has obtained secondary meaning, and (**c**) obtained secondary meaning <u>before</u> ULC Monastery's first use.

**a.   There is a Factual Dispute as to Whether the Phrase is Descriptive**

Whether a claimed mark is generic, descriptive, or suggestive is a question of fact to be determined by a jury. *See Zobmondo Entm't*, 602 F.3d at 1121. AMM sought federal registration of the phrase "American Marriage Ministries" under Section 2(f) of the Lanham Act. ECF #115

---

[5]  AMM suggests that use alone, without secondary meaning, is enough to establish trademark rights for a descriptive term. ECF #199 at 12-13. This is inaccurate. *Mastro*, 123 Wn.2d at 125 ("The rule is no different when the name, or some part thereof, is a geographical name, or contains descriptive words <u>which have acquired a secondary meaning</u>.") (emphasis added*); Evergreen State Amusement Co. v. S.F. Burns & Co.*, 2 Wn.App. 416, 422-23, 468 P.2d 460 (1970) (secondary meaning is "[t]he essential requirement for the protection of a trade name.").

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–12

Puget Sound Business & Litigation
411 University Street, Suite 1200
Seattle, Washington 98101
Telephone: (206) 374-8500

¶5; ECF #115-3 (Ex. C) at 13, 39. This is a concession that the phrase is not inherently distinctive, but is at most descriptive of AMM's services. *See Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1358 (Fed. Cir. 2009); *In re Am. Furniture Warehouse Co.*, 126 U.S.P.Q.2d 1400, 1403 (T.T.A.B. 2018). Thus, if AMM contests descriptiveness (it is unclear from AMM's motion), there is at least a triable issue of fact. *See Marketquest*, 316 F.Supp.3d at 1257.

### b.  There is a Factual Dispute as to Secondary Meaning

"The question of secondary meaning is one of fact." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1355 (9th Cir. 1985); *Nordstrom, Inc. v. Tampourlos*, 43 Wn.App. 370, 374, 717 P.2d 293 (1986), *rev'd on other grounds* 107 Wn.2d 735 (1987). The survey and report of Ms. Rhonda Harper show that ***only 23%*** of prospective users associate the words "American Marriage Ministries" with a single source. ECF #115 ¶7; ECF #115-5 at 6, 16. This is far below the threshold for secondary meaning. *See* ECF #114 at 17.

Ms. Harper's survey therefore presents a triable factual dispute. *See Levi Strauss*, 778 F.2d at 1358-59 (fact finder is entitled to give such weight to secondary meaning survey as it deems appropriate); *Marketquest,* 316 F.Supp.3d at 1257; *Clearly Food & Beverage Co. v. Top Shelf Bevs., Inc.*, 102 F. Supp. 3d 1154, 1174 (W.D. Wash. 2015) ("The court is not permitted to weigh the evidence on summary judgment."); *Calista Enters. v. Tenza Trading Ltd.*, 43 F.Supp.3d 1099, 1125 (D. Or. 2014); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1038 (9th Cir. 2010); *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 197, (3rd Cir. 2008). AMM cites no authority to the contrary, and Judge Lasnik already held that the parties' conflicting distinctiveness evidence presents a triable issue of fact. ECF #170 at 9-10.

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–13

Puget Sound Business & Litigation
411 University Street, Suite 1200
Seattle, Washington 98101
Telephone: (206) 374-8500

Nonetheless, AMM claims it is entitled to summary judgment on distinctiveness due to its federal registration and the timing of Ms. Harper's survey. ECF #199 at 19-21.[6] <u>First</u>, there is no presumption of validity for a common law trademark claim. <u>Second</u>, a federal registration's presumption of validity is rebuttable. ULC Monastery has rebutted that presumption. Therefore, the presumption bursts. *Tie Tech*, 296 F.3d at 783; *Meth Lab Cleanup, LLC v. Bio Clean, Inc.*, 205 F.Supp.3d 1243, 1253-54 (W.D. Wash. 2016) (citation omitted). <u>Third</u>, AMM's criticisms of Ms. Harper's survey go to the <u>weight</u> if should be given, which is a factual question. *See Clicks Billiards v. Sixshooters*, 251 F.3d 1252, 1263 (9th Cir. 2001); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 68 F.Supp.3d 1170, 1173-74 (C.D. Cal. 2014).

