1

2

3

4

5

6

7

8

9

10

11

12

13

14
                    UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF WASHINGTON
15                           AT SEATTLE

16

17   UNIVERSAL LIFE CHURCH                 CASE NO. C19-0301RAJ
     MONASTERY STOREHOUSE,
18                                         ORDER
                         Plaintiff,
19           v.

20   AMERICAN MARRIAGE
     MINISTRIES, et al.,
21
                         Defendants.
22

1

2

# I.    INTRODUCTION

3       Before the court are (1) Defendants Maurice King, Lewis King, Glen Yoshioka,

4  and Dylan Wall (collectively, the "Individual Defendants"[1]) and Defendant / Counter-

5  claimant American Marriage Ministries' ("AMM") (collectively, "Defendants") motion

6  for summary judgment on Plaintiff Universal Life Church Monastery Storehouse's

7  ("ULC Monastery") claims and AMM's motion for partial summary judgment on its

8  counterclaims against ULC Monastery (AMM Mot. (Dkt. # 199); *see also* AMM Reply

9  (Dkt. # 221)) and (2) Defendant Maurice King's motion for summary judgment (King

10  Mot. (Dkt. # 202); *see also* King Reply (Dkt. # 220).)  ULC Monastery opposes both

11  motions.  (AMM Resp. (Dkt. # 212); King Resp. (Dkt. # 211).)

12       In this order, the court addresses Defendants' motions to dismiss ULC

13  Monastery's claims; the court will address AMM's motion for partial summary judgment

14  on its counterclaims against ULC Monastery in a subsequent order.  The court has

15  reviewed the relevant motions, the submissions in support of and in opposition to the

16  motions, the remainder of the record, and the applicable law.  Being fully advised,[2] the

17  court GRANTS in part and DENIES in part Defendants' motions to dismiss ULC

18  Monastery's claims.

19

20       [1] On July 13, 2021, the parties stipulated to the voluntary dismissal with prejudice of
Defendant Sara White.  (7/13/21 Stip. (Dkt. # 223).)

21       [2] Defendants request oral argument (*see* AMM Mot. at 1, King Mot. at 1), but the court
22  finds that oral argument would not be helpful to its disposition of the motions, *see* Local Rules
W.D. Wash. LCR 7(b)(4).

## II.      BACKGROUND

AMM and ULC Monastery are competitors in the field of providing online ordinations to individuals who wish to perform marriage ceremonies.  Each party accuses the other of misconduct related to its web presence.  The court recounts below the factual and procedural background relevant to Defendants' motions to dismiss ULC Monastery's claims.

### A.      Factual Background

ULC Monastery was founded by George Freeman, its President and Presiding Chaplain, in 2006. (Freeman Decl. (Dkt. # 116) ¶¶ 2-3.)  It operates an online marriage ministry; offers free online ordinations; sells proof of ordination so that its ministers can register with the state to perform marriages; and sells paraphernalia for performing religious ceremonies, such as exorcisms, baptisms, weddings, and funerals.  (*Id.* ¶ 4; 5/4/20 Cohen Decl. (Dkt. # 75) ¶ 2, Ex. 2 (Dkt. # 78 (sealed)) ("Goschie Dep.") at 20:1-21:7; 4/15/21 Roberts Decl. (Dkt. # 201) ¶ 5, Ex. 3 (excerpts of ULC Monastery's website).)  Most of its income comes from sales of proof of ordination and paraphernalia. (*See* 5/4/20 Cohen Decl. ¶ 4, Ex. 3 ("Profit and Loss Statement") at 1.)  Mr. Freeman was previously an officer of an entity affiliated with the original Universal Life Church in Modesto, California (the "Modesto ULC"), which had been subject to legal challenges. (*See* 5/3/21 Galletch Decl. (Dkt. # 215) ¶ 3, Ex. 1 ("Freeman Dep.") at 51:4-6).  Mr. Freeman founded ULC Monastery as "completely independent" from the Modesto ULC and has "no association with them."  (*Id.* at 49:2-50:7; 58:23-59:3.)

1    AMM was founded by Mr. Yoshioka, a former ULC Monastery employee, in

2  2009.  (*See* https://www.theamm.org/about; Freeman Decl. ¶ 5.)  It, too, offers free online

3  ordination for individuals who wish to officiate marriages.  Maurice King, Mr. Wall, and

4  a third employee, Trygve Jones, also left their employment at ULC Monastery to join

5  AMM.  (*See* Freeman Decl. ¶¶ 6-8.)  Maurice King is a member of AMM's board of

6  directors and its general counsel, and Lewis King is AMM's executive director.  (M.

