UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE, a Washington non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>MAURICE KING, LEWIS KING, GLEN YOSHIOKA, DYLAN WALL, and AMERICAN MARRIAGE MINISTRIES, a Washington non-profit corporation,<br><br>Defendants. | CASE NO. 2:19-cv-301<br><br>REDACTED ORDER ON AMERICAN MARRIAGE MINISTRIES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS COUNTERCLAIMS |
| AMERICAN MARRIAGE MINISTRIES, a Washington non-profit corporation,<br><br>Counter Claimant,<br><br>v.<br><br>UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE,<br><br>Counter Defendants. | |

This case is about two competitors in the online ordination business. They accuse each other of tortious conduct and various unfair and deceptive business practices under federal and

REDACTED ORDER ON AMERICAN MARRIAGE MINISTRIES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS COUNTERCLAIMS - 1

state law. Defendant and Counter-Claimant American Marriage Ministries ("AMM") moved for summary judgment on Plaintiff and Counter-Defendant Universal Life Church Monastery Storehouse's ("ULC Monastery") claims. Dkt. No. 199. The Honorable Richard A. Jones, United States District Judge, granted parts of, and denied parts of, AMM's motion, but left undecided AMM's request for summary judgment on its Washington common law trademark infringement and Consumer Protection Act ("CPA") counterclaims. Dkt. No. 230. The Court now comes back to complete its work, and for the reasons explained below, GRANTS in part, and DENIES the remaining portions of AMM's motion.

## BACKGROUND

A complete accounting of the factual background of this case can be found in the Court's prior summary judgment orders. *See* Dkt. Nos. 170, 230. In this order, the Court recounts only the facts relevant to its analysis of AMM's state law counterclaims, presenting them in the light most favorable to the non-moving party, ULC Monastery.

AMM and ULC Monastery provide competing online ordination services for individuals who wish to officiate marriages. AMM Executive Director Lewis King testified that AMM began using the trade name "American Marriage Ministries" upon its incorporation in 2009. Dkt. No. 200 at 2. AMM advertised its services and ordained "[h]undreds of thousands of individuals" under this trade name. *Id.* AMM registered the domain name americanmarriageministries.com in 2009. Dkt. No. 115-2 at 25. AMM used americanmarriageministries.com as its primary website until it transitioned its current website, TheAMM.org. *Id.* at 27. AMM allowed its registration for americanmarriageministries.com to lapse and ULC Monastery subsequently registered the americanmarriageministries.com domain name for its own use in July 2011. Dkt. Nos. 115-2 at 28; 116 at 3–4. Between 2011 and 2015, ULC Monastery used the www.americanmarriageministries.com site "to redirect internet users to its own website, to

maintain a website that masqueraded as AMM, and/or to publish allegedly false . . . information regarding . . . the legal validity of AMM's ordinations." Dkt. No. 170 at 2.

In 2014, AMM applied to register the mark "American Marriage Ministries" for use within the ordination services industry. Dkt. No. 115-3 at 51. The United States Patent and Trademark Office ("PTO") rejected AMM's application twice. In 2014, the PTO denied AMM's application under Section 2(e)(2) of the Lanham Act, 15 U.S.C. § 1052(e)(2), finding the mark "primarily geographically descriptive of the origin of [AMM's] services." Dkt. No. 115-3 at 44. In 2015, the PTO maintained its refusal to register under Section 2(e)(2) and found AMM's evidence of acquired distinctiveness insufficient. *Id.* at 14. For its third application, AMM submitted evidence of continuous use of the mark for over five years, that a Google search of the mark generated results that uniformly referred to AMM, and that over 250,000 consumers used AMM's ordination services. Dkt. No. 170 at 9. The PTO registered AMM's mark in January 2016 under Section 2(f) of the Lanham Act, which covers acquired distinctiveness. Dkt. No. 115-3 at 2.