### c.  There is a Factual Dispute as to <u>Priority</u> of Secondary Meaning

AMM must prove that the phrase "American Marriage Ministries" achieved secondary meaning <u>before</u> ULC Monastery's first use. *See Converse, Inc. v. USITC*, 909 F.3d 1110, 1116-17 (Fed. Cir. 2018); *Ashland Oil, Inc. v. Olymco, Inc.*, 64 F.3d 662 (6th Cir. 1995) ("owner of a descriptive mark must establish that the mark had secondary meaning prior to its first use by the challenger.") (unreported). AMM claims it must prove distinctiveness by 2011 (registration of AmericanMarriageMinistries.com), 2014 (first content at AmericanMarriageMinistries.com), **or** 2018 (when AMM says ULC Monastery began new uses). ECF #199 at 19-20.[7]  Yet, the Court already held "there is a genuine issue of material fact regarding distinctiveness in the period preceding registration," and neither party's evidence "is conclusive proof of the mark's association with AMM in the public mind as of 2011 or 2014." ECF #170 at 9-10; *see also* ECF #28 at 13 ¶57.

---

[6] AMM confusingly frames lack of secondary meaning as a "defense," ECF #199 at 19, but a trademark claimant bears the burden of proving that it owns a distinctive trademark. *See Mastro*, at 124*; Tie Tech*, 296 F.3d at 783.
[7] No case ULCMS could locate supports the claim that infringement may exist if AMM can demonstrate secondary meaning prior to 2014 or 2018, when it is undisputed that ULCMS registered the AmericanMarriageMinistries.com domain name in 2011 and began using "American marriage ministries" in website text at least as early as 2012.  *See* ECF #116 ¶¶ 9-10, 16-18; ECF#116-1 (Ex. A) at 1, 5; ECF #117 ¶ 10; ECF #117-3; ECF #210-16 at 25-26.

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–14

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

AMM says that Ms. Harper's April 2019 survey is not "conclusive proof" that "American Marriage Ministries" lacked secondary meaning at the time of ULC Monastery's first use. ECF #199 at 19. This flips the summary judgment standard on its head. ULC Monastery need not submit "conclusive proof" to defeat AMM's motion for summary judgment; it is AMM's burden to first show that it is beyond factual dispute that the words "American Marriage Ministries" achieved secondary meaning before ULC Monastery's first use of such words. It has failed to do so.

## 2.   A Genuine Dispute of Fact Exists as to Likelihood of Confusion

To prove trademark infringement, AMM must prove ULC Monastery's use is "likely to confuse customers about the source of the products." *David N. Brown, Inc. v. Act Now Plumbing, LLC*, #67032-8-I, *4 (Wash. App. Sept. 24, 2012); *Olympia Brewing Co. v. Northwest Brewing Co.*, 178 Wash. 533, 538, 35 P.2d 104 (1934). Likelihood of confusion is the "core element" and the "sine qua non" of trademark infringement. *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 933 (9th Cir. 2015)("*Multi Time Machine II*")[8]; *Network Automation Inc. v. Advanced Sys. Concepts Inc.*, 638 F.3d 1137 (9th Cir. 2011). AMM fails to show a lack of factual disputes regarding likelihood of confusion, and therefore its motion for summary judgment must fail.