7  King Decl. (Dkt. # 203) ¶ 2; Galletch Decl. ¶ 7, Ex. 5; L. King Decl. (Dkt. # 200) ¶ 1.)

8  AMM registered the domain name americanmarriageministries.com in 2009 and used it

9  as its primary website until it transitioned its primary website to TheAMM.org.

10  (Yoshioka 30(b)(6) Dep.[3] at 119:15-21, 122:14-123:6.)  It allowed its registration for

11  americanmarriageministries.com to lapse on May 20, 2011 and did not renew it.  (*Id.* at

12  123:16-23; *see id.* Ex. 8.)  ULC Monastery subsequently registered the

13  americanmarriageministries.com domain name for its own use in July 2011.  (*See*

14  Freeman Decl. ¶¶ 11-18.)  Although americanmarriageministries.com originally

15  redirected to ULC Monastery's primary website, TheMonastery.org, ULC Monastery

16  later published content on that site that, AMM alleges, contained false information about

17  AMM, including that marriages performed by AMM ministers are not legally valid.  (*See*

18  *id.* ¶ 18; Am. Ans. (Dkt. # 28) at 16-18, ¶¶ 82-106.)

19

20  _____

21  [3] Both parties provide exhibits containing excerpts of Mr. Yoshioka's Federal Rule of
Civil Procedure 30(b)(6) deposition on behalf of AMM.  (*See* 6/16/20 Matesky Decl. (Dkt.
# 115) ¶ 4, Ex. B; 7/21/20 Cohen Decl. (Dkt. # 147) ¶ 20, Ex. 17; 5/3/21 Galletch Decl. ¶ 4, Ex.

22  2.)  The court cites directly to Mr. Yoshioka's Rule 30(b)(6) deposition for ease of reference.

1    In "mid-to-late 2018," AMM published two additional websites that include

2    content relating to ULC Monastery:  amm-vs-ulc.com (the "AMM-vs-ULC website") and

3    americanmarriagelegal.com (the "AMM Legal website").  (Yoshioka 30(b)(6) Dep. at

4    69:7-20; L. King 30(b)(6) Dep.[4] at 131:21-132:8; *see* 5/3/21 Galletch Decl. ¶¶ 8-9, Ex. 6

5    at 6-13 (printout of AMM-vs-ULC website); *id.* Ex. 7 (printout of AMM Legal website).)

6    The AMM-vs-ULC website states that there are "two major organizations when it

7    comes to ordination, **American Marriage Ministries** (AMM) and the **Universal Life**

8    **Church Monastery** (ULC Monastery)" and that its purpose is "to help break down the

9    major differences between" the two churches.  (AMM-vs-ULC website at 7-8 (emphasis

10   in original); *see also id.* at 8 (stating "we've created a side-by-side comparison to help").)

11   It states that that the Universal Life Church "has been in and out of the courtroom ever

12   since" the 1950s; "has had their IRS non-profit status revoked;" and "has been embroiled

13   in fraud allegations."  (*Id.* at 8-9.)  These statements link to other webpages that include

14   information about court cases involving the Modesto ULC that pre-date the founding of

15   ULC Monastery.  (*See id.*; 5/3/21 Goschie Decl. (Dkt. # 214) ¶¶ 3-5, Exs. 1-5.)  ULC

16   Monastery asserts that because it is separate and distinct from the Modesto ULC, there

17   can be no dispute that the statements on the AMM-vs-ULC page are not true.  (King

18   Resp. at 4.)

19

20

21    [4] Both AMM and Maurice King provide exhibits containing excerpts of Lewis King's
Federal Rule of Civil Procedure 30(b)(6) deposition on behalf of AMM.  (Mennemeier Decl.

22   (Dkt. # 204) ¶ 8, Ex. B; 5/3/21 Galletch Decl. ¶ 4, Ex. 2) The court cites directly to Lewis King's
Rule 30(b)(6) deposition for ease of reference.

The AMM Legal website purports to answer "questions about getting ordained online to perform weddings" and to "provide links to state-specific information that defines the legal requirements." (AMM Legal website at 1.) ULC Monastery asserts that this page contains multiple false and misleading statements, including that AMM is an "IRS 501(3)(c) Certified Non-Profit Ministry;" and that "[t]here are people who have millions of dollars selling ordinations" who are "behind that anonymous, and misleading website that incorrectly states that weddings 'may not be legally valid.'" (King Resp. at 5; AMM Legal website at 1-2; L. King 30(b)(6) Dep. at 297:6-299:5 (acknowledging this statement referred to ULC Monastery).)