Beginning in 2018, AMM alleges that ULC Monastery began using the name "American Marriage Ministries" in the visible content of its webpages. Dkt. No. 199 at 5–6. Specifically, on its webpage www.themonastery.org/training/ordination/are-online-ordinations-legal it states:

> Those who are considering online ordination will possibly still feel unsure and uneasy about the whole concept and process. This makes it a useful exercise to review the legal precedents that have actually been set for the legality of online ordination. The legal history of online ordination goes back to 1974.
>
> It was in this year that an *American marriage ministries* known as the Universal Life Church (ULC) sued the United States Federal Government (in a case known as "The Universal Life Church, Inc. v. The United States of America".) as a response to an Internal Revenue Service initiated challenge on the ULC's tax exempt status. The ULC proves to be a non-denominational and non-traditional church. The court eventually ruled in favor of the ULC church. Although this ULC

does not turn out to be a Christian outfit, its victory and the resulting ruling lent great support to the mainstream Christian church in America.

Dkt. No. 147-22 at 1 (emphasis added). On its webpage, www.themonastery.org/training/ordination/what-is-ordination, ULC Monastery states:

> The ULC MONASTERY ordains for life for free. Each denomination has its own special requirements that its ministers comply with or perform to gain their allegiance. The Universal Life Church, an *American marriage ministries*, is the only denomination in the world that opens its door to all and welcomes all who ask for ordination and grants it without questions as to beliefs, grants ordination for life and for free. We make no religious hurdles, no hoops to jump through, no tests of loyalty, no rings to kiss and no fees to pay. Why? The ULC MONASTERY represents freedom and to have freedom you cannot make demands upon individuals. When people make demands upon others, there exists a hierarchy; someone is higher and someone is lower, someone is better and someone is lesser. The ULC MONASTERY does not act in that manner. In the ULC MONASTERY everyone is equal -- the same level of greatness is enjoyed by all. That is difficult for many to understand in a world filled with bosses and employees, haves and have not's, ordained and not ordained.

Dkt. No. 147-23 at 2 (emphasis added).

Also, in 2018, ULC Monastery embedded AMM's mark in the title tags and other metatags of its webpages. *See* Dkt. Nos. 147-19 at 1; 149 at 2–3. Although the tags were not visible to users, they would be visible to online search engine algorithms. *See* Dkt. No. 77 at 9. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Undated internal ULC Monastery messages state that it "would be fun" to create three new informational webpages which use "american marriage ministries" and "american ministries" as "generic terms" to try to "chip away a bit at them." Dkt. No. 147-16 at 1. AMM alleges ULM Monastery's actions caused "an abrupt drop in its numbers of ordained ministers and its revenue." Dkt. No. 199 at 6 (citing Dkt. No. 115-1 at 23–24).

In 2019, ULC Monastery conducted a consumer survey showing that, of the 300 people surveyed, only 23.33% associated "American Marriage Ministries" with a single organization or business. Dkt. No. 115-5 at 5-21.

Earlier in the case, ULC Monastery moved for summary dismissal of all AMM's counterclaims, including AMM's common law trademark infringement and CPA claims. *See* Dkt. Nos. 114, 119, 125. The Honorable Robert S. Lasnik, United States District Judge, dismissed AMM's state common law trademark and CPA claims, among other things, to the extent they arose from ULC Monastery's use of the americanmarriageministries.com domain name between 2011 and 2015. Dkt. No. 170 at 2, 13. But Judge Lasnik allowed AMM's other claims to proceed, including its state common law trademark and CPA claims based on ULC Monastery's conduct within the applicable statutory limitation periods. *Id.* Judge Lasnik held AMM's state law trademark claim was subject to a three-year statute while AMM's CPA claim was subject to a four-year limitations period. *Id.* at 2, 12.

On review of AMM's motion seeking summary judgment on its common law trademark and CPA claims, this Court will observe the law of the case doctrine and consider only ULC Monastery's alleged infringement since 2018 because its older allegedly infringing conduct is no longer timely. *See United States v. Jingles,* 702 F.3d 494, 499 (9th Cir. 2012) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court . . . in the same case.").

AMM also seeks an injunction that prohibits ULC Monastery from ever using "AMERICAN MARRIAGE MINISTRIES."

# DISCUSSION

## I. Legal standard.

"'A grant of summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020) (quoting *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1277 (9th Cir. 2017)). When evaluating a summary judgment motion, "[t]he evidence is viewed 'in the light most favorable to the non-moving party.'" *Id.* (quoting *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014)).