"Likelihood of confusion is a factual determination," and "district courts should grant summary judgment motions regarding the likelihood of confusion sparingly." *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901-02 (9th Cir. 2002). "Even where the evidentiary facts are undisputed, if reasonable minds could draw different conclusions from those facts, then summary judgment is not proper." *Money Savers Pharmacy, Inc. v. Koffler Stores (Western) Ltd.*, 37 Wn.App. 602, 608, 682 P.2d 960, (Wash. App. 1984).

---

[8] The Ninth Circuit issued an opinion ("*Multi Time Machine I*") published at 792 F.3d 1070, and a subsequent opinion ("*Multi Time Machine II*") published at 804 F.3d 940.

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–15

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

The Ninth Circuit has set forth eight non-exclusive factors to consider when determining whether a likelihood of confusion exists, and at least one Washington court has applied these factors to a trademark infringement claim under state law. *See David N. Brown*, No. 67032-8-I, *4 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). However, the *Sleekcraft* factors are not well crafted for all internet infringement cases, and courts must be flexible in addressing claims of infringement mostly occurring online. *Multi Time Machine II*, 804 F.3d at 936; *Network Automation*, 638 F.3d at 1145-46.

### a.   AMM Fails to Argue Likelihood of Confusion

AMM has failed to carry its burden on this essential element of its claim. AMM (1) provides no likelihood of confusion analysis (2) has not analyzed any factors identified in *Sleekcraft*, *Multi Time Machine II*, or *Network Automation*, (3) does not cite any evidence showing that any particular factor supports its claim (4) cites no authority suggesting the facts of this case support finding a likelihood of confusion, and (5) does not even identify which uses of which words or phrases supposedly create a likelihood of confusion. ECF #199 at 12-15. AMM has therefor failed to meet its burden to show no dispute of fact on this "intensely factual" question.

Rather, AMM's motion suggests its trademark claim is based on "mere diversion" of web traffic and alleged "dilution." AMM says that, beginning in 2018, ULC Monastery began drawing traffic to its websites and "diluting the value" of the claimed "American Marriage Ministries" mark by using the phrase "American marriage ministries" descriptively, invisibly, or in hard to find portions of certain webpages. ECF #199 at 4-6, 13-15.[9] This is not trademark infringement under the law, and AMM's founder even testified that it was not trademark infringement, but merely an attempt to improve Google search rankings.  ECF #115-2 at Dep. Tr. 220:3-19, Dep. Ex. 15.

---

[9] AMM also cites to activities outside the 3-year limitations period for AMM's trademark claim, ECF #199 at 2-3, although the Court already dismissed AMM's claim arising out of such activities. ECF #170 at 2-3, 12-13.

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–16

Puget Sound Business & Litigation
411 University Street, Suite 1200
Seattle, Washington  98101
Telephone: (206) 374-8500

### b.  "Mere Diversion" Does Not Show Likelihood of Confusion

The Ninth Circuit has definitively held that "mere diversion" of web users to an online site or advertisement through use of a competitor's trademark is not infringement. *Network Automation*, 638 F.3d at 1149. To the contrary, AMM must "demonstrate likely confusion, not mere diversion." *Id*. AMM has the burden to prove that a reasonably prudent web visitor drawn to ULC Monastery's sites would be confused into thinking that the services offered on such sites are offered by AMM. *See Multi Time Machine II*, 804 F.3d at 935. AMM has made no such showing, and therefore fails to meet its initial burden at summary judgment.

Instead, AMM complains about <u>any</u> use of the words "American marriage ministries" to draw web traffic to ULC Monastery's sites, even if such use is merely descriptive, "buried" and hard to see, or even invisible (e.g. in title tags, metatags, or as paid Google AdWords). ECF #199 at 4-6. Yet, the Ninth Circuit has held in *Network Automation* and *Multi Time Machine II* that such use is not actionable, if it is not likely to confuse as to the source of ULC Monastery's services.