**B.    Procedural Background**

ULC Monastery filed its initial complaint in this action on March 1, 2019. (Compl. (Dkt. # 1).) After this court granted in part and denied in part Defendants' motion to dismiss (6/19/19 Order (Dkt. # 25); *see also* MTD (Dkt. # 7)), ULC Monastery amended its complaint to assert claims against Defendants for (1) violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) violation of the Washington Consumer Protection Act, ch. 19.86 RCW ("WCPA"); and (3) defamation per se. (Am. Compl. (Dkt. # 27) ¶¶ 34-63.) Defendants answered the amended complaint and AMM asserted counterclaims against ULC Monastery. (*See* Individual Defs. Ans.'s (Dkt. ## 29-33); AMM Ans.[5]) AMM asserted counterclaims against ULC Monastery for (1) trademark

---

[5] AMM also asserted third-party claims against former Third-Party Defendant Universal Life Church Monastery Storehouse, Inc. (*See* AMM Ans. at 8, ¶ 3.) AMM subsequently voluntarily dismissed these claims. (2/26/21 Not. (Dkt. # 192).)

infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (2) cybersquatting in violation of the Lanham Act, 15 U.S.C. § 1125(d) arising from ULC Monastery's use of the URL http://www.americanmarriageministries.com; (3) false advertising and commercial disparagement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) unfair competition in violation of the WCPA; (5) defamation per se; (6) trade libel; and (7) trademark infringement under Washington common law. (AMM Ans. at 18-29, ¶¶ 107-96.)

On December 7, 2020, the court granted in part ULC Monastery's motion for summary judgment on AMM's counterclaims. (12/7/20 Order (Dkt. # 170); *see also* ULC MSJ Mot. (Dkt. # 114).) The court granted the motion as to AMM's defamation and Lanham Act cybersquatting claims in their entirety and its state-law trademark, trade libel, and WCPA claims to they extent they arose out of ULC Monastery's use of the http://www.americanmarriageministries.com URL because these claims were time-barred. (12/7/20 Order at 13.) The court allowed AMM's remaining Lanham Act claims and its state-law trademark, trade libel, and WCPA claims to proceed to the extent they were based on conduct within the applicable limitations periods. (*Id.*)

Defendants and Maurice King filed the instant motions for summary judgment on April 15, 2021. (*See* AMM Mot.; King Mot.)

### III.   ANALYSIS

Below, the court sets forth the summary judgment standard, then analyzes Defendants' motions for summary judgment on ULC Monastery's claims.

**A.   Summary Judgment Standard**

1    Summary judgment is appropriate if the evidence viewed in the light most

2    favorable to the non-moving party shows "that there is no genuine dispute as to any

3    material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4    56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it

5    might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

6    (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a

7    reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*,

8    247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

9    The moving party bears the initial burden of showing there is no genuine dispute

10   of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at

11   323. If the moving party does not bear the ultimate burden of persuasion at trial, it can

12   show the absence of such a dispute in two ways: (1) by producing evidence negating an

13   essential element of the nonmoving party's case, or (2) by showing that the nonmoving

14   party lacks evidence of an essential element of its claim or defense. *Nissan Fire &*

15   *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party

16   meets its burden of production, the burden then shifts to the nonmoving party to identify

17   specific facts from which a factfinder could reasonably find in the nonmoving party's

18   favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250. "The mere existence of a

19   scintilla of evidence in support of the non-moving party's position is not sufficient."

20   *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

21   **B.    Defendants' Motion for Summary Judgment on ULC Monastery's Claims**

22

1    ULC's claims for false advertising under § 43(a) of the Lanham Act, violation of

2    the WCPA, and defamation per se are based on AMM's publication of the AMM-vs-ULC

3    and AMM Legal websites.  (Am. Compl. ¶¶ 34-63.)  Defendants assert that the court

4    must grant summary judgment on these claims because ULC Monastery cannot show that

5    it suffered cognizable injuries as a result of their actions.  (*See* AMM Mot. at 9-13.)

6    Defendants do not challenge any other elements of ULC Monastery's claims.  (*See*

7    *generally id.*)  The court considers each of the claims in turn.