## II. Disputed issues of material fact preclude summary judgment on AMM's common law trademark counterclaim.

"Under Washington law, a plaintiff in a trade name infringement case must establish the defendant has infringed on a distinctive feature of [their] name in a manner that tends to confuse the two businesses in the public mind." *Seattle Endeavors, Inc. v. Mastro*, 868 P.2d 120, 124 (Wash. 1994). The Court reviews the distinctiveness of AMM's mark and the likelihood of confusion below.

### A. There are factual disputes surrounding the distinctive nature of AMM's mark.

AMM argues again and again that it used the "AMERICAN MARRIAGE MINISTRIES" mark first, but simply consulting a calendar will not resolve this dispute, as the Court must consider whether AMM had an appropriable mark. Trade names "fall along a spectrum of distinctiveness which determines whether the marks are eligible for trademark protection at all, and if so, what the appropriate scope of that protection should be." *Id*. This spectrum ranges, "least to most appropriable," from "(1) generic terms; (2) descriptive terms; (3) suggestive terms; and (4) arbitrary or fanciful terms." *Id.* The first step in analyzing a common law trademark infringement claim is to "locat[e] the mark on the spectrum of distinctiveness," and second, to

assess secondary meaning, or the "strength of the mark in the marketplace, i.e., the extent to which the mark is effective in distinguishing the product or service from others in the relevant area." *Id*.

AMM argues its trade name is "suggestive." "A word mark which suggests, but does not directly and immediately describe, some aspect of the goods or services is put into the 'suggestive' category." 2 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 11:62 (5th ed. 2023); *see Seattle Endeavors, Inc.*, 868 P.2d at 123 (citing *McCarthy* § 11, generally, with approval). "[S]uggestive marks . . . are viewed as having some level of inherent distinctiveness," and thus, courts need not analyze whether they carry secondary meaning. *Nordstrom, Inc. v. 7525419 Canada Inc.*, No. C12-1387-TSZ, 2012 WL 12507605, at *6 (W.D. Wash. Dec. 27, 2012). AMM claims its mark is suggestive because it is in the business of "enabling individuals in the U.S. to solemnize marriages," and not providing spiritual guidance to married couples. *See* Dkt. No. 199 at 15.

ULC Monastery counters that AMM's mark is merely descriptive of AMM's services. "A 'descriptive' term is one that directly and immediately conveys some knowledge of the characteristics of a product or service." 2 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 11:16 (5th ed. 2023). Descriptive terms "are more difficult to protect as trademarks because they may already be in use in similar fields and thus not be very 'distinctive' at all. In this sense they are 'weak.'" *Seattle Endeavors, Inc.,* 86 P.2d at 124.

Although descriptive names are not inherently distinctive, they may still be eligible for protection if they have acquired a secondary meaning or significance by reason of their original and long use. *See Groceteria Stores Co. v. Tibbett*, 101, 162 P. 54, 55 (1916). "Secondary meaning is association, nothing more. . . . That is, that the words, though primarily belonging to the public, have been associated with one's business in such way and for such length of time that

REDACTED ORDER ON AMERICAN MARRIAGE MINISTRIES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS COUNTERCLAIMS - 7

they are generally understood by the public as referring to that one's business." *Foss v. Culbertson*, 136 P.2d 711, 718 (1943) (internal quotation marks omitted). Here, AMM argues that even if its mark is only descriptive, it has acquired secondary meaning and thus still warrants protection.

So the questions before the Court on summary judgment are whether a reasonable juror could find that AMM's mark was merely descriptive, as ULC Monastery argues, and if so, whether a reasonable juror could find that AMM's mark lacked secondary meaning at the time of ULC Monastery's alleged infringement.