Network Automation purchased a direct competitor's trademark ("ActiveBatch") as a search keyword, so that web users searching for it competitor would be presented with sponsored advertisements for Network Automation's competing product. *Network Automation*, 638 F.3d at 1149. The court held that Network Automation's attempt to present its own advertisements to customers searching for its competitor was not actionable, so long as the sponsored ads were not likely to confuse such customers. Citing a previously-used analogy, the court wrote:

> [I]f a shopper en route to the Calvin Klein section is diverted by a prominently displayed Charter Club (Macy's own brand) collection and never reaches the Calvin Klein collection, it could not be said that Macy's had infringed on Calvin Klein's trademark by diverting the customer to it with a clearly labeled, but more prominent display.

*Id.* at 1148 (quoting *Playboy Enters., Inc. v. Netscape Commc'ns Corp.,* 354 F.3d 1020, 1024 (9th Cir.2004)). The court held that, even if Network Automation's sponsored advertisements did not

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–17

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

clearly identify Network Automation as their source, it was an abuse of discretion for the district court to hold that such ads, in context, would likely confuse consumers. *Id.* at 1154.

In *Multi Time Machine*, Amazon configured its website so that users searching for the registered trademark "MTM Special Ops" would see listings for competitors' watches:

> If [an Amazon visitor] were to enter "MTM Special Ops" as her search request on the Amazon website, Amazon would respond with its page showing MTM Special Ops (1) in the search field (2) "MTM Specials Ops" again—in quotation marks—immediately below the search field and (3) yet again in the phrase "Related Searches: MTM special ops watch," all before stating "Showing 10 Results." What the website's response will not state is that Amazon does not carry MTM products. Rather, below the search field, and below the second and third mentions of "MTM Special Ops" noted above, the site will display aesthetically similar, multi-function watches manufactured by MTM's competitors. The shopper will see that Luminox and Chase–Durer watches are offered for sale, in response to her MTM query.

*Multi Time Machine I*, 792 F.3d 1070, 1071-72 (9th Cir. 2015). The court found no likelihood of confusion as a matter of law, stating "[b]ecause Amazon's search results page clearly labels the name and manufacturer of each product offered for sale and even includes photographs of the items, no reasonably prudent consumer accustomed to shopping online would likely be confused as to the source of the products." *Multi Time Machine II,* 804 F.3d at 933.

*Network Automation* and *Multi Time Machine* show (1) that ULC Monastery may use the phrase "American marriage ministries" to draw web traffic to its sites, so long as the sites themselves are not likely to cause confusion, and (2) that confusion is <u>not</u> likely where ULC Monastery prominently displays its own branding. That is precisely what ULC Monastery did. ECF #117 ¶10; ECF #117-3; ECF #115-2 at Dep. Tr. 220:3-19, 223:4-224:1, Dep. Exs. 15-16; evidence cited in ECF #199 at 4-5. AMM has therefore failed to show likelihood of confusion.

### c.   "Dilution" is Not a Likelihood of Confusion

AMM also complains that ULC Monastery attempted to "dilute the value" of its claimed mark. ECF #199 at 17, 19. However, "dilution" does not show a likelihood of confusion or

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–18

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

trademark infringement. Washington <u>has</u> established a limited statutory cause of action for dilution of a "famous" mark. *See* RCW 19.77.160. However, AMM has not pleaded such a claim, and has not shown the necessary elements of such a claim. ECF #199; ECF #28.