8         1.    Lanham Act Claim

9         To prevail on its claim for false advertising, ULC Monastery must prove that (1)

10   Defendants made a false or misleading statement in a commercial advertisement about

11   their own or another's product, (2) the statement actually deceived or had the tendency to

12   deceive a substantial segment of its audience, (3) the statement was material, (4)

13   Defendants caused the statement to enter interstate commerce, and (5) ULC Monastery

14   has been or is likely to be injured as a result of the statement, either by direct diversion of

15   sales from itself to Defendants or by a lessening of goodwill associated with ULC

16   Monastery's products.  *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861RSM,

17   2015 WL 3407882, at *4 (W.D. Wash. May 15, 2015) (citing *Southland Sod Farms v.*

18   *Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).  The Lanham Act does not,

19   however, allow "all factually injured plaintiffs to recover."  *Lexmark Int'l, Inc. v. Static*

20   *Control Components, Inc.*, 572 U.S. 118, 129 (2014); *see also ThermoLife Int'l, LLC v.*

21   *BPI Sports, LLC*, --- F. App'x ---, 2022 WL 612669, at *2 (9th Cir. Mar. 2, 2021).

22   Rather, the "zone-of-interests test and the proximate-cause requirement" set forth "the

ORDER - 9

relevant limits on who may sue." *Lexmark*, 572 U.S. at 134.  To come within the

Lanham Act's zone-of-interests for a claim under 15 U.S.C. § 1125(a), ULC Monastery's

injury must be "to a commercial interest in reputation or sales." *Id.* at 131-32.  To satisfy

the proximate-cause requirement, ULC Monastery "must show economic or reputational

injury flowing directly from the deception wrought by the defendant's advertising; and

that . . . occurs when deception of consumers causes them to withhold trade from the

plaintiff." *Id.* at 133.  To survive summary judgment, ULC Monastery must provide

"non-speculative evidence of injury attributable to" Defendants' actions. *See Alexander*

*v. Falk*, 828 F. App'x 350, 352-53 (9th Cir. 2020).  The Ninth Circuit has "generally

held," however, "that 'when a plaintiff competes directly with a defendant, a

misrepresentation will give rise to a presumed commercial injury that is sufficient to

establish standing." *ThermoLife Int'l*, 2022 WL 612669, at *2 (quoting

*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011)).

Defendants argue that the court must dismiss ULC Monastery's Lanham Act claim

because ULC Monastery admits that it "is not requesting the [c]ourt award it an amount"

for lost profits, lost income or revenue, loss of goodwill, or injury to its reputation "for

any of its causes of action" and cannot, therefore, prove actual injury.  (AMM Mot. at 9

(quoting 4/15/21 Roberts Decl. ¶ 24, Ex. 22 at 7-8 (ULC Monastery's responses to

Requests for Admissions 83-86)); *see also* AMM Reply at 2-4.)  ULC Monastery

responds that because this is a false comparative advertising case, commercial injury is

presumed and it "need not show actual loss or injury" to be awarded monetary and

injunctive relief.  (AMM Resp. at 9-11 (citing *TrafficSchool.com*, 653 F.3d at 826-27, 831)).)

As a threshold matter, the court disagrees with AMM's assertion that *TrafficSchool.com*'s presumption of injury was superseded by *Lexmark* , 527 U.S. at 129, and *Alexander*, 828 F. App'x at 352.  (*See* AMM Reply at 4.)  Indeed, the Ninth Circuit Court of Appeals continues to cite *TrafficSchool.com* for the principle that injury can be presumed in false comparative advertising cases.  *See, e.g.*, *ThermoLife Int'l*, 2022 WL 612669, at *2; *Quidel Corp. v. Siemens Med. Solutions, Inc.*, --- F. App'x ---, 2021 WL 4622504, at *2 (9th Cir. Oct. 7, 2021) ("'An award of profits with no proof of harm' is 'appropriate in false *comparative* advertising cases, where it's reasonable to presume that every dollar defendant makes has come directly out of plaintiff's pocket.'" (quoting *TrafficSchool.com*, 653 F.3d at 831) (emphasis in original)).  And although it is true that the Ninth Circuit affirmed the trial court's grant of summary judgment on the plaintiffs' Lanham Act claims in *Alexander*, that case did not involve false comparative advertising. *See Alexander v. Falk*, Case No. 2:16-cv-02268-MMD-GWF, 2019 WL 3717802, at *5 (D. Nev. Aug. 7, 2019) (concluding that the evidence did not support an inference of direct competition between plaintiffs and defendants).