To start, the Court finds a reasonable juror could view AMM's mark as descriptive, as opposed to suggestive, because, as the PTO determined in denying AMM's initial Lanham Act registration, "the applied-for mark is primarily geographically descriptive of the origin of [AMM's] services," "the term MARRIAGE MINISTRIES merely describes the basic nature of [AMM's] services," and thus lacks inherent distinctiveness. Dkt. No. 115-3 at 44. Whether AMM's mark is descriptive or suggestive is a question for the jury. Indeed, "the line between descriptive and suggestive marks is elusive," as "legions of trademark lawyers can stay busy arguing how marks . . . should be categorized." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1162 (9th Cir. 2021). For this reason, "'which category a mark belongs in is a question of fact.'" *Id.* (quoting *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010)).

Next, the Court finds that a reasonable juror could find that AMM's mark failed to acquire secondary meaning before ULC Monastery's infringing use. AMM cannot carry its burden on summary judgment to show otherwise.[1] *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778

---

[1] AMM continuously refers to secondary meaning as an "affirmative defense" that ULC Monastery bears the burden of proving. This is incorrect. AMM is required to establish

F.2d 1352, 1358 (9th Cir.1985) (en banc). "[T]he question of secondary meaning is one of fact." *Id.* at 1355. In support of its claim, AMM argues that its federal trademark registration carries a rebuttable presumption that its mark is distinctive and that ULC Monastery failed to rebut this presumption.[2] It also cites its Executive Director Lewis King's declaration, which states AMM has used its mark to "advertise extensively" and "[h]undreds of thousands of individuals have obtained AMM's services under the mark." Dkt. No. 199 at 21 (citing Dkt. No. 200 at 2). ULC Monastery rebuts this evidence with a consumer survey showing that, of the 300 people surveyed, only 23.33% associated "American Marriage Ministries" with a single organization or business. *See* Dkt. No. 115-5 at 5–21.

On this point, however, the court has already held "there [was] a genuine issue of material fact regarding distinctiveness [i.e., secondary meaning] in the period preceding registration" because neither the PTO's finding in 2016 nor the 2019 consumer survey provided by ULC Monastery provided "conclusive proof of the mark's association with AMM in the public mind" *before* ULC Monastery began using the mark. *Id.* at 9–10. AMM relies upon the same evidence of its mark's secondary meaning during this time as before, and provides the

---

secondary meaning of its mark for the Court to conclude it justifies trademark protection. *See Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 19 (1st Cir. 2004) ("[T]he individual seeking protection for a mark bears the burden of proving that secondary meaning has attached within the relevant class of consumers.").

[2] Without citing any authority, ULC Monastery argues "there is no presumption of validity for a common law trademark claim." Dkt. No. 212 at 15. Courts have generally held, however, that state trademark common law is "given the same meaning and interpretation as the mainstream principles of federal trademark law." *See* 3 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 22:1.5 (5th ed. 2023). In any event, the Court need not expound upon the issue beyond its prior ruling, *see* Dkt. No. 170 at 9, because any presumption of validity that flows from registration is rebuttable. *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002) ("In trademark terms, the registration is not absolute but is subject to rebuttal."). And as explained below, questions of fact challenge AMM's entitlement to summary judgment and any presumption of validity.

REDACTED ORDER ON AMERICAN MARRIAGE MINISTRIES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS COUNTERCLAIMS - 9

Court nothing new to consider on this latest round of dispositive motion practice.[3] Thus, the Court's prior finding of a preregistration dispute as to distinctiveness precludes summary judgment in AMM's favor. The fact that AMM seeks affirmative summary judgment on its counterclaim this time around rather than defending against ULC Monastery's summary judgment motion operates with perhaps more force here given that AMM carries the burden of proving that its mark obtained secondary meaning before ULC commenced its allegedly infringing activities in 2011 and 2014. *See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005) ("[I]n an infringement case involving an unregistered mark, the plaintiff has the burden of proof to show that the mark is valid and not generic.").

Moreover, even if the Court were to assume *arguendo* that distinctiveness should be measured post-registration in 2018, as AMM implies in its motion, but does not argue outright, the same factual issues would persist. Although the 2019 consumer survey recorded public perceptions after ULC Monastery had been using the mark for around one year, this context goes to the weight of the evidence; the date is not so removed from the subject matter of this suit as to totally invalidate its probative value. *See Converse, Inc. v. Int'l Trade Comm'n Skechers U.S.A., Inc.*, 909 F.3d 1110, 1123 (Fed. Cir. 2018) ("Surveys that are conducted within five years of the relevant date may provide evidence as to secondary meaning although no single factor is determinative.") (internal quotation marks omitted).