### 3.   Factual Disputes Preclude Summary Judgment on Fair Use

Under the classic fair use[10] doctrine, "[t]he use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin . . . of the product." *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 536, 529 (1924). A party who chooses a descriptive phrase for its trademark, "cannot altogether exclude some kinds of competing uses." *US Shoe Corp. v. Brown Group, Inc.*, 740 F. Supp. 196 (S.D. N.Y. 1990). This is why descriptive terms require a showing of secondary meaning; the trademark claimant cannot exclude use "in the original, descriptive sense, but only in the secondary one associated with the markholder's goods." *KP Permanent Make-up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004).[11]

Use of a mark is considered fair use if it is (1) not used as a trademark, (2) used only to describe goods and services, and (3) used fairly and in good faith. *See Bell v. Harley Davidson Motor Co.*, 539 F.Supp.2d 1249, 1257 (S.D. Cal. 2008). The "intensely factual" nature of trademark disputes makes summary judgment on fair use issues disfavored. *See Marketquest Grp., Inc. v. BIC  Corp.*, 862 F.3d 927, 935 (9th Cir. 2017). AMM has not challenged the first element, and factual issues preclude summary judgment on the second and third.

//
//
//
//

---

[10]   AMM's motion does not challenge ULC Monastery's nominative fair use defense regarding the AmericanMarriageMinistries.com site.  *See* ECF #199 at 21; *see also* ECF #170 at 10:7-9.

[11]   AMM claims that "[a] classic fair use defense is unavailable if there is a likelihood of consumer confusion." ECF #199 at 21. This is no longer the law. *KP Permanent*, 543 U.S. at 121-22.

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–19

Puget Sound Business & Litigation
411 University Street, Suite 1200
Seattle, Washington  98101
Telephone: (206) 374-8500

a.  <u>ULC Monastery's Use is Descriptive</u>

ULC Monastery uses the phrase in its descriptive sense, not as a trademark. May 3 Goschie Decl., ¶6-10; *e.g.,* ECF #117-3 ("Individuals who have pursued online ordination or who participate in these american marriage ministries can use the following tips to build and enhance online ministry outreach."). ULC Monastery and AMM are both "American," the term "marriage ministries" is generic for their services, and AMM's founder testified that ULC Monastery's use of "American marriage ministries" was "generic."  ECF #115 at ¶5; ECF #115-2 at Dep. Tr. 203:18-204:5, 220:3-19, 222:10-14, 223:4-5, 20-21, 224:6-9, Dep. Ex. 13 at Resps. 1-2, Dep. Exs. 15-16; ECF #115-3 at 3-4, 14. Thus, a jury could conclude that ULC Monastery's use was descriptive. *See Marketquest*, 862 F.3d at 936-37 (descriptive use is a question of fact).

b.  <u>ULC Monastery Acted in Good Faith</u>

ULC Monastery used the words "American marriage ministries" in good faith. The crux of AMM's argument is that ULC Monastery did not start using "American marriage ministries" until AMM registered its trademark, and any attempt to draw web traffic to ULC Monastery's sites shows bad faith. ECF #199 at 21. This is factually and legally mistaken. First, ULC Monastery began descriptive use of the phrase "American marriage ministries" long before AMM obtained registration. *See* ECF #117 at ¶10; ECF #117-3; ECF #28 at 13, ¶57; ECF #115-3 at 1. Second, use of a competitor's trademark to draw web traffic is a legitimate use if it does not create a likelihood of confusion, and is not evidence of bad faith. *Network Automation*, 638 F.3d at 1153; *Marketquest*, 862 F.3d at 937 (good faith element of fair use is the same as intent factor for likelihood of confusion); *Bell*, 539 F. Supp. 2d at 1258-59 (good faith element asks whether the defendant intended to "creat[e] confusion as to the source of the goods or services.").

Here, ULC Monastery used the words "American marriage ministries" (1) in non-prominent locations, (2) without distinctive lettering or stylization, (3) with "marriage ministries"