In light of the Ninth Circuit's continued reliance on *TrafficSchool.com*, the court agrees with ULC Monastery that summary judgment is not appropriate on its claim for injunctive relief.  In *TrafficSchool.com*, for example, after holding that a presumption of commercial injury was appropriate in that false comparative advertising case, the Ninth Circuit concluded that permanently enjoining the defendants from engaging in deceptive

1    marketing or placing misleading statements on its website was an appropriate remedy.

2    *TrafficSchool.com*, 653 F.3d at 831.  The court did not require the plaintiffs to prove an

3    economic injury to prevail on their claim for injunctive relief.  *See id.*  So too, here,

4    where ULC Monastery alleges false advertising by a direct competitor, ULC Monastery

5    need not provide evidence of economic harm to avoid summary judgment on its

6    injunctive relief claim.

7            The same is not true with respect to ULC Monastery's claims for monetary relief.

8    Although ULC Monastery quotes *Cascade Yarns* for the proposition that a court "has

9    considerable discretion in fashioning appropriate monetary relief based on the totality of

10   the circumstances" (AMM Resp. at 11 (quoting *Cascade Yarns*, 2015 WL 3407882, at

11   *5)), it fails to quote the rest of that sentence, in which the *Cascade Yarns* court warned

12   that it "must ensure that any award constitutes 'compensation' for the plaintiff's losses or

13   defendant's unjust enrichment rather than a 'penalty' for the defendant's conduct,"

14   *Cascade Yarns*, 2015 WL 3407882, at *5.  Indeed, the *Cascade Yarns* court made clear

15   that the plaintiff "bears the burden to justify any monetary recovery" of either its

16   damages or the defendant's profits.  *Id.* (first citing *Porous Media Corp. v. Pall

17   Corp.*, 110 F.3d 1329, 1336 (8th Cir. 1997); and then citing *Badger Meter, Inc. v.

18   Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994).)  Here, ULC Monastery has not

19   directed the court to any evidence that would support an award of monetary relief on its

20   Lanham Act claim, nor has it cited any case that awarded monetary damages to a plaintiff

21   based only on a presumption of commercial injury.  (*See* AMM Resp. at 9-11.)

22   Therefore, the court GRANTS Defendants' motion for summary judgment on ULC

Monastery's Lanham Act Section 43(a) claim to the extent it seeks monetary damages. The court DENIES the motion with respect to ULC Monastery's claim for injunctive relief.

2. WCPA Claim

Under the WCPA, a private plaintiff must prove (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) causes injury to the plaintiff's business or property; and (5) the injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). The WCPA does not require a plaintiff to prove that it suffered monetary damages—rather, it requires only that the plaintiff establish that it has suffered an injury due to the unfair or deceptive act or practice. *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 890 (Wash. 2009) (stating that "[i]njury is distinct from damages")); *Lock v. Am. Family Ins. Co.*, 460 P.3d 683, 694 (Wash. Ct. App. 2020) (noting that nonquantifiable injuries, such as loss of goodwill, suffice). When analyzing the injury element, Washington courts distinguish attorney's fees incurred as a result of an unfair or deceptive act or practice from attorney's fees incurred to institute a WCPA action. *Panag*, 204 P.3d at 902 (holding that the plaintiff's expenses incurred in consulting an attorney regarding the underlying deceptive practice constituted injury under the WCPA); *cf. Lock*, 460 P.3d at 694 (holding that the "inconvenience and cost of prosecuting [the plaintiff's] [W]CPA claim does not support a claim for injury to business or property"). Thus, although expenses incurred in bringing the WCPA claim

itself are not cognizable, "[i]nvestigation expenses and other costs resulting from a deceptive business practice sufficiently establish injury." *Panag*, 204 P.3d at 902.

Here, Defendants contend that summary judgment is appropriate because ULC Monastery claims as injuries only "litigation expenses and inconvenience"—injuries which, they argue, are not cognizable under the WCPA. (AMM Mot. at 10-11.) ULC Monastery counters that its injuries are "the time of its own personnel and the cost to have an attorney investigate" AMM's websites. (AMM Resp. at 7 (citing 5/4/20 Cohen Decl. ¶ 13, Ex. 11 at 7 (ULC Monastery's answer to AMM's Interrogatory No. 19).) It seeks a monetary award of $1,044.63 in attorney's fees incurred in the investigation and injunctive relief. (*Id*.)