---

[3] In response to ULC Monastery's motion for summary judgment, AMM previously argued its mark acquired secondary meaning, citing its registration with the PTO, "evidence that it has ordained hundreds of thousands of ministers under its mark and that it has engaged in significant and consistent use of the mark to identify and advertise its services since 2009." Dkt No. 119 at 19. AMM makes the same arguments in its motion for affirmative summary judgment. *See* Dkt. No. 199 at 21.

Accordingly, questions of material fact about distinctiveness and secondary meaning preclude summary judgment on AMM's common law trademark infringement claim. The jury should decide these questions.

B.  <u>Genuine issues of material fact exist regarding the likelihood of confusion.</u>

ULC Monastery argues its use of AMM's mark in title tags and metatags qualifies as mere diversion rather than likely confusion. Dkt. No. 212 at 18 (citing *Network Automation Inc. v. Advanced Sys. Concepts Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011) and *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 935 (9th Cir. 2015)). AMM argues ULC Monastery omits the fact that ULC Monastery claimed to be "an American Marriage Ministries" on its websites, which differs from "the 'mere diversion' examples that [ULC Monastery] pretends this case exclusively to be." Dkt. No. 221 at 9. AMM further argues this use "is sufficient for summary judgment" on the likelihood of confusion, without considering ULC Monastery's use of AMM's mark in title tags and metadata. *Id.*

The Court examines the "likelihood of confusion" through the *Sleekcraft* factors, "which are a proxy for consumer confusion, not a rote checklist." *Bio Mgmt. Nw. Inc. v. Washi. Bio Servs.*, No. C20-670 MJP, 2021 WL 4319448, at *2 (W.D. Wash. Sept. 23, 2021) (quoting *Network Automation, Inc.*, 638 F.3d at 1145).[4] "'These factors are neither exhaustive nor dispositive.'" *Id.* (citing *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1160 (9th Cir. 2021)). "'The presence or absence of a particular factor does not necessarily drive the determination of a likelihood of confusion.'" *Id.* (citing *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992)).

---

[4] Courts have applied the *Sleekcraft* factors to assess the likelihood of confusion in Washington common law trademark suits. *See David N. Brown, Inc. v. Act Now Plumbing, LLC*, 170 Wn. App. 1045, 2012 WL 4335922, at *2 (2012) (unpublished); *Bio Mgmt. Nw. Inc.*, No. C20-670 MJP, 2021 WL 4319448, at *2.

REDACTED ORDER ON AMERICAN MARRIAGE MINISTRIES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS COUNTERCLAIMS - 11

Here, the Court considers the following relevant factors: (1) the strength of AMM's mark, (2) the relatedness of AMM and ULC Monastery's services, (3) the similarity of the marks in use, (4) evidence of actual confusion, (5) marketing channels used, and (6) evidence of ULC Monastery's intent while using the mark. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 342, 348–49 (9th Cir. 1979). Courts should not grant summary judgment where "conflicting facts render it unclear whether a likelihood of confusion exists." *Id.* at 1161–62.

That AMM and ULC Monastery provide largely the same services and reach consumers through the same online marketing channels, as well as the fact that ULC Monastery referred to itself as "an American Marriage Ministries" all favor a likelihood of confusion. Additionally, there is evidence in the record for a jury to find that ULC Monastery knowingly used AMM's mark to "chip away at it." *See* Dkt. No. 147-16 at 1. Notwithstanding these factors, disputed facts regarding distinctiveness and the strength of AMM's mark, render it unclear whether the likelihood of confusion exists and make summary judgment inappropriate. Moreover, although not required, AMM fails to provide evidence of actual confusion, which also weighs against summary judgment.