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–20

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

in lower case, (4) with ULC Monastery's own branding prominently displayed, and (5) explicitly directed its web developers to use the phrase only in its "generic" sense. ECF #117 ¶10; ECF #117-3; ECF #115-2 at Dep. Exs. 15-16; ECF #147-16; May 3 Goschie Decl., ¶6-10. This shows that ULC Monastery was not seeking to confuse visitors. *See Bell*, 539 F.Supp.2d at 1257 (prominent use of defendant's own branding shows intent not to create confusion).  Indeed, it would be foolish for ULC Monastery to try confuse visitors into thinking that ULC Monastery was affiliated with AMM, while at the same time informing the public that weddings performed by AMM's officiants have been held invalid. May 3 Goschie Decl., ¶6-10. Even AMM's founder agreed that ULC Monastery's use was "generic" and wasn't really "infringing on a trademark." ECF #115-2 at Dep. Tr. 223:18-19, 224:5-8, Dep. Exs. 15-16. Thus, a factual dispute exists as to "good faith." *See Marketquest*, 862 F.3d at 937 (genuine issue of fact as to good faith precludes summary judgment).

> 4.  AMM's Requested Injunction is Impermissibly Overbroad

The Court should deny AMM's request for "a complete prohibition" on all use of the words "American marriage ministries" or "any near variants of the term."  ECF #199 at 15-16. The Ninth Circuit prohibits an injunction on nominative use of a trademark. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010). Moreover, the Court already dismissed AMM's trademark claim arising from ULC Monastery's use of the AmericanMarriageMinistries.com site, and held that the site "simply communicated ideas regarding AMM or expressed points of view that required the use of AMM's name."  ECF #170 at 2-3, 10, 13. Thus, "a complete prohibition" would contradict the Court's dismissal of AMM's claims.

AMM's request shows that its claims are not based on any real concern over consumer confusion, but are merely an attempt to monopolize web traffic and shut down criticism. Even if some relief were warranted (it is not), any injunction should narrowly tailored to avoid only <u>confusing</u> uses. "[A] trademark injunction should be tailored to prevent ongoing

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–21

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

violations…Speakers do not lose the right to engage in permissible speech simply because they may have infringed a trademark in the past." *Tabari*, 610 F.3d at 1182; *cf. Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1344 (Fed.Cir.2012) ("[D]istrict courts are frequently admonished not to issue sweeping injunctions against potentially infringing activities…but to restrict the scope of the injunction to the particular adjudicated infringing activity.")

### D.   Factual Disputes Exist as to AMM's CPA Claim

The Court should deny AMM's motion for summary judgment on its CPA claim because material issues of fact exist regarding (1) any unfair and deceptive act, (2) capacity to deceive, and (3) causation of injury. ULC Monastery's descriptive use of the words "American marriage ministries" is not an unfair or deceptive act as a matter of law.

#### 1.   AMM Fails to Show Deceptive or Unfair Practices as a Matter of Law

AMM's motion should be denied because (a) multiple disputes of fact exist as to whether ULC Monastery committed trademark infringement, and (b) mere diversion and dilution are not unfair or deceptive acts as a matter of law. AMM claims that the alleged "trade name" infringement is an unfair or deceptive act under the CPA. ECF #199 at 17-18. However, triable issues of fact preclude holding whether any trademark infringement occurred. Section III(C), *supra*. These disputes also preclude holding that ULC Monastery engaged in an unfair or deceptive act. *See Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wash.2d 775, 786-87, 336 P.3d 1142, (Wash. 2014) (dispute of fact as to whether underlying violations occurred precludes summary judgment, even if violations would constitute unfair and deceptive acts as a matter of law under the CPA).

AMM cites no legal authority holding the mere diversion or dilution are unfair or deceptive acts under the CPA, and the Court should hold that they are not.  Washington courts rely on relevant federal law to determine whether a practice is unfair or deceptive under the CPA. *See*

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–22

Puget Sound Business & Litigation
411 University Street, Suite 1200
Seattle, Washington 98101
Telephone: (206) 374-8500

RCW 19.86.920 ("It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts ...dealing with the same or similar matters."). As discussed *supra*, pp. 17-19, the Ninth Circuit has held that use of another's trademark to gain web traffic, without likelihood of confusion, is a legitimate business practice. Thus, the Court should hold that "mere diversion" of potential consumers is not an unfair or deceptive practice under the CPA.