First, ULC Monastery's assertion that its attorney was retained only to "investigate [the websites], verify their falsity, and determine the author" is belied by its answers to AMM's Interrogatories Nos. 3 and 19, in which it stated that it "engaged an attorney to investigate whether the claims on these sites *were legally actionable*" and attributed the $1,044.63 in fees to that investigation. (AMM Resp. at 7; 4/15/21 Roberts Decl. ¶ 25, Ex. 23 at 16-17 (emphasis added); 5/4/20 Cohen Decl. ¶ 13, Ex. 11 at 7.) Thus, ULC Monastery's claimed damages are different in character from the attorney's fees at issue in *Panag*, which were incurred to "dispel uncertainty regarding the nature of an alleged debt" rather than to determine whether the defendant's conduct was actionable. *See Panag*, 204 P.3d at 902. ULC Monastery's attorney's fees are not, therefore, an injury to business or property within the meaning of the WCPA.

1       Second, the court agrees with Defendants that the time that ULC Monastery's

2   employee spent reviewing AMM's websites, without more, does not constitute

3   cognizable injury to its business or property.  (*See* AMM Reply at 2; 4/15/21 Roberts

4   Decl. ¶ 25, Ex. 23 at 16-17; 5/4/20 Cohen Decl. ¶ 13, Ex. 11 at 7).  The cases cited by

5   ULC Monastery make clear that a plaintiff must demonstrate that the lost time negatively

6   affected its business to meet the injury requirement.  *See Panag*, 204 P.3d at 899 (finding

7   the plaintiff sufficiently alleged injury where he had to take time away from his business

8   to investigate collection notices, resulting in a loss of business profits); *Sign-O-Lite Signs,*

9   *Inc. v. DeLaurenti Florists, Inc.*, 825 P.2d 714, 720 (Wash. Ct. App. 1992) (finding injury

10  to business, even where the injury was not quantifiable, where florist was drawn away

11  from her business and consulting work for several hours per month to address matters

12  relating to her contract); *see also Nordstrom v. Tampourlos*, 733 P.2d 208, 211 (Wash.

13  1987) (finding injury requirement met where plaintiff alleged loss of goodwill).  Here,

14  ULC Monastery has directed the court to no evidence that its business or property were

15  harmed by the inconvenience of having its employee investigate AMM's websites for

16  less than an hour.  (*See* AMM Resp. at 7-8.)  Accordingly, the court GRANTS

17  Defendants' motion for summary judgment on ULC Monastery's WCPA claim.

18          3.      Defamation Per Se Claim

19          To establish a defamation claim, the plaintiff must show "(1) that the defendant's

20  statement was false, (2) that the statement was unprivileged, (3) that the defendant was at

21  fault, and (4) that the statement proximately caused damages." *Alpine Indus. Computs.,*

22  *Inc. v. Cowles Pub. Co.*, 57 P.3d 1178, 1183 (Wash. Ct. App. 2002).  A statement is

1    defamatory per se if it "(1) exposes a living person to hatred, contempt, ridicule or

2    obloquy, to deprive him of the benefit of public confidence or social intercourse, or (2)

3    injures him in his business, trade, profession or office." *Caruso v. Local Union No. 690*

4    *of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 670 P.2d 240,

5    245 (Wash. 1983). If the plaintiff shows that the defendant's statements

6    constituted defamation per se, the court presumes that the plaintiff was damaged, "and

7    the jury, without any further data, is at liberty to assess substantial damages, upon the

8    assumption that the plaintiff's reputation has been injured and his feelings wounded."

9    *Canfield v. Clark*, 385 P.3d 156, 162 (Wash. Ct. App. 2016) (quoting *Arnold v. Nat'l*

10   *Union of Marine Cooks & Stewards*, 265 P.2d 1051, 1054 (Wash. 1954) (internal

11   quotation marks omitted)).

12        Defendants move only on the damage element of ULC Monastery's claim; they

13   make no argument, for purposes of this motion, that AMM's statements were not

14   defamatory per se. (*See* AMM Mot. at 11-12.) They argue that summary judgment is

15   warranted because ULC Monastery "admits [in its discovery responses] that it makes no

16   claim that it suffered injury to its business or reputation after AMM" posted its websites,

17   and thus Defendants have rebutted the presumption of injury. (*See id.* (citing 4/15/21

18   Roberts Decl. ¶ 25, Ex. 22 at 7-8; 5/4/20 Cohen Decl. ¶ 13, Ex. 11 at 7).) Defendants,

19   however, cite no Washington cases finding that the presumption of injury where a

20   statement is defamatory per se is rebuttable. (*See id.; see also* AMM Reply at 4-5.)

21   Furthermore, a jury is free to award nominal damages in a defamation per se case based

22   on its assessment of the harm, if any, suffered by the plaintiff as a result of the

1    defamatory per se statements.  *Maison de France, Ltd. v. Mais Oui!, Inc.*, 108 P.3d 787,

2    700 (Wash. Ct. App. 2005) (remanding for determination of "presumed damages, either

3    nominal or substantial" where the court had found no economic or other actual damages).

4    Therefore, the court DENIES Defendants' motion to dismiss ULC Monastery's

5    defamation per se claim.

6    **C.    Maurice King's Motion for Summary Judgment**

7         Maurice King separately moves for summary judgment on the ground that ULC

8    Monastery cannot meet its burden to produce evidence that, viewed in its favor, would

9    demonstrate that he is personally liable for ULC's damages, if any, on any of its claims.

10   (*See* King Mot. at 1-8.)  He also seeks sanctions for ULC Monastery's refusal to dismiss

11   him from this case.  (*See id.* at 8-9.)  Because the court has granted Defendants' motion

12   for summary judgment on ULC Monastery's WCPA claim (*see supra* Section III.B.2),

13   the court considers below Maurice King's liability for ULC Monastery's Lanham Act and

14   defamation per se claims, then turns to his request for sanctions.

15        1.    Liability

16        The Lanham Act imposes liability on corporate officers who authorize, direct, or

17   participate in the unlawful acts*.  Melwani v. Amazon.com, Inc.*, No. C21-1329RSM, 2022

18   WL 670919, at *5 (W.D. Wash. Mar. 7, 2022) (citing *Committee for Idaho's High

19   Desert, Inc. v. Yost*, 92 F.3d 814, 823-24 (9th Cir. 1996); and *Coastal Abstract Serv., Inc.

20   v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999)). "Cases finding

21   personal liability on the part of corporate officers have typically involved instances where

22   the defendant was the 'guiding spirit' behind the wrongful conduct, or the 'central figure'

1   in the challenged corporate activity." *Id.* (quoting *Facebook, Inc. v. Power Ventures,*

2   *Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016)); *see also Deckers Outdoor Corporation v.*

3   *Bright Trading Corp.*, Case No. LA CV14-00198 JAK (JEMx), 2014 WL 12564124, at

4   *3 (C.D. Cal. Apr. 28, 2014) (observing that courts find corporate officers liable under

5   the Lanham Act "when they are a "moving, active conscious force'" behind the

6   violation).

7           With respect to defamation, Washington courts find officers personally liable for

8   the torts of a corporation where the officers "either knowingly committed wrongful acts

9   or directed others to do so knowing the wrongful nature of the requested acts."

10  *Annechino v. Worthy*, 290 P.3d 126, 130 (Wash. 2012) (finding corporate officer was not

11  personally liable for breach of fiduciary duty where he "reviewed and approved of [an]

12  erroneous account chart" regarding FDIC coverage of bank deposits).

13          ULC Monastery identifies the following evidence of Maurice King's involvement

14  with the AMM-vs-ULC and AMM Legal websites.[6]  First, it points to AMM's response

15  to its interrogatories, in which AMM stated that:

16          The following individuals were involved in preparing, reviewing, and/or
            approving the content of [the websites] in various capacities:  Dylan Wall,
17          Glen Yoshioka, Maurice King, and Lewis King.   Lewis King, Glen
            Yoshioka, and Dylan Wall collectively wrote the copy for the website[s].
18          Maurice King reviewed a draft of the website copy.  Lewis King approved
            the final version of the website copy and authorized and directed its
19          publication.

20

21          [6] Although ULC Monastery named the Individual Defendants in its complaint, it did not
        seek any written discovery from the Individual Defendants, nor did it take any of the Individual
22      Defendants' depositions in their personal capacity.  (*See* Mennemeier Decl. ¶ 3.)

1   (King Resp. at 7 (citing 5/3/21 Galletch Decl. ¶ 16, Ex. 14 at 5-6).)  Second, it directs the

2   court to Mr. Yoshioka's testimony in his Rule 30(b)(6) deposition on behalf of AMM.

3   (*Id.* (citing Yoshioka 30(b)(6) Dep. at 81:5-84:25).)  Mr. Yoshioka testified that it "was

4   most likely [Mr. Yoshioka], Lewis King, Maurice King, and Dylan Wall" who reviewed

5   the statement on AMM Legal website that "[t]here are people who have made millions of

6   dollars selling ordinations." (Yoshioka 30(b)(6) Dep. at 81:5-84:25.[7])  Third, it points to

7   Lewis King's testimony in his Rule 30(b)(6) deposition on behalf of AMM.  (King Resp.

8   at 7 (citing L. King 30(b)(6) Dep. at 107:5-109:24, 128:4-129:4, 296:13-299:8).)  In these

9   excerpts, Lewis King testified that Maurice King "probably . . . at some stage" reviewed

10  the content of the AMM Legal website but he could not recall whether that review took

11  place before or after the website went live.  (L. King 30(b)(6) at 107:5-108:12.)  Lewis

12  King did not recall Maurice King making any objections to the website.  (*Id.* at

13  108:13-109:24.)  With respect to the AMM-vs-ULC website, Lewis King did not know

14  whether Maurice King prepared or approved any of its content but believed that he

15  reviewed some of the content.  (*Id.* at 128:5-129:4.[8])

16        For his part, Maurice King states that he "did not have any involvement in the

17  creation or publication of the statements . . . that [ULC Monastery] alleges are 'false,

18  _____

19        [7] The court agrees with Maurice King that ULC Monastery mischaracterizes Mr.
    Yoshioka's testimony.  (*See* King Resp. at 7 (stating Mr. Yoshioka "testified Maurice King
    wrote some of the text for the AMM Legal Website").)  Indeed, Mr. Yoshioka testified that he

20  did not know who wrote the statement at issue.  (*See* Yoshioka 30(b)(6) Dep. at 84:12-25.)

21        [8] ULC Monastery states in its response that when asked "what Maurice King did," Lewis
    King "testified it was 'somewhat confusing.'"  (King Resp. at 7 (citing L. King 30(b)(6) Dep. at
    296:13-299:8).)  The court was unable to find any mention of Maurice King's role being

22  "somewhat confusing" in the cited excerpts.

1    deceptive, and defamatory'" on the AMM-vs-ULC website or the AMM Legal website.

2    (M. King Decl. ¶ 4.)  He further asserts that he "did not write or create any of those

3    statements;" that he "did not approve those statements for publication"; and that he "did

4    not authorize or direct that those statements be published on" the websites.  (*Id.*)

5         Here, the court concludes, viewing the evidence in the light most favorable to

6    ULC Monastery, that a reasonable fact finder could not find that Maurice King had the

7    requisite level of involvement in the AMM-vs-ULC and AMM Legal websites to justify

8    personal liability under the Lanham Act or for defamation per se.  At best, the evidence

9    cited by ULC Monastery shows that Maurice King reviewed the content of the websites

10   at some point before or after they were published, and that he did not object to that

11   content.  Because neither Lewis King nor Mr. Yoshioka knew or could recall whether

12   Maurice King wrote or approved the content of the websites, the statements in Maurice

13   King's declaration that he did not write the content, approve it, or authorize or direct its

14   publication are uncontroverted.[9]  Thus, the court must conclude that ULC Monastery has

15   failed to meet its burden to a genuine dispute of material fact that Maurice King was a

16   "guiding spirit" or "central figure" in the conduct underlying ULC Monastery's Lanham

17   Act claim or that he either knowingly committed wrongful acts or directed others to do

18   so.  Accordingly, the court GRANTS Maurice King's motion for summary judgment

19   regarding his personal liability for ULC Monastery's claims.

20

21   ───────────────
        [9] ULC Monastery's complaint that AMM's Rule 30(b)(6) deponents were not prepared
     for their depositions is not well-taken.  (King Resp. at 7-8.)  ULC Monastery did not file any
22   motions seeking to re-depose these witnesses based on AMM's alleged failure to prepare them.
     (*See generally* Dkt.)

2.      Request for Sanctions

Finally, Maurice King contends that the court should impose sanctions on ULC Monastery because it has refused to dismiss its claims against him despite never propounding discovery requests on him or taking his deposition.  (AMM Mot. at 8-9; see.)  He asserts that ULC Monastery has a "complete lack of evidence" against him and has continued this lawsuit in bad faith.  (*Id.*)

The court declines Maurice King's invitation to sanction ULC Monastery.  As discussed above, it is not true that ULC Monastery has a "complete lack of evidence" regarding Maurice King's involvement in the conduct underlying its claims; and the court is unaware of any rule that requires a party to propound discovery on an opposing party or take his deposition.  Accordingly, Maurice King's request for sanctions is DENIED.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' and Maurice King's motions for summary judgment on ULC Monastery's claims (Dkt. # 199; Dkt. # 202).  The court will address the portion of Defendants' motion for summary judgment in which AMM seeks partial summary judgment on its counterclaims against ULC Monastery in a subsequent order.

Dated this 28th day of June, 2022.

The Honorable Richard A. Jones
United States District Judge