C. <u>ULC Monastery has not established a nominative fair use defense, but it has provided evidence sufficient to present a classic fair use defense to the jury.</u>

AMM asks the Court to dismiss ULC Monastery's nominative and classic fair use defenses. Dkt. No. 199 at 22. Although both classic and nominative fair use defenses qualify as non-infringing conduct, they are fundamentally different:

> The nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, *even if the defendant's ultimate goal is to describe his own product.* Conversely, the classic fair use analysis is appropriate where a defendant has used the plaintiff's mark *only* to describe his own product, *and not at all to describe the plaintiff's product.*

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) (emphasis in original).

AMM claims, because ULC Monastery's optimized webpages "explicitly assert that [ULC Monastery] is an 'American marriage ministry,'" there is no credible argument that ULC Monastery is referring to AMM. Dkt. No. 199 at 22. ULC Monastery does not directly address AMM's argument but cites to Judge Lasnik's order, which states "certain uses to which ULC [Monastery] put AMM's mark simply communicated ideas regarding AMM or expressed points of view that required the use of AMM's name (*e.g.*, the publication of a legal ruling regarding AMM)" but other uses "implicated the source-identification function of the mark by intentionally blurring AMM's association with ULC Monastery and/or its mark." Dkt. No. 212 at 20 n.10 (citing Dkt. No. 170 at 10). For these reasons, Judge Lasnik held ULC Monastery did not show it was entitled to dismissal of any of AMM's claims based on non-infringing uses. Dkt. No. 170 at 10.

Here, the Court finds ULC Monastery cannot sustain a nominative fair use defense for its common law trademark claim given that all potentially nominative uses occurred before the statute of limitations and have therefore been dismissed. AMM's common law trademark claim is based on ULC Monastery's conduct since 2018—i.e., optimizing its websites by embedding AMM's mark in its title tags and metadata, and explicitly referring to ULC Monastery as "an American marriage ministries." None of this conduct qualifies as nominative fair use, nor was it the conduct referenced by Judge Lasnik in his prior order. Thus, the Court DISMISSES ULC Monastery's nominative fair use defense to the extent it applies to AMM's common law trademark claim.

For a classic fair use defense, defendants must establish three elements: (1) their "use of the term is not as a trademark or service mark;" (2) they use "the term 'fairly and in good faith'"; and (3) their use is "only to describe its goods or services." *Cairns*, 292 F.3d at 1151 (internal quotation marks omitted). ULC Monastery argues there is a genuine dispute of material fact

regarding whether its uses of AMM's mark were descriptive and in good faith. Dkt. No. 212 at 21–22. ULC Monastery cites the Rule 30(b)(6) deposition of Glen Yoshika in which the ULC Monastery founder testified that it referred to itself as an American marriage ministries on its websites "generically" and for the purpose of increasing Google search rankings when people searched for American marriage ministries. *See* Dkt. Nos. 117-3 at 2; 115-2 at 57. Whether ULC Monastery's explanation qualifies as a good faith, descriptive use of AMM's mark is a question of fact for the jury to decide. Therefore, the Court denies summary judgment dismissal of ULC Monastery's classic fair use defense.

### III.  The Court declines to grant summary judgment on AMM's CPA counterclaim.

AMM argues ULC Monastery "must be found liable for its unfair and deceptive practices as a matter of law" even if the amount in damages presents a question of fact. Dkt. No. 199 at 17. A private party must show the following five elements to establish a violation of the CPA: "(1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring the plaintiff's business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered." *Seattle Endeavors, Inc.*, 868 P.2d at 126.

Because both require a plaintiff to establish likelihood of confusion, a successful trade name infringement claim may serve as the basis for a CPA claim. *See id.* at 127. Given that the Court found disputed issues of material fact as to the distinctiveness of AMM's trade name and the likelihood of confusion caused by ULC Monastery's use, summary judgment should be denied as to AMM's CPA claim.

### CONCLUSION

Accordingly, the Court GRANTS AMM's motion in part and DISMISSES ULC Monastery's nominative fair use defense to the extent it applies to AMM's common law

trademark claim. The Court DENIES AMM's motion for partial summary judgment on its common law trademark and CPA counterclaims in all other respects not addressed in the court's previous orders.

Dated this 18th day of August, 2023.

_____
Jamal N. Whitehead
United States District Judge