Similarly, the Washington legislature has provided for injunctions against dilution of "famous" marks, but only if the marks became "famous" prior to the allegedly dilutive use. RCW 19.77.160. It would contradict the legislature's explicit limitations on the statutory dilution cause of action, and the available remedies, to hold that dilution of a non-famous mark is an unfair and deceptive act entitling a claimant to much broader remedies under the CPA.

### 2.   A Dispute of Fact Exists as to Capacity to Deceive

Whether an act has the capacity to deceive a substantial portion of the public is a question of fact to be determined by a jury. *See Holiday Resort Comty. v. Echo Lake*, 134 Wn. App. 210, 135 P.3d 499, 507 (Wash. App. 2006). AMM argues that "[t]rade name infringement is likely to confuse the public," ECF #199 at 18, but there are factual disputes as to whether any "trade name" infringement occurred, which preclude summary judgment on AMM's CPA claim.

### 3.   A Dispute of Fact Exists Regarding Causation and Injury

A CPA plaintiff "must establish damages and a causal link between the deceptive act and the injury suffered...Proximate causation is typically a question of fact for the jury." *Holiday Resort*, 135 P.3d at 507-08 (citations omitted). AMM argues that ULC Monastery's use of "American marriage ministries" caused a drop in web traffic and sales beginning in April 2018. ECF #199 at 18. The evidence contradicts this claim.

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–23

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 374-8500

First, ULC Monastery has used the phrase "American marriage ministries" descriptively on its websites since at least 2012. ECF. #117 ¶10; ECF #117-3; ECF #210-16 at 25-26 (2d. Supp. Resp. to Rog. 11). Second, AMM's Executive Director testified that AMM's drop in traffic and sales was caused by the AmericanMarriageMinistries.com site (what AMM calls "the attack site"). May 3 Galletch Decl. Ex. 2 (dep. pgs. 105:16-19, 217:14-15). This contradicts AMM's argument that ULC Monastery's "new" uses of the phrase "American marriage ministries" beginning in 2018 caused AMM's supposed injury. The AmericanMarriageMinistries.com site was published in 2014, did not undergo any significant changes in content since that time, and the Court has dismissed AMM's CPA claim arising from that site. ECF 170 at 12-13.

However, one notable thing <u>did</u> change at the exact time AMM suffered an alleged drop in web traffic; AMM relaunched its website in March 2018, and noticed a drop in web traffic in April 2018. May 3 Galletch Decl. Ex. 2 (dep pgs. 217:14-15, 322:3-5). Thus, a jury could conclude that AMM's claimed injury was not caused by any CPA violation, but by AMM's own relaunch of its website. Thus, a material dispute of fact exists as to causation of AMM's injury.

## IV. CONCLUSION

Based on the authority and reasons set forth above, ULC Monastery respectfully requests that the Court deny AMM's motion for summary judgment.

DATED this 3rd day of May 2021.

By: *s/ Michael P. Matesky, II*
Michael P. Matesky, II (WSBA # 39586)
Matesky Law PLLC
1001 4th Ave., Suite 3200
Seattle, WA 98154
Phone: 206.701.0331
Email: mike@mateskylaw.com;
litigation@mateskylaw.com

PUGET SOUND BUSINESS & LITIGATION

Michael B. Galletch, WSBA # 29612
411 University Street, Suite 1200
Seattle, WA 98101-2519
(206)898-8040
mike@psbizlit.com

Attorneys for Plaintiff Universal Life Church Monastery Storehouse

PLAINTIFF'S RESPONSE TO DEFENDANT
AMM'S MOTION FOR SUMMARY JUDGMENT–24

PUGET SOUND BUSINESS & LITIGATION
411 UNIVERSITY STREET, SUITE 1200
SEATTLE, WASHINGTON  98101
TELEPHONE: (206) 374-